STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
(for court filings only)
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310)452-3200q    `1

Presented on behalf of Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| R. CAMOU,<br><br>        Plaintiff,<br><br>        v.<br><br>ROBERT LUNA, KATHRYN BARGER, JANICE HAHN, HOLLY MITCHELL, HILDA SOLIS, LINDEY HORVATH, HUGO MACIAS, and 10 UNKNOWN NAMED DEFENDANTS, 1-10,<br>        Defendants. | 2:24-cv-05748-SPG(AJRx)<br><br>**EXHIBITS 1-4**<br><br>**TO THIRD AMENDED COMPLAINT**<br><br>Judge Sherilyn Peace Garnett |

# EXHIBIT 1

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 3 of 167   Page
ID #:191
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 3 of 151   Page
ID #:561

(213) 974-1431   ✉ sbc@bos.lacounty.gov

   Select Language

**SYBIL BRAND COMMISSION**

☰




(213) 974-1431    sbc@bos.lacounty.gov

**SYBIL BRAND COMMISSION**

# INSTITUTIONAL INSPECTIONS

Welcome to the Sybil Brand Commission for Institutional Inspections webpage. We hope that you will find it to be an indispensable resource in meeting your informational needs. As you experience this website, you will find valuable links intended to support you in acquiring the information and assistance you are seeking. We invite you to learn more about the Commission and thank you for visiting the Commission webpage.

Current Agenda

Approved Minutes

# 2023 GOALS

1. Engage entities responsible for enforcement of existing State/County standards for humane and constitutional conditions inside the county jails, including:

   a. Department of Health Services (DHS) and Correctional Health Services (CHS)

   b. Civilian Oversight Commission (COC)

   c. Board of State and Community Corrections

   d. Jail Closure Implementation Team

   e. Court lock ups and Court leadership

2. Monitoring quality of access, treatment, and outcomes related to medical care and mental health care.

   a. Underlying causes of in-custody deaths deemed natural by the Medical Examiner.

   b. Regular meetings with the Department of Health Services and Correctional Health Services (CHS)

   c. Monitor mental health patient rights and access to mental health services.

3. Seeking feedback and making recommendations to the Board of Supervisors on areas of concern regarding the closure of Men's Central Jail (MCJ) and implementation of the Care First, Jail Last plan as it impacts jail conditions and community capacity.

4. Evaluate expansion and targeting of programming in the jails, including access, retention, and outcomes of programming.

5. Periodic direct engagement with the Board of Supervisors on areas of concern.

6. Conduct periodic self-assessment of the commission's impact on jail conditions to determine the extent at which we may need to advocate for changes to statute.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 5 of 167    Page
ID #:193
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 5 of 151    Page
ID #:563

(213) 974-1431    ✉ sbc@bos.lacounty.gov

**SYBIL BRAND COMMISSION**

# COMMISSION MEETINGS

The Sybil Brand Commission meets the first Thursday of each month at 9:00 a.m. at the Kenneth Hahn Hall of Administration, 500 West Temple Street, Los Angeles, California 90012.

The public is welcome to attend the Commission Meetings.

# AUTHORITY

The Sybil Brand Commission for Institutional Inspections is authorized by Chapter 2.82 of the Los Angeles County Code.

## HELPFUL LINKS

→ AIDS Hotline
→ Alcohol and Drug Programs
→ Commission for Children and Families
→ Commission on Disabilities
→ Department of Children and Family Services
→ Department of Mental Health
→ Department of Probation
→ Los Angeles County Superior Court
→ Office of Childcare Programs
→ Planned Parenthood Los Angeles
→ Rape Hotline
→ Sexually Transmitted Disease Program
→ LASD Inmate Information
→ Teen Help Adolescent Resources
→ Victim Impact Program for Sex Crimes and Child Abuse

## CONTACT US

Sybil Brand Commission for Institutional Inspections
Kenneth Hahn Hall of Administration

Case 2:24-cv-05748-SPG-AJR  Document 24-1  Filed 11/17/24  Page 6 of 167  Page
ID #:194
Case 2:24-cv-05716-SPG-AJR  Document 48-1  Filed 10/23/24  Page 6 of 151  Page
ID #:564

(213) 974-1431    sbc@bos.lacounty.gov

## SYBIL BRAND COMMISSION

(213) 633-5102

✉ Email Us

## COUNTY INFORMATION

👍 211 LA County

⊕ LA CountyHelps

⚠ Public Alerts



lacounty.gov

Copyright © 2024 by County of Los Angeles Board of Supervisors

Privacy Statement    Terms of Use

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 7 of 167    Page
ID #:195
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 7 of 151    Page
ID #:565



PREVIOUS INSPECTION____9/7/202_____
## Sybil Brand Commission for Institutional Inspections

Courts_____    Jails_X____    Sheriff Stations_____

**COMMISSIONER(S):** Sherman, Grills, Veral                    **TIME** 8a-10a        **DATE**    1/31/2022

**2**

| FACILITY NAME: | MCJ | | |
|---|---|---|---|
| ADDRESS: | | | **/ LASD SUPERVISOR CONTACTED:** Watch Commander on Duty contacted via phone the next day to report findings and areas for followup. |
| Census: | (Capacity:_____) | (Current Census: (_____) | |
| Location(s) Inspected: | Modules 4500, 9300 | | |
| Issues Reported to: | □ BOS    □ Officer in Charge    ☒ LASD    □ ISD    □ OIG    □ COC | | |

### RATING: S = Satisfactory  U = Unsatisfactory  CA = Corrective Action Needed  N/A = Not Applicable

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | U | At least 4 non-working toilets in 9300; plastic wrap covered over the top. Toilets said to be not working in 9400. |
| Showers (water temperature, rust, mold etc.) | U | 9300: Black mold all over the shower ceiling, dripping down with condensation. No hot water for showers.  Near microscopic sized worms come out of the shower heads in 9300.  Unable to confirm during the inspection. |
| Crowding | U | People incarcerated in 9300 and 4500 reported insufficient access to outdoor recreation time. For some it has been months. |
| Cleanliness/Graffiti | U | Significant build up of trash outside cells; little to no cleaning inside or outside cells |
| Safety, Conflict, Tension | | Tensions and conflict between deputies and incarcerated persons observed and reported in 9500. |
| Common Areas | | |
| Air Quality/Temperature | U | See below |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | U | Several complaints re: concerns of retaliation in 9300 |
| Strip Search Issues | | |
| Access (Drinking Water) | | 9500: No hot water is being dispensed from combination toilet/faucets, which incarcerated persons state is being used to eat soup. |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | | |
| Access (Toiletries, Appropriate Combs/Brushes) | | |
| Access (Exercise, Religious Practice) | | |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | | |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | U | K6g and 288 inmates reported problems about access to special diets due to the fact that trustees and deputies who bring them their food are aware of their status so they do not bring the correct diet. |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC) | | |
| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | | See below. |
| Fees Assessed/Money on Books | | |
| 2. Nutrition  Quality/concerns | U | Non-dairy milks re-packaged and served in plastic containers that do not hold their seal for delivery. This is not sanitary as the seals break prior to delivery. This not only causes waste, but results in inmates not being delivered enough food to meet their dietary needs.  This was observed in special meals delivered by deputies. Also several complaints that the meals (including dinner) are often cold by the time they reach the unit. |
| Access to special diets | U | See concern above re special needs. Also see below for detail. |
| 3. Trustees | | |
| Quarters | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 9 of 167    Page
ID #:197
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 9 of 151    Page
ID #:567

**3**

| | | |
|---|---|---|
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| 4. Medical Services (Access, wait times, responsiveness, TB and other medical screening, dental, vision; Infectious disease protocol) | | . |
| 5. **Mental Health Services** (Access, wait Times, treatment options, assessment procedures) | | Male in custody (#5664569) has been unable to get mental health consultation<br>Several men raised concern that those designated with mental health issues are placed with general population (in 9100, 9300, & 9500) putting that at physical risk and risk of bullying. Requesting clarification from Watch Commander. |
| 6. **Telephones** Access/Functionality | | 3 out of 6 phones are non-functioning in 9300 |
| 7. **EBI Services** Availability/Type/Access<br>**Volunteer Services** (Type, Access, Concerns) | | |
| 8. **Clean Clothing and Bedding**<br>(Including laundry practices) | | |
| 9. **Facilities/Maintenance** | | |
| Back Log Unfilled Order(s) | | Ned to determine. At least 2 TVs not working in 4500 |
| Kitchen/ Laundry | | |
| Chemical exposure<br>(kitchen, laundry, trustee duties) | | |
| 10. **Deputy Staffing** | | |
| Quality of Interactions w/Detainees | | |
| Use of Force (Last 30 days) | | |
| Assault on Staff (Last 30 days) | | . |
| Staff Training (MH, trauma informed etc.) | | |
| 11. **Detainee Complaints/Concerns** | | |
| 12. **Deputy Complaints/Concerns** | | Deputies on 9000 floor report frustration with lack of signage indicating whether a module is on quarantine order, which they said causes confusion when they do not know if an incarcerated person who needs to be moved is currently housed in a facility under a quarantine order. |
| 13. **Prior Corrective Action Resolution** | | |
| 14. **Detainee Documentation** (e.g., Intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances. generated funds, classifications) | | UDAL entries do not include identifying information for person responsible for documenting the entry. |
| 15. **Discipline Proceedings** | | |
| 16. Emergency Preparedness/Systems<br>(e.g., fire extinguishers, airpack tags, emergency evacuation routes, control centers,emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | |
| 17. Grounds (conditions, unlawful postings on exterior grounds (e.g., if over been convicted cannot visit a detainee, etc.) | | |
| 18. Inspection: Special Focus<br>OIG:___ COC:___ Community:___ | | |
| 19. **COVID-19: _COC Request_____** | U | Mask wearing by staff was inconsistent and unsatisfactory. Multiple staff members did not wear masks at all. Several simply wore them below their noses. Some who do not wear masks around visitors do not put on masks unless they are asked to do so.<br>As of Jan. 31, 2022, MCJ was still utilizing a 14-day quarantine, even though DPH changed the quarantine guidelines and reduced the period of mandatory quarantine for close contacts to 10 days. |
| 20. PREA Issues:_____ | | |
| 21. Other: _____ | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 10 of 167    Page
ID #:198
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 10 of 151    Page
ID #:568

4

## INSPECTION DETAILS – ANCHORED TO SUMMARY SECTIONS 1 THROUGH 17

Inspection Detail for #___1___

Multiple inmates in 4500D are attempting to protect their health by preventing vents from blowing dust into their cells. They use materials such as towels or to protect themselves from the horrible air quality. A vent blowing air towards the cells on 4500D causes a thick layer of dust to cover metal grate across from the cell. One inmate states that the vent blows dirty air directly into his cell and that he once woke up with dust caking his nostrils. We are also told this inmate has not been to the roof to breathe fresh air for at least six months.

Inspection Detail for #___1___

Grievance forms are not available in the boxes on the row in 4500. Also, when inmates have complicated concerns, they are told they can only include one "grievance" per form. They reported not only can they not get forms, but sometimes the complaints are more nuanced and rather than address the identified problem, deputies will just instruct them to use two forms without any resolution to the issue. This significantly delays the process.

Inspection Detail for #___2___

A man in 4500 on hunger strike says he has two valid dietary restrictions – one is medical and the other is religious. In addition, he said he is prediabetic and has started taking medication to manage his high blood pressure, which he never had to do before, and which he said is due to the malnutrion. The Watch office theory is that having two grievances for two separate dietary needs (medical and religious) is too complex for the system to handle, and the delay in getting him a nutritionist to validate the medical request is causing his frustration and that has resulted in him beginning a hunger strike on Jan 28. But he has a trail of grievances dating back 6-8 months which have evolved somewhat and that seems to be hurting his ability to be heard. For example, his grievances started out focused on tampering with his food prior to delivery (inadequate portions and apparently being delivered soap instead of food). His complaints about food in 4500 align with what we heard from numerous people on that row. One commissioner watched a staff member hand-deliver a meal where the milk container was broken and soaking the food inside the plastic bag. When we reviewed the UDAL system, it said the meals were delivered without any complaints. This complaint was relayed to the watch commander.

Inspection Detail for **OIG** Request Related to:_____

Inspection Detail for **COC** Request Related to:_____

Inspection Detail for **Community Request** Related
to:_____

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 11 of 167   Page
ID #:199
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 11 of 151   Page
ID #:569

5

**Inspection Detail:  EBI**

Categories to be defined

**Inspection Detail:  Medical**

Categories to be defined

**Inspection Detail:  Building and Maintenance**

**CONDITION OF GROUNDS and EXTERIOR OF BUILDING(S)** (lawns, recreation area, blacktop, asphalt, other, general condition, paint, roof, drains/gutters, other)

**INTERIOR OF BUILDING(S)**

Walls, paint, floors, drains, plumbing fixtures working, air vents, windows:

Are cleaning fluids and chemicals labeled and safely stored?

Weapons locker present:

Recreation/sports equipment:

Are the hallways clear, are doors propped open or closed?

Holding areas (cells/rooms) – [if present], is there access to drinking water and toilet?

Condition of individual cells/rooms, or dormitories:

Beds – Type of bed and is it off the floor?

Adequate lighting:

Temperature:



PREVIOUS INSPECTION_____Location_____
**Sybil Brand Commission for Institutional Inspections**

Courts_____    Jails <sup>X</sup>    **Sheriff Stations**_____

**COMMISSIONER(S):** _Sherman, Veral    _ **TIME** 12:30 p    _**DATE** 2/27/2022 _

| | |
|---|---|
| **FACILITY NAME:** | MCJ |
| **ADDRESS:** | 441 Bauchet St 90012 / LASD SUPERVISOR CONTACTED: Lt |
| **Census:** | (Capacity:_____)    (Current Census: (_____) |
| **Location(s) Inspected:** | 5700 dorm – did not go into the dorm; viewed from the outside |
| **Issues Reported to:** | ▢ BOS    ▢ Officer in Charge    ▢xLASD    ▢ ISD    ▢ OIG    ▢ COC |

**RATING:  S = Satisfactory  U = Unsatisfactory  CA = Corrective Action Needed   N/A = Not Applicable**

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | | |
| Showers (water temperature, rust, mold etc.) | | |
| Crowding | | |
| Cleanliness/Grafitti | | |
| Safety, Conflict, Tension | | |
| Common Areas | | |
| Air Quality/Temperature | | |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | | |
| Strip Search Issues | | |
| Access (Drinking Water) | | |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | | |
| Access (Toiletries, Appropriate Combs/Brushes) | | |
| Access (Exercise, Religious Practice) | | |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | | |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | | |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC | | |
| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | | |
| Fees Assessed/Money on Books | | |
| Other:_____ | | |
| **2. Nutrition  Quality/concerns** | | |

| Access to special diets | | |
|---|---|---|

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 14 of 167   Page
ID #:202
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 14 of 151   Page
ID #:572

2

| | | |
|---|---|---|
| **3. Trustees** | | |
| Quarters | | |
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| **4. Medical Services** (Access, wait times, responsiveness, TB and other medical screening, dental, vision; infectious disease protocol) | | |
| **5. Mental Health Services** (Access, wait Times, treatment options, assessment procedures) | | People in this dorm are ID'd as having mental health issues (and apparently are prescribed psychiatric medications) but get limited access to supportive mental health services. JMET visits them to inquire about suicidality, but people are unable to meet with counselors in a confidential setting. Very limited recreation or other recovery activities for this population of individuals with documented mental illness. |
| **6. Telephones   Access/Functionality** | | |
| **7. EBI Services** Availability/Type/Access | | |
| Volunteer Services (Type, Access, Concerns) | | |
| **8. Clean Clothing and Bedding** (including laundry practices) | | |
| **9. Facilities/Maintenance** | | |
| Back Log Unfilled Order(s) | | |
| Kitchen/ Laundry | | |
| Chemical exposure (kitchen, laundry, trustee duties) | | |
| **10. Deputy Staffing** | | |
| Quality of Interactions w/Detainees | | |
| Use of Force (Last 30 days) | | Unable to assess |
| Assault on Staff (Last 30 days) | | |
| Staff Training (MH, trauma informed etc.) | | |
| **11. Detainee Complaints/Concerns** | | |
| **12. Deputy Complaints/Concerns** | | |
| **13. Prior Corrective Action Resolution** | | |
| **14. Detainee Documentation** (e.g., intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances. generated funds, classifications) | | |
| **15. Discipline Proceedings** | | |
| **16. Emergency Preparedness/Systems** (e.g., fire extinguishers, airpack tags, emergency evacuation routes, control centers, emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | |
| **17. Grounds** (conditions, unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | | |
| **18. Inspection: Special Focus** OIG:_____ COC:_____ Community:_____ | | |
| **19. COVID-19: _COC Request_____** | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 15 of 167   Page
ID #:203
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 15 of 151   Page
ID #:573

3

## INSPECTION DETAILS – ANCHORED TO SUMMARY SECTIONS 1 THROUGH 17

Inspection Detail for **Community Request** Related to:_____

Inspection Detail for **OIG** Request Related to:_____

Inspection Detail for **COC** Request Related to:

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 16 of 167     Page
ID #:204
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 16 of 151     Page
ID #:574

4

## Inspection Detail:  EBI

Categories to be defined

## Inspection Detail:  Medical

Categories to be defined

## Inspection Detail:  Building and Maintenance

**CONDITION OF GROUNDS and EXTERIOR OF BUILDING(S) (lawns, recreation area, blacktop, asphalt, other, general condition, paint, roof, drains/gutters, other)**

**INTERIOR OF BUILDING(S)**

Walls, paint, floors, drains, plumbing fixtures working, air vents, windows:

Are cleaning fluids and chemicals labeled and safely stored?

Weapons locker present:

Recreation/sports equipment:

Are the hallways clear, are doors propped open or closed?

Holding areas (cells/rooms) — [if present], is there access to drinking water and toilet?

Condition of individual cells/rooms, or dormitories:

Beds — Type of bed and is it off the floor?

Adequate lighting:

Temperature:

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 17 of 167    Page
ID #:205
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 17 of 151    Page
ID #:575



PREVIOUS INSPECTION_____Location_____
## Sybil Brand Commission for Institutional Inspections

Courts_____    Jails <sup>X</sup>    Sheriff Stations_____

**COMMISSIONER(S): SHERMAN, Alexander (Accompanied by OIG Catherine Beltz)**

**TIME: 6:30AM – 8:30AM**

**3/9/2022**

| FACILITY NAME: | MCJ – 5700, 5550 | | | | | |
|---|---|---|---|---|---|---|
| ADDRESS: | | | / LASD SUPERVISOR CONTACTED: Lt (WATCH COMMANDER ON DUTY) | | | |
| Census: | (Capacity:_____) | (Current Census: (_____) | | | | |
| Location(s) Inspected: | 5700, 5500 | | | | | |
| Issues Reported to: | □ BOS | □ Officer in Charge | □LASD | □ ISD | □ x OIG | □ COC |

RATING: S = Satisfactory  U = Unsatisfactory  CA = Corrective Action Needed  N/A = Not Applicable

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | U | See Below |
| Showers (water temperature, rust, mold etc.) | | |
| Crowding | U | See Below |
| Cleanliness/Grafitti | U | See Below |
| Safety, Conflict, Tension | U | See Below |
| Common Areas | | . |
| Air Quality/Temperature | U | See Below |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | U | See Below |
| Strip Search Issues | | |
| Access (Drinking Water) | | |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | U | See Below |
| Access (Toiletries, Appropriate Combs/Brushes) | U | See Below |
| Access (Exercise, Religious Practice) | U | See Below |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | U | See Below |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | U | Inmate concerns about suicidality are being ignored. |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC | U | See Below |

| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | U | See Below |
|---|---|---|
| Fees Assessed/Money on Books | | |
| Other:_____ | | |
| 2. Nutrition  Quality/concerns | U | See Below |
| Access to special diets | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 19 of 167    Page
ID #:207
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 19 of 151    Page
ID #:577

2

| | | |
|---|---|---|
| **3. Trustees** | | |
| Quarters | | |
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| **4. Medical Services** (Access, wait times, responsiveness, TB and other medical screening, dental, vision; infectious disease protocol) | U | See below |
| **5. Mental Health Services** (Access, wait Times, treatment options, assessment procedures) | U | Inmates identifies as having mental illness in 5550 are not seeing psychiatrist frequently enough. Complaints about referrals to see psychiatrist are not being met. |
| **6. Telephones   Access/Functionality** | | |
| **7. EBI Services  Availability/Type/Access  Volunteer Services** (Type, Access, Concerns) | U | 5700 has no programming. |
| **8. Clean Clothing and Bedding** (Including laundry practices) | | |
| **9. Facilities/Maintenance** | | |
| Back Log Unfilled Order(s) | | |
| Kitchen/ Laundry | | |
| Chemical exposure (kitchen, laundry, trustee duties) | | |
| **10. Deputy Staffing** | | |
| Quality of Interactions w/Detainees | U | Inmates complain of discourtesy from staff. |
| Use of Force (Last 30 days) | | |
| Assault on Staff (Last 30 days) | | |
| Staff Training (MH, trauma informed etc.) | | |
| **11. Detainee Complaints/Concerns** | | |
| **12. Deputy Complaints/Concerns** | | |
| **13. Prior Corrective Action Resolution** | | |
| **14. Detainee Documentation** (e.g., intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances. generated funds, classifications) | | |
| **15. Discipline Proceedings** | | |
| **16. Emergency Preparedness/Systems** (e.g., fire extinguishers, airpack tags, emergency evacuation routes, control centers, emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | |
| **17. Grounds** (conditions, unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | | |
| **18. Inspection: Special Focus**  OIG: *Gaps in medical care*_____  COC:_____  Community:_____ | U | See below |
| **19. COVID-19:** _____ | U | Staff was unclear on whether 5700 was on a quarantine. |
| **20. PREA Issues:**_____ | | |
| **21. Other:**_____ | | |

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 20 of 167   Page
ID #:208
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 20 of 151   Page
ID #:578

3

### INSPECTION DETAILS – ANCHORED TO SUMMARY SECTIONS 1 THROUGH 17

---

**INSPECTION DETAIL FOR #1**

#### 5700

5700 is an 88-100 person cell with several rows of double bunks placed very close together. It currently houses people with what has been described to me by staff as an "eclectic" mix of mental health conditions. A working TV blares above the door, and a group of about 15 men stand by to watch it. At the time of my visit, I was informed that 5700 was under a quarantine order due to a potential COVID positive case that was undetermined at the time.

Deputies permit me to enter 5700. When I introduce myself to individuals who are being incarcerated there, they seem eager to report a litany of problems most urgently, mostly are of the Title 15 variety – they say they have no access to the yard, they are not receiving weekly visits by a psychiatrist to adjust their medications, half of the toilets are broken, they are not being provided cleaning supplies and the floors are filthy. Their food portions are not full. Out of the many modules I have visited, the people who wish to speak with me in 5700 present as particularly agitated and they are quite aware that they are being housed in suboptimal conditions that I would describe in my notes as squalor. People indicate their feelings of neglect, harassment, intimidation by staff, who they say are discourteous to them. They expect retaliation for speaking with me.

Complaints of Suicidality Being Ignored
Most significantly, I received numerous complaints that staff are indifferent (or worse) to their complaints of being suicidal. An inmate who tells me he has attempted suicide in the past feels afraid to report feelings of suicidal ideation when they occur. An inmate alleges deputies make remarks advising individuals who complain of suicidal ideation to "do it" on another shift. I reported the complaints about suicidal ideation to the sergeant on duty at the time and briefly discussed conditions. He presented explanations for many of my concerns and reflected some sympathy, but he also did not ask me to identify the individual who had made the complaints about suicide, and that left me with the impression that he was not alarmed. The sergeant acknowledged that conditions in 5700 were challenging.

Quarantine
At the time of visiting, 5700 was on a quarantine order due to an inmate reporting symptoms several days before. But staff did not know this was the case and said they were unaware because the quarantine status was "changing all the time." They did not know whether the inmate had been tested and whether his status was determined. Staff indicated their belief that HIPAA prohibited their ability to access health information when needed for health and safety purposes. People incarcerated in 5700 were unaware of the quarantine status and sought information about it from me. Meanwhile, inmates uninformed of the heightened risk of spread of COVID did not wear masks.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 21 of 167   Page
ID #:209
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 21 of 151   Page
ID #:579

4

## Programming
I am told no educational programming is available to the population in 5700 though they are eligible for it.

## Lack of Privacy for Clinical Consultations
There is no privacy for confidential communication between inmates and clinical staff. A social worker was meeting with similarly situated inmates (from a neighboring module) standing in the hallway, as numerous deputies stood nearby and observed what should have been confidential conversations. Lack of confidentiality or privacy may deter inmates from candidly reporting symptoms or making other complaints here, and without special accommodations appears to make the space ill-suited to meeting the medical or therapeutic needs of the population.

## Bathrooms
There is a bathroom in the back of the pod with approximately 10 toilets, half of which were not functioning.

## Risk Management
Staff indicated to me there are frequent fights in 5700. A source who requested anonymity told me that DMH staff wish to relocate the population out of 5700 and nearby modules because conditions are believed to be deleterious to health, and suggested that the manner in which the population is housed is making it unsafe.

## Air Quality
Inmates report the air was still (no circulation) and hot until the module happened to go on quarantine.

## Commissary / Store
Inmates report not receiving their items from commissary, particularly they are unable to obtain the white shoes they order.

## 5550
5550 is a "H.O.P.E." module — which stands for High Observation Positive Environment. This cell has an open door to the hallway and appears to be under-crowded and highly decompressed. Staff presents empathy. Housed here are people with severe mental health conditions. Conversations with inmates reveal extremely long waits to see a psychiatrist to discuss concerns about medication, dosing, and a sense of indifference to their well-being.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 22 of 167   Page
ID #:210
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 22 of 151   Page
ID #:580

5

<u>Inspection Detail:  Building and Maintenance</u>

**CONDITION OF GROUNDS and EXTERIOR OF BUILDING(S) (lawns, recreation area, blacktop, asphalt, other, general condition, paint, roof, drains/gutters, other)**

**INTERIOR OF BUILDING(S)**

Walls, paint, floors, drains, plumbing fixtures working, air vents, windows:

Are cleaning fluids and chemicals labeled and safely stored?

Weapons locker present:

Recreation/sports equipment:

Are the hallways clear, are doors propped open or closed?

Holding areas (cells/rooms) – [if present], is there access to drinking water and toilet?

Condition of individual cells/rooms, or dormitories:

Beds – Type of bed and is it off the floor?

Adequate lighting:

Temperature:

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 23 of 167    Page
ID #:211
Case 2:24-cv-05716-SPG-AJR    Document 48-1.    Filed 10/23/24    Page 23 of 151    Page
ID #:581



PREVIOUS INSPECTION: _____ Location: _____

# Sybil Brand Commission for Institutional Inspections

Courts_____   Jails ᴹᶜᴶ_____   Sheriff Stations_____

COMMISSIONER(S): Sherman, Regalado   TIME 01:00   DATE 12/13/22

| FACILITY NAME: | Men's Central Jail | | | | |
|---|---|---|---|---|---|
| ADDRESS: | 441 Bauchet St | | | / LASD SUPERVISOR CONTACTED: | |
| Census: | Capacity: (_____)   Current Census: (_____) | | | | |
| Location(s) Inspected: | 6000, 3400, 5000, Roof | | | | |
| Issues Reported to: | ○BOS   ○Officer in Charge   ○LASD   ○ISD   ◉OIG   ○COC | | | | |

RATING:  S = Satisfactory   U = Unsatisfactory   CA = Corrective Action Needed   N/A = Not Applicable

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | | |
| Showers (water temperature, rust, mold etc.) | | 6503-3: No water pressure in shower |
| Crowding | | |
| Cleanliness/Graffiti | | 6503-3: Water leaking |
| Safety, Conflict, Tension | | |
| Common Areas | | |
| Air Quality/Temperature | | |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | | |
| Strip Search Issues | | |
| Access (Drinking Water) | | |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | | |
| Access (Toiletries, Appropriate Combs/Brushes) | | |
| Access (Exercise, Religious Practice) | | |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | | |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | | |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC | | |
| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | | |
| Fees Assessed/Money on Books | | |
| Other: _____ | | |
| **2. Nutrition Quality/concerns** | | |
| Access to special diets | | |
| **3. Trustees** | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 24 of 167    Page
. ID #:212
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 24 of 151    Page
ID #:582

| | | |
|---|---|---|
| Quarters | | |
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| 4. Medical Services (Access, wait times, responsiveness, TB and other medical screening, dental, vision; infectious disease protocol) | | See notes |
| 5. Mental Health Services (Access, wait Times, treatment options, assessment procedures) | | See notes |
| 6. Telephones   Access/Functionality | | |
| 7. EBI Services Availability/Type/Access Volunteer Services (Type, Access, Concerns) | | |
| 8. Clean Clothing and Bedding (including laundry practices) | | |
| 9. Facilities/Maintenance | | |
| Back Log Unfilled Order(s) | | |
| Kitchen/ Laundry | | |
| Chemical exposure (kitchen, laundry, trustee duti | | |
| 10. Deputy Staffing | | |
| Quality of Interactions w/Detainees | | |
| Use of Force (Last 30 days) | | See notes |
| Assault on Staff (Last 30 days) | | |
| Staff Training (MH, trauma informed etc.) | | |
| 11. Detainee Complaints/Concerns | | |
| 12. Deputy Complaints/Concerns | | |
| 13. Prior Corrective Action Resolution | | |
| 14. Detainee Documentation (e.g., Intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances, generated funds, classifications) | | |
| 15. Discipline Proceedings | | |
| 16. Emergency Preparedness/Systems (e.g., fire extinguishers, air pack tags, emergency evacuation routes, control centers, emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | |
| 17. Grounds (conditions, unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | | |
| 18. Inspection: Special Focus OIG:_____ COC:_____ Community:_____ | | |
| 19. COVID-19: _COC Request_____ | | |
| 20. PREA Issues:_____ | | |
| 21. Other: _____ | | |

### 3400-B: Medically unsupervised detoxification

Upon inspection of 3400-B, we came upon a man who appeared to be in agony as he was experiencing what appeared to be symptoms of a medically unsupervised withdrawal from opioids. When I walked up to him, he immediately begged me for help. I was told he had gone man down three times in the few days he was there, and he was ultimately told to detox in his own cell on the row. I was told he had originally been housed with cell mates on the row, but when his symptoms of withdrawal caused him to vomit on his cell mates, he was given his own cell nearby. An additional complication is the fact that the row is on a quarantine order, although there was no signage on the row alerting me to that prior to my entry, and nobody was wearing masks, including the deputy. I referred this matter to Medical for immediate attention.

### 5000: Restraint of incarcerated person with serious mental illness - incident report

This report was provided to OIG.

On December 13, 2022, Commissioner Regalado and Commissioner Sherman were in the process of conducting an inspection of various areas of MCJ, including 6000, 3000, and 5000. At around 3pm, while we stood in the watch observation deck near 5600 (or one of those 4 large dorms on 5000 that share a single deck), we heard and then later observed the removal of a person housed in an MOH dorm. We were told that he was being transferred to TTCF HOH for what was said to be a treatment-related purpose.

We observed the Sgt involved in his removal with several other deputies who walked him to the bench in the hall near the doorway to the escalators and kept him there under the watch of a number of 5-10 deputies. At that time, the person appeared to be handcuffed to the bench and behaving in a relatively calm and patient manner, even as he appeared to have a dour affect, and the deputies appeared to be relaxed. Deputies were chatting with us and offering to help us go inside the dorms to conduct an internal inspection of the dorm facilities. The situation seemed to be under control and we walked down the hall with Sgt into an office to discuss matters related to the administration of the floor.

While the incarcerated person was out of our view, I heard a verbal outburst from down the hall. I walked towards the situation to observe the incarcerated man continue to be handcuffed to the bench as he had an outburst. I was not able to make sense of his words which were generally virtiolic and did not appear to be directed at any one person. As the outburst continued, I saw deputies standing around begin to gear up with tasers, blue/black gas canisters, and eventually bring out a black canvas or kevlar wheelbarrow type of gurney. Then, a deputy told us we must leave immediately. Since Commissioner Regalado had just been speaking with the Sgt, I waited for an instruction from him. The Sgt asked us to wait where we were in the escalator vestibule.

Once in the vestibule, the floor went on lockdown as the door was locked in front of us. We attempted to view the situation through the small window of the locked door but a deputy stood there to obstruct our view. While we stood behind the locked door of the vestibule, the deputies did not appear to take action while the distressed man continued to express verbal outburst. Even though he was out of view, my belief is at that point he remained handcuffed to the bench. I did

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 26 of 167   Page
ID #:214
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 26 of 151   Page
ID #:584

not see any deputies use force or intentionally agitate the inmate, but they did encircle him while holding spray and tasers.

The deputies then huddled into the interior of the office adjacent to the escalator vestibule. After some time, a deputy emerged from the office and told us to leave the floor entirely. We were told the inmate had spit on a deputy, but we did not see this happen nor did we see or hear any action taken in response to the apparent spitting. I did not see the Sgt again and did not receive a follow up instruction from him. Mr. Regalado and I remained restricted from the area, behind a locked door, yet it seemed clear, as long as we remained on the floor, the deputies were not going to take any action. After some more time, Mr. Regalado and I decided to leave. We then met with the watch commander and reported the fact of the incident occurring on the floor to them. The watch commander did not ask for our observations as to what we saw.

As Commission Regalado and I left the building, we discussed our observations. The question on both of our minds was why we as commissioners conducting an inspection were not allowed to remain even behind the locked door, but also why they felt they could not do whatever it is they were going to do to effect the transfer with us being present. It is our impression we saw a situation that started as a transfer for treatment purposes, yet there were no medical or mental health personnel present to lead or monitor the transfer. This then escalated and became a potential UOF.

Later, I learned a Use of Force did occur, the person was recommended for disciplinary housing, but was instead diverted to HOH housing at TTCF.



PREVIOUS INSPECTION_____Location_____

# Sybil Brand Commission for Institutional Inspections

Courts_____   Jails x   Sheriff Stations_____

| COMMISSIONER(S): | TIME | DATE |
|---|---|---|
| Veral | | 2/14/2023 |

| FACILITY NAME: | Men's Central Jail | | |
|---|---|---|---|
| ADDRESS: | 441 Bauchet St | | |
| Census: | (Capacity:_____) | (Current Census: (_____) | |
| Location(s) Inspected: | 6050, 5000 Floor (5500 dorm) | | |
| Issues Reported to: | □ BOS    □ Officer in Charge    □ LASD    □ ISD    x OIG    □ COC | | |

**RATING:  S = Satisfactory   U = Unsatisfactory   CA = Corrective Action Needed   N/A = Not Applicable**

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | | |
| Showers (water temperature, rust, mold etc.) | | |
| Crowding | U | The 5000 dorm that is designated mental health housing continues to be very crowded. Inmates cannot be supervised from inside the deputy booth. |
| Cleanliness/Grafitti | U | There was trash all along the floor on the escalators on the new side (4000/5000 side). The escalator was also broken. |
| Safety, Conflict, Tension | | |
| Common Areas | U | There is a large brown stain running along the wall outside of 6050. It appears to be coming through the ceiling. |
| Air Quality/Temperature | | |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | | |
| Strip Search Issues | | |
| Access (Drinking Water) | | |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | | |
| Access (Toiletries, Appropriate Combs/Brushes) | | |
| Access (Exercise, Religious Practice) | | |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | U | Keeping people in the hallway chained to gurneys is very problematic |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | U | 6050 inmates reported not receiving diets that they could eat. They had been told they have to wait until they get to "permanent" housing before they can receive a special diet. |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC | | |
| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | | |

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 28 of 167   Page
ID #:216
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 28 of 151   Page
ID #:586

| Fees Assessed/Money on Books | | |
|---|---|---|
| Other: _____ | | |
| 2. Nutrition Quality/concerns | | |
| Access to special diets | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 29 of 167    Page
ID #:217
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 29 of 151    Page
ID #:587

3

| | | |
|---|---|---|
| **3. Trustees** | | |
| Quarters | | |
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| **4. Medical Services** (Access, wait times, responsiveness, TB and other medical screening, dental, vision; infectious disease protocol) | . | |
| **5. Mental Health Services** (Access, wait Times, treatment options, assessment procedures) | U | In 6050 there were three men without clothes (they were wearing suicide gowns) chained to gurneys in the hallway, apparently waiting to see the psychiatrist or receive mental health care. It appeared as though LASD is using this area as additional IRC overflow. OIG took the information.<br><br>Every individual I spoke with in 6050 said they were waiting to see the doctor. |
| **6. Telephones    Access/Functionality** | | |
| **7. EBI Services  Availability/Type/Access** | U | |
| **Volunteer Services** (Type, Access, Concerns) | | |
| **8. Clean Clothing and Bedding** (Including laundry practices) | U | There were piles of dirty laundry in the front cells of 6050. |
| **9. Facilities/Maintenance** | | |
| Back Log Unfilled Order(s) | | |
| Kitchen/ Laundry | | . |
| Chemical exposure (kitchen, laundry, trustee duties) | | |
| **10. Deputy Staffing** | | |
| Quality of Interactions w/Detainees | | |
| Use of Force (Last 30 days) | | |
| Assault on Staff (Last 30 days) | | |
| Staff Training (MH, trauma informed etc.) | | |
| **11. Detainee Complaints/Concerns** | | |
| **12. Deputy Complaints/Concerns** | | |
| **13. Prior Corrective Action Resolution** | | |
| **14. Detainee Documentation** (e.g., intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances, generated funds, classifications) | | |
| **15. Discipline Proceedings** | | |
| **16. Emergency Preparedness/Systems** (e.g., fire extinguishers, airpack tags, emergency evacuation routes, control centers, emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | . |
| **17. Grounds** (conditions, unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | . | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 30 of 167   Page
ID #:218
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 30 of 151   Page
ID #:588

4

| | | |
|---|---|---|
| **18. Inspection: Special Focus**<br>OIG:_____<br><br>COC:_____<br><br>Community:_____ | | |
| **19. COVID-19: _COC Request_____** | | |
| **20. PREA Issues:_____** | | |
| **21. Other: _____** | | |

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 31 of 167   Page
ID #:219
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 31 of 151   Page
ID #:589



PREVIOUS INSPECTION_____Location_____
**Sybil Brand Commission for Institutional Inspections**

Courts_____  Jails _x_____  Sheriff Stations_____

**COMMISSIONER(S):**          **TIME**       **DATE**
Veral                                      2/14/2023

| | |
|---|---|
| **FACILITY NAME:** | Men's Central Jail |
| **ADDRESS:** | 441 Bauchet St |
| **Census:** | (Capacity:_____)      (Current Census: (_____) |
| **Location(s) Inspected:** | 6050, 5000 Floor (5500 dorm) |
| **Issues Reported to:** | □ BOS   □ Officer in Charge   □ LASD   □ ISD   x OIG   □ COC |

RATING: S = Satisfactory  U = Unsatisfactory  CA = Corrective Action Needed  N/A = Not Applicable

| ITEMS | RATING | COMMENTS |
|---|---|---|
| **1.Conditions of Confinement** | | |
| Cells/Toilets/Sinks | | |
| Showers (water temperature, rust, mold etc.) | | |
| Crowding | U | The 5000 dorm that is designated mental health housing continues to be very crowded. Inmates cannot be supervised from inside the deputy booth. |
| Cleanliness/Grafitti | U | There was trash all along the floor on the escalators on the new side (4000/5000 side). The escalator was also broken. |
| Safety, Conflict, Tension | | |
| Common Areas | U | There is a large brown stain running along the wall outside of 6050. It appears to be coming through the ceiling. |
| Air Quality/Temperature | | |
| Deputy/Detainee Relations (incl. specific incidents or allegations of misconduct | | |
| Strip Search Issues | | |
| Access (Drinking Water) | | |
| Access (Mail/Reading Materials/Law Library) | | |
| Access (Toilets (for common room) | | |
| Access (Toiletries, Appropriate Combs/Brushes) | | |
| Access (Exercise, Religious Practice) | | |
| Access (Legal Counsel) | | |
| Access (Visitation, correspondence) | | |
| Solitary Confinement | | |
| Privacy/Dignity (showers, bathrooms) | U | Keeping people in the hallway chained to gurneys is very problematic |
| Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability) | U | 6050 inmates reported not receiving diets that they could eat. They had been told they have to wait until they get to "permanent" housing before they can receive a special diet. |
| Module Information Postings (re: time calculations, complaint procedures, messages to SBC | | |
| Complaint Procedures (e.g., Deputy, medical complaints – confidential procedures to SBC, OIG, COC) | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 32 of 167    Page
ID #:220
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 32 of 151    Page
ID #:590

| | | |
|---|---|---|
| Fees Assessed/Money on Books | | |
| Other: ___ . | | . |
| 2. Nutrition  Quality/concerns | | . |
| Access to special diets | . | |

| | | |
|---|---|---|
| **3. Trustees** | | |
| Quarters | | |
| Training & Selection | | |
| Workload and Hours | | |
| Calculation/Time Served | | |
| **4. Medical Services** (Access, wait times, responsiveness, TB and other medical screening, dental, vision; infectious disease protocol) | | |
| **5. Mental Health Services** (Access, wait Times, treatment options, assessment procedures) | U | In 6050 there were three men without clothes (they were wearing suicide gowns) chained to gurneys in the hallway, apparently waiting to see the psychiatrist or receive mental health care. It appeared as though LASD is using this area as additional IRC overflow. OIG took the information.<br><br>Every individual I spoke with in 6050 said they were waiting to see the doctor. |
| **6. Telephones** Access/Functionality | | |
| **7. EBI Services** Availability/Type/Access<br>**Volunteer Services** (Type, Access, Concerns) | U | |
| **8. Clean Clothing and Bedding** (including laundry practices) | U | There were piles of dirty laundry in the front cells of 6050. |
| **9. Facilities/Maintenance** | | |
| Back Log Unfilled Order(s) | | |
| Kitchen/ Laundry | | |
| Chemical exposure (kitchen, laundry, trustee duties) | | |
| **10. Deputy Staffing** | | |
| Quality of Interactions w/Detainees | | |
| Use of Force (Last 30 days) | | |
| Assault on Staff (Last 30 days) | | |
| Staff Training (MH, trauma informed etc.) | | |
| **11. Detainee Complaints/Concerns** | : | |
| **12. Deputy Complaints/Concerns** | | |
| **13. Prior Corrective Action Resolution** | | |
| **14. Detainee Documentation** (e.g., intake/ release, procedures: classification, logs, detainee management files, Exit Interview – policies/procedure grievances. generated funds, classifications) | | |
| **15. Discipline Proceedings** | | |
| **16. Emergency Preparedness/Systems** (e.g., fire extinguishers, airpack tags, emergency evacuation routes, control centers, emergency lighting fixtures, safety drills, First Aid and Suicide kits) | | |
| **17. Grounds** (conditions, unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | | |

4

| 18. Inspection: Special Focus OIG:_____ COC:_____ Community:_____ | | |
|---|---|---|
| 19. COVID-19: _COC Request_____ | | |
| 20. PREA Issues:_____ | | |
| 21. Other: _____ | | |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 35 of 167    Page
ID #:223
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 35 of 151    Page
ID #:593

## Inspection Information

1. Location *

MCJ and TTCF

2. Date of Previous Inspection *

04/2023

3. Location

|  | Courts | Jails | Sheriff Station |
|---|---|---|---|
| Location |  |  |  |

4. Commissioner(s) - (Select all that Apply) *

Ingrid Archie

Mark - Anthony Clayton Johnson

Bob Frutos

Dr. Chery N. Grills

Eric Miller

Alexander Sherman

Joahanna Terrones

Mary Veral

Other

**5. Date of this Inspection ***

7/14/2023

**6. Time ***

9:00am

## Facility Information

**7. Facility Name ***

MCJ and TTCF

**8. Address ***

Bauchet Street

**9. Name and Title of LASD Supervisor Contacted ***

Gallego, Slutsky

**10. Census: Capacity ***

MCJ Population 3723

**11. Current Census ***

MCJ Population 3723

**12. Location(s) Inspected: ***

5000 Floor, Kitchen

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 37 of 167    Page
ID #:225
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 37 of 151    Page
ID #:595

13. Issues reported to *(Select all that Apply)*: *

BOS

Officer in Charge

LASD

ISD

OIG

COC

Other

14. Name of the person(s) issues were reported to: *

Gallego

15. Contact Information of the person(s) contacted: *

N/A

## Conditions of Confinement

16. **Condition of Confinement: Cells/Toilets/Sinks**

Unsatisfactory                    ⌄

17. **Condition of Confinement COMMENTS RE: Cells/Toilets/Sinks**

Toilets out of order in dorms

18. **Condition of Confinement: Showers (water temperature, rust, mold etc.)**

Unsatisfactory                    ⌄

19. **Conditions of Confinement COMMENT RE: Showers (water temperature, rust, mold etc.)**

Low water pressure

20. **Condition of Confinement: Crowding**

Unsatisfactory                    ⌄

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 38 of 167   Page
ID #:226
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 38 of 151   Page
ID #:596

21. **Conditions of Confinement COMMENT RE:** Crowding

Mental health dorms continue to operate at maximum capacity of 87 people per dorm, in triple bunk units

22. **Condition of Confinement:** Cleanliness/Graffiti

Not Applicable                              ⌄

23. **Condition of Confinement:** Safety, Conflict, Tension

Unsatisfactory                             ⌄

24. **Conditions of Confinement COMMENT RE:** Safety, Conflict, Tension

Inmates in MH dorms reported a past incident involving persons with MH stirring fights, leading to aggressive response by LASD involving use of pepper spray, including an
allegation by an inmate that LASD had fired a pepper spray gun at the back of his friends head. Incident was said to have occurred in May 2023 in 5800.

25. **Condition of Confinement:** Common Areas

Not Applicable                             ⌄

26. **Condition of Confinement:** Air Quality/Temperature

Unsatisfactory                            ⌄

27. **Conditions of Confinement COMMENT RE:** Air Quality/Temperature

Air smelled like smoke from burning fires.

28. **Condition of Confinement:** Deputy/Detainee Relations (including Specific Incidents or allegations of misconduct)

Not Applicable                             ⌄

29. **Condition of Confinement:** Strip Search Issues

Not Applicable                             ⌄

30. **Condition of Confinement:** Access (Drinking Water)

Not Applicable                             ⌄

31. **Condition of Confinement:** Access (Mail/Reading Materials/Law Library)

Not Applicable                             ⌄

32. **Condition of Confinement:** Access (Toilets for Common Room)

Not Applicable                             ⌄

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 39 of 167    Page
ID #:227
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 39 of 151    Page
ID #:597

**33. Condition of Confinement: Access (Toiletries, Appropriate Combs/Brushes)**

Not Applicable    ⌄

**34. Condition of Confinement: Access (Exercise, Religious Practice)**

Not Applicable    ⌄

**35. Condition of Confinement: Access (Legal Counsel)**

Not Applicable    ⌄

**36. Condition of Confinement: Access (Visitation, Correspondence)**

Not Applicable    ⌄

**37. Condition of Confinement: Solitary Confinement**

Not Applicable    ⌄

**38. Condition of Confinement: Privacy/Dignity (showers, bathrooms)**

Not Applicable    ⌄

**39. Condition of Confinement: Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability)**

Unsatisfactory    ⌄

**40. Conditions of Confinement COMMENT RE: Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability)**

MH population housed in overcrowded conditions (87 per dorm, triple bunks). Sheets and towels that had provided individuals with some sense of separation from overcrowded facilities have been removed.

**41. Condition of Confinement: Module Information Postings (re: time calculations, complaint, developmental disability)**

Not Applicable    ⌄

**42. Condition of Confinement: Complaint Procedure (e.g., Deputy, Medical Complaints - Confidential Procedures to SBC, OIG, COC)**

Not Applicable    ⌄

**43. Condition of Confinement: Fees Assessed/ Money on Books**

Corrective Action Needed    ⌄

**44. Conditions of Confinement COMMENT RE: Fees Assessed/ Money on Books**

Inmates said personal belongings (items purchased from commissary) had been taken from them / stolen after the module was cleaned following the pepper spray incident in May 2023

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 40 of 167    Page
ID #:228
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 40 of 151    Page
ID #:598

**45. Condition of Confinement: Other**

**46. Condition of Confinement: Other**

Select your answer                    ⌄

## Nutrition

**47. Nutrition: Quality/Concerns**

Unsatisfactory                    ⌄

**48. Nutrition COMMENT RE: Quality/Concerns**

Refrigerator in basement was broken. Hundreds of pre-prepared meals were to be stored in the broken refrigerator for the duration of weekend.

**49. Nutrition: Access to special diets**

Not Applicable                    ⌄

## Trustees

**50. Trustees: Quarters**

Not Applicable                    ⌄

**51. Trustees: Training and Selection**

Not Applicable                    ⌄

**52. Trustees: Workload and Hours**

Not Applicable                    ⌄

**53. Trustees: Calculation/Time Served**

Not Applicable                    ⌄

## Medical Services

**54. Medical Services**

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ⊙ | ⊙ | ⊙ | ⊙ |
| Wait Times | ⊙ | ⊙ | ⊙ | ⊙ |
| Responsiveness | ⊙ | ⊙ | ⊙ | ⊙ |
| TB and Other Medical Screening | | ⊙ | ⊙ | ⊙ |
| Dental | | | ⊙ | ⊙ |
| Vision | ⊙ | | ⊙ | ⊙ |
| Infectious Disease Protocol | ⊙ | ⊙ | ⊙ | ⊙ |

**55. COMMENTS RE: Medical**

## Mental Health

**56. Mental Health Services**

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ⊙ | ⊙ | ⊙ | ⊙ |
| Wait Times | | ⊙ | | ⊙ |
| Treatment Options | ⊙ | ⊙ | ⊙ | ⊙ |
| Assessment Procedures | ⊙ | ⊙ | ⊙ | ⊙ |

**57. COMMENTS RE: Mental Health**

Access to MH services in 5800 is extremely limited.

At TTCF, individuals were being housed in solitary confinement HOH housing while LASD personnel including deputies watched a movie on LASD computers.

**Telephones**

**58. Telephones**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ○ | ○ | ○ | ◉ |
| Functionality | ○ | ○ | ○ | ◉ |

**59. COMMENTS RE: Telephones**

**Education Based Incarceration Programming (EBI)**

**60. Education Based Incarceration Programming (EBI)**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Availability | ○ | ○ | ○ | ◉ |
| Type | ○ | ○ | ○ | ◉ |
| Access | ○ | ○ | ○ | ◉ |

**61. COMMENTS RE: EBI Programming**

**62. EBI: Volunteer Services**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Type | ○ | ○ | ○ | ◉ |
| Access | ○ | ○ | ○ | ◉ |
| Concerns | ○ | ○ | ○ | ◉ |

**63. COMMENTS RE EBI: Volunteer Services**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 43 of 167    Page
ID #:231
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 43 of 151    Page
ID #:601

## Clean Clothing and Bedding

**64. Clean Clothing and Bedding** (including laundry practices)

Not Applicable ⌄

## Facilities/Maintenance

**65. Facilities/Maintenance: Back Log Unfilled Order(s)**

Not Applicable ⌄

**66. Facilities/Maintenance COMMENTS RE: Back Log Unfilled Order(s)**

**67. Facilities/Maintenance: Kitchen/Laundry**

Unsatisfactory ⌄

**68. Facilities/Maintenance COMMENTS RE: Kitchen/Laundry**

Refrigerator storing pre-made meals was broken at time of visit. This was reported to DPH who inspected the following week and reported back to inspector AS that the refrigerator had been repaired.

**69. Facilities/Maintenance: Chemical exposure (kitchen, laundry, trustee duties)**

Unsatisfactory ⌄

**70. Facilities/Maintenance COMMENTS RE: Chemical exposure (kitchen, laundry, trustee duties)**

Inmates burning fires (it is unclear what they are burning) cause air to smell like smoke.

## Deputy Staffing

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 44 of 167   Page
ID #:232
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 44 of 151   Page
ID #:602

71. **Deputy Staffing:** Quality of Interactions w/Detainees

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Use of Force (Last 30 days) | | | | |
| Assault on Staff (Last 30 days) | | | | |
| Staff Training (MH, trauma informed etc.) | | | | |

72. **Deputy Staffing COMMENTS RE:** Quality of Interactions w/Detainees

73. **Detainee Complaints/Concerns COMMENTS:**

Inmate alleged his friend had been shot in the head with a pepper spray gun in May 2023 in 5800.

74. **Deputy Complaint/Concerns COMMENTS:**

75. **Prior Corrective Action Resolution:**

LASD does not provide SBC with Corrective Action Plans.

76. **Detainee Documentations** (e.g., intake/release, procedures):

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Classification | | | | |
| Logs | | | | |
| Detainee management | | | | |
| Exit interview policies/procedure grievances | | | | |
| Generated funds | | | | |

**77. Detainee Documentation COMMENTS:**

**78. Discipline Proceedings:**

Not Applicable    ⌄

**79. Emergency Preparedness/Systems:**

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Fire Extinguishers | ○ | ○ | ○ | ◉ |
| Airpack Tags | ○ | ○ | ○ | ◉ |
| Emergency Evacuation Routes | ○ | ○ | ○ | ◉ |
| Control Centers | ○ | ○ | ○ | ◉ |
| Emergency Lighting Fixtures | ○ | ○ | ○ | ◉ |
| Safety Drills | ○ | ○ | ○ | ◉ |
| First Aid and Suicide Kits | ○ | ○ | ○ | ◉ |

**80. Emergency Preparedness/Systems COMMENTS:**

LASD personnel indicated the facility utilizes no smoke alarms

**81. Grounds:**

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Conditions | ○ | ○ | ○ | ◉ |
| Unlawful postings on exterior grounds (e.g., if ever been convicted cannot visit a detainee, etc.) | ○ | ○ | ○ | ◉ |

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 46 of 167   Page
ID #:234
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 46 of 151   Page
ID #:604

**82. Grounds COMMENTS:**

## Inspection: Special Focus

**83. Inspection: Special Focus**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Available |
|---|---|---|---|---|
| COC | | | ○ | ◉ |
| Community | | | | ◉ |
| CHS | ○ | ○ | ○ | ◉ |
| DMH | ○ | ○ | ○ | ◉ |
| DPH | ○ | ○ | ○ | ◉ |
| Facilties | ○ | ○ | ○ | ◉ |
| Food Services | ○ | ◉ | ○ | ○ |
| OIG | ○ | ○ | ○ | ◉ |
| Other | ○ | ○ | ○ | ◉ |

**84. Inspection: Special Focus Request** *(Select all that Apply)*:

COC

Community

☐ CHS

☐ DMH

DPH

Facilities

☐ Food Services

☐ OIG

☐ N/A

Other

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 47 of 167    Page
ID #:235
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 47 of 151    Page
ID #:605

85. Inspection: Special Focus Request Comments:

86. **Prison Rape Elimination Act (PREA) Issues:**

   Not Applicable                    ⌄

87. **Other:**

## INSPECTION DETAILS - ANCHORED TO SUMMARIZE #3 THROUGH #106

88. Inspection Detail for #:

89. Inspection Detail for #:

90. Inspection Detail for #:

91. Inspection Detail for **OIG** Request Related to:

92. Inspection Detail for **COC** Request Related to:

93. Inspection Detail for **Community Request** Related to:

94. **Inspection Detail:** EBI

95. **Inspection Detail:** Medical

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 48 of 167     Page
ID #:236
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 48 of 151     Page
ID #:606

**96. Inspection Detail: Medical**

**97. Inspection Detail: Building and Maintenance** *(Select all that apply)*

- Lawns
- Recreation Area
- Blacktop
- Asphalt
- General Condition
- Paint
- Roof
- Drains/Gutters
- Not Applicable
- Other

**98. Inspection Detail: Building and Maintenance**

INSPECTION DETAIL: INTERIOR OF BUILDINGS(S)

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 49 of 167    Page
ID #:237
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 49 of 151    Page
ID #:607

99. Inspection Detail: Interior of Building(s) and Maintenance *(Select all that apply)*

☐ Walls

☐ Paint

☐ Floors

☐ Drains

☐ Plumbing fixtures working

☐ Air Vents

☐ Windows

☐ Not Applicable

☐ Other

100. Inspection Detail Interior of Building:

101. Are Cleaning fluids and chemicals labeled and safely stored?

Select your answer          ⌄

102. Weapons locker present?

Select your answer          ⌄

103. Recreation/Sports Equipment:

104. Are the hallways clear, are doors propped open or closed?

Select your answer          ⌄

105. Holding areas (cells/rooms), is there access to drinking water and toilet?

Select your answer          ⌄

106. Condition of individual cells/rooms, or dormitories:

107. Beds - Type of bed and is it off the floor?

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 50 of 167    Page
ID #:238
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 50 of 151    Page
ID #:608

108. Adequate lighting:

109. Temperature:

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 51 of 167   Page
ID #:239
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 51 of 151   Page
ID #:609

View results

Respondent

26   Anonymous

**34:28**
**Time to complete**

## Inspection Information

1. Location *

   Men's Central Jail

2. Date of Previous Inspection *

   10/9/2023

3. Date of this Inspection *

   4/17/2024

4. Time *

   1:45pm

5. **Location**

|  | Courts | Jails | Sheriff Station |
|---|---|---|---|
| Location |  |  |  |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 52 of 167    Page
ID #:240
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 52 of 151    Page
ID #:610

6. Commissioner(s) - (Select all that Apply) *

      Ingrid Archie

      Haley Broder

      Norma Cumpian

      Wynter Daggs

      Mark - Anthony Clayton Johnson

      Bob Frutos

      Dr. Cheryl N. Grills

      Eric J. Miller

      Raymond Regalado

      Alexander Sherman

      Joahanna Terrones

      Mary Veral

      Other

## Facility Information

7. Facility Name *

Courthouse names and locations: https://www.lacourt.org/courthouse

Patrol Names and locations Stations: https://lasd.org/stations/

LA County Jail Facilities names and locations: https://lasd.org/custody/

    Men's Central Jail

8. Facility Address *

Courthouse names and locations: https://www.lacourt.org/courthouse

Patrol Names and locations Stations: https://lasd.org/stations/

LA County Jail Facilities names and locations: https://lasd.org/custody/

    441 Bauchet Street,
    Los Angeles, CA 90012 General

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 53 of 167    Page
ID #:241
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 53 of 151    Page
ID #:611

9. Name and Title of LASD Supervisor Contacted *

Lieutenant Vu; Lieutenant Short

10. Census: Capacity *

4800

11. Current Census *

4051

12. Location(s) Inspected: *

6050, 7000FL (including high power row); 3100/3300, 3500, 3000 FL mess hall, 3907 room and 3000 floor Hunter Library and 3000 FL Education Based
Incarceration classrooms

13. Issues reported to *(Select all that Apply)*: *

☐ BOS

☒ Officer In Charge

☐ LASD

☐ ISD

☐ OIG

☐ COC

☐ Other

14. Name of the person(s) issues were reported to: *

Lieutenant Short

15. Contact Information of the person(s) contacted: *

RFshort@lasd.org

**Conditions of Confinement**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 54 of 167    Page
ID #:242
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 54 of 151    Page
ID #:612

16. **Condition of Confinement:** Cells/Toilets/Sinks

   · Satisfactory

   · Unsatisfactory

   Corrective Action Needed

   Not Applicable


17. **Condition of Confinement COMMENTS RE:** Cells/Toilets/Sinks

   No hot water in 6502


18. **Condition of Confinement:** Showers (water temperature, rust, mold etc.)

   Satisfactory

   Unsatisfactory

   Corrective Action Needed

   Not Applicable ·


19. **Conditions of Confinement COMMENT RE:** Showers (water temperature, rust, mold etc.)

   Dirty showers in the 3500 block


20. **Condition of Confinement:** Crowding

   :  Satisfactory

   Unsatisfactory

   Corrective Action Needed

   Not Applicable


21. **Conditions of Confinement COMMENT RE:** Crowding

   Individuals who were classified K10 according to their jail bracelets and so should have been assigned single cells with televisions and commissary were
   assigned to an area with no commissary, television, nor property. These men had the property they had bought taken from them.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 55 of 167    Page
ID #:243
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 55 of 151    Page
ID #:613

**22. Condition of Confinement:** Cleanliness/Graffiti

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**23. Conditions of Confinement COMMENT RE:** Cleanliness/Graffiti

In every dormitory we visited, there was trash covering the floors and the floors were not clean and the jail in general manifested a severe lack of sanitation.

**24. Condition of Confinement:** Safety, Conflict, Tension

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**25. Conditions of Confinement COMMENT RE:** Safety, Conflict, Tension

we witnessed Sheriff Deputy threaten to retaliate against the men housed in 7000 unit in front of their sergeant; we also witnessed the prohibition of purchasing batteries from all but a small proportion of the men incarcerated in the jails which the men said raised their stress levels, undermining their mental health, despite there being other means of responding to safety concerns regarding fires in the jail, and despite there being a pervasive smell of smoke and burning in the jail.

**26. Condition of Confinement:** Common Areas

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**27. Conditions of Confinement COMMENT RE:** Common Areas

The mess hall on the 3000 floor was the severely unsanitary, with food detritus on chairs, tables, and in a cart in the middle of the room, a cupboard in the 7000 block had food left to rot inside it, a room in 3907 had toilets that were covered in black fungus or mold and stank, and the floors of 3100, 3300, 3500, and 7000 were covered with trash.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 56 of 167    Page
ID #:244
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 56 of 151    Page
ID #:614

28. **Condition of Confinement:** Air Quality/Temperature

     Satisfactory

     Unsatisfactory

     Corrective Action Needed

     Not Applicable

29. **Conditions of Confinement COMMENT RE:** Air Quality/Temperature

     The men in 7000 claimed there was no air circulating and they found it hard to breathe. They had ended a hunger strike to complain about the conditions because the Lieutenant had allowed the men to keep their food/cuffing hatches open. While we were present, a sergeant appeared, closed the hatches, and announced that a captain had rescinded the lieutenant's policy.

30. **Condition of Confinement:** Deputy/Detainee Relations (including Specific Incidents or allegations of misconduct)

     Satisfactory

     Unsatisfactory

     Corrective Action Needed

     Not Applicable

31. **Conditions of Confinement COMMENT RE:** Deputy/Detainee Relations (including Specific Incidents or allegations of misconduct)

     A deputy retaliated against the men in the 7000 block. The prohibition on batter purchases appears to be retaliatory.

32. **Condition of Confinement:** Strip Search Issues

     Satisfactory

     Unsatisfactory

     Corrective Action Needed

     Not Applicable

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 57 of 167    Page
ID #:245
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 57 of 151    Page
ID #:615

**33. Condition of Confinement:** Access (Drinking Water)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**34. Condition of Confinement:** Access (Mail/Reading Materials/Law Library)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**35. Conditions of Confinement COMMENT RE:** Access (Mail/Reading Materials/Law Library)

    The Hunter Library had leaks in the ceiling.

**36. Condition of Confinement:** Access (Toilets for Common Room)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**37. Condition of Confinement:** Access (Toiletries, Appropriate Combs/Brushes)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

**38. Conditions of Confinement COMMENT RE:** Access (Toiletries, Appropriate Combs/Brushes)

    The commissioners reported at least one person who lacked toothpaste in the 3500 unit.

**39. Condition of Confinement:** Access (Exercise, Religious Practice)

- ○ Satisfactory

- ○ Unsatisfactory

- ○ Corrective Action Needed

- ⊙ Not Applicable

**40. Condition of Confinement:** Access (Legal Counsel)

- ○ Satisfactory

- ○ Unsatisfactory

- ○ Corrective Action Needed

- ⊙ Not Applicable

**41. Condition of Confinement:** Access (Visitation, Correspondence)

- ○ Satisfactory

- ○ Unsatisfactory

- ○ Corrective Action Needed

- ○ Not Applicable

**42. Condition of Confinement:** Solitary Confinement

- ○ Satisfactory

- ○ Unsatisfactory

- ○ Corrective Action Needed

- ⊙ Not Applicable

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 59 of 167   Page
ID #:247
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 59 of 151   Page
ID #:617

43. **Condition of Confinement:** Privacy/Dignity (showers, bathrooms)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

44. **Condition of Confinement:** Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

45. **Conditions of Confinement COMMENT RE:** Special needs populations (pregnant, non-ambulatory, hearing impaired, mentally ill, medical conditions, developmental disability)

    The CPAP men housed in 6500 lacked ADA compliant showers and one lacked a wheelchair, which impeded his ability to attend court.

46. **Condition of Confinement:** Module Information Postings (re: time calculations, complaint, developmental disability)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

47. **Condition of Confinement:** Complaint Procedure (e.g., Deputy, Medical Complaints - Confidential Procedures to SBC, OIG, COC)

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 60 of 167   Page
ID #:248
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 60 of 151   Page
ID #:618

**48. Condition of Confinement:** Fees Assessed/ Money on Books

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

**49. Conditions of Confinement COMMENT RE:** Fees Assessed/ Money on Books

Men housed in the 3500 unit who were given a K10 classification lost the property they had bought

**50. Condition of Confinement:** Other

**51. Condition of Confinement:** Other

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

## Nutrition

**52. Nutrition:** Quality/Concerns

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

**53. Nutrition COMMENT RE:** Quality/Concerns

Men on the 7000 block and 3000 block complained their food was served cold.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 61 of 167    Page
ID #:249
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 61 of 151    Page
ID #:619

**54. Nutrition:** Access to special diets

      Satisfactory

      Unsatisfactory

      Corrective Action Needed

      Not Applicable

## Trustees

**55. Trustees:** Quarters

      Satisfactory

      Unsatisfactory

      Corrective Action Needed

      Not Applicable

**56. Trustees:** Training and Selection

      Satisfactory

      Unsatisfactory

      Corrective Action Needed

      Not Applicable

**57. Trustees:** Workload and Hours

      Satisfactory

      Unsatisfactory

      Corrective Action Needed

      Not Applicable

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 62 of 167    Page
ID #:250
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 62 of 151    Page
ID #:620

**58. Trustees: Calculation/Time Served**

○ Satisfactory

○ Unsatisfactory

○ Corrective Action Needed

○ Not Applicable

## Medical Services

**59. Medical Services**

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ○ | ○ | ○ | ○ |
| Wait Times | ○ | ○ | ○ | ○ |
| Responsiveness | | | ○ | ○ |
| TB and Other Medical Screening | ○ | | ○ | ○ |
| Dental | ○ | ○ | ○ | ○ |
| Vision | ○ | ○ | ○ | ○ |
| Infectious Disease Protocol | ○ | ○ | ○ | ○ |

**60. COMMENTS RE: Medical**

## Mental Health

**61. Mental Health Services**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access |  |  |  |  |
| Wait Times |  |  |  |  |
| Treatment Options |  |  |  |  |
| Assessment Procedures |  |  |  |  |

**62. COMMENTS RE:** Mental Health

## Telephones

**63. Telephones**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access |  |  |  |  |
| Functionality |  |  |  |  |

**64. COMMENTS RE:** Telephones

We primarily checked on the telephones in 6500 and 7000 and observed functioning telephones and the men had access to them.

## Education Based Incarceration Programming (EBI)

**65. Education Based Incarceration Programming (EBI)**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Availability |  |  |  |  |
| Type |  |  |  |  |
| Access |  |  |  |  |

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 64 of 167    Page
ID #:252
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 64 of 151    Page
ID #:622

**66. COMMENTS RE:** EBI Programming

The rooms in which the men receive education based incarceration were moldy.

**67. EBI:** Volunteer Services

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Type |  |  |  | · |
| Access |  |  |  | · |
| Concerns |  |  |  | · |

**68. COMMENTS RE EBI:** Volunteer Services

## Clean Clothing and Bedding

**69. Clean Clothing and Bedding** (including laundry practices)

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

**70. COMMENTS RE: Clean Clothing and Bedding** (including laundry practices)

The mattresses in 6500 and 3000 did not have a non-absorbent plastic cover and were not changed weekly as required by Title 15.

## Facilities/Maintenance

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 65 of 167    Page
ID #:253
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 65 of 151    Page
ID #:623

71. **Facilities/Maintenance:** Back Log Unfilled Order(s)

   Satisfactory

   Unsatisfactory

   Corrective Action Needed

   Not Applicable

72. **Facilities/Maintenance COMMENTS RE:** Back Log Unfilled Order(s)

73. **Facilities/Maintenance:** Kitchen/Laundry

   Satisfactory

   Unsatisfactory

   Corrective Action Needed

   Not Applicable

## Deputy Staffing

74. **Deputy Staffing:** Quality of Interactions w/Detainees

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Use of Force (Last 30 days) | | | | |
| Assault on Staff (Last 30 days) | | | | |
| Staff Training (MH, trauma informed etc.) | | | | |

75. **Deputy Staffing COMMENTS RE:** Quality of Interactions w/Detainees

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 66 of 167    Page
ID #:254
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 66 of 151    Page
ID #:624

**76. Detainee Complaints/Concerns COMMENTS:**

**77. Deputy Complaint/Concerns COMMENTS:**

**78. Prior Corrective Action Resolution:**

**79. Detainee Documentations (e.g., intake/release, procedures):**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Classification |  |  |  |  |
| Logs |  |  |  |  |
| Detainee management |  |  |  |  |
| Exit interview - policies/proced ure grievances |  |  |  |  |
| Generated funds |  |  |  |  |

**80. Detainee Documentation COMMENTS:**

**81. Discipline Proceedings:**

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

# Inspection: Special Focus

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 67 of 167    Page
ID #:255
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 67 of 151    Page
ID #:625

**82. Inspection: Special Focus**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Available |
|---|---|---|---|---|
| COC | ○ | ○ | ○ | ○ |
| Community | ○ | ○ | ○ | ○ |
| CHS | ○ | ○ | ○ | ○ |
| DMH | | | ○ | ○ |
| DPH | ○ | ○ | ○ | ○ |
| Facilities | ○ | ◎ | ○ | ○ |
| Food Services | ○ | ○ | ○ | ○ |
| OIG | ○ | ○ | ○ | ○ |
| Other | ○ | ○ | ○ | ○ |

**83. Inspection: Special Focus Request** *(Select all that Apply)*:

- ☐ COC
- ☐ Community
- ☐ CHS
- ☐ DMH
- ☐ DPH
- ☐ Facilities
- ☐ Food Services
- ☐ OIG
- ☐ N/A
- ☐ Other

**84. Inspection: Special Focus Request Comments:**

85. **Prison Rape Elimination Act (PREA) Issues:**

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

## INSPECTION DETAILS - ANCHORED TO SUMMARIZE #3 THROUGH #106

86. Inspection Detail for #:

87. Inspection Detail for #:

88. Inspection Detail for #:

89. Inspection Detail for **OIG** Request Related to:

90. Inspection Detail for **COC** Request Related to:

91. Inspection Detail for **Community Request** Related to:

92. **Inspection Detail:** EBI

**93. Inspection Detail:** Medical

**94. Inspection Detail:** Medical

**95. Inspection Detail:** Building and Maintenance *(Select all that apply)*

- Lawns

    Recreation Area

- Blacktop

    Asphalt

- General Condition

- Paint

- Roof

- Drains/Gutters

- Not Applicable

- Other

96. Inspection Detail: Building and Maintenance

INSPECTION DETAIL: INTERIOR OF BUILDINGS(S)

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 70 of 167    Page
ID #:258
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 70 of 151    Page
ID #:628

**97. Inspection Detail:** Interior of Building(s) and Maintenance *(Select all that apply)*

- Walls
- Paint
- Floors
- Drains
- Plumbing fixtures working
- Air Vents
- Windows
- Not Applicable
- Other

**98. Inspection Detail Interior of Building:**

The facility floors were filthy, the air ventilation in 7500 was not working, and the walls had concrete crumbling off.

**99. Are Cleaning fluids and chemicals labeled and safely stored?**

- Yes
- No
- Not Applicable
- Other

**100. Weapons locker present?**

- Yes
- No
- Not Applicable
- Other

**101. Recreation/Sports Equipment:**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 71 of 167   Page
ID #:259
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 71 of 151   Page
ID #:629

102. Are the hallways clear, are doors propped open or closed?

      Yes

      No

      Not Applicable

      Other

103. Holding areas (cells/rooms), is there access to drinking water and toilet?

      Yes

      No

      Not Applicable

      Other

104. Condition of individual cells/rooms, or dormitories:

      The floors are filthy.

105. Beds – Type of bed and is it off the floor?

106. Adequate lighting:

107. Temperature:

108. Narrative Report

## 109. Narrative Continued

Commissioners Miller and Veral visited areas: 6050, 7000FL (including high power row); 3100/3300, 3500, 3000 FL mess hall, 3907 room and 3000 floor Hunter Library and 3000 FL Education Based Incarceration classrooms.

Men's Central Jail is a disintegrating and poorly maintained building. As early as 2014, the Department of Justice described the living conditions at Men's Central Jail as "deficient (dimly lit, vermin-infested, noisy, unsanitary, cramped and crowded)...and create an environment that may contribute to prisoners' mental distress." Letter from U.S. Department of Justice, Mental Health Care and Suicide Prevention Practices at Los Angeles County Jails (June 4, 2014). According to the September 3, 2015, Joint Settlement Agreement Regarding the Los Angeles County Jails; and Stipulated Order of Resolution entered into by the Department of Justice and Los Angeles County before Judge Dean Pregerson, "the County and the Sheriff will have written housekeeping, sanitation, and inspection plans to ensure the proper cleaning of, and trash collection and removal in housing...areas, in accordance with California Code of Regulations ("CCR") Title 15 § 1280: Facility Sanitation, Safety, and Maintenance." Title 15 is, however, somewhat vague. Section 1280 requires written policies and procedures that "shall provide for a regular schedule of housekeeping tasks and inspections to identify and correct unsanitary...conditions."

Despite the last decade of warnings and litigation, the problems of dimly lit, vermin-infested, noisy, and unsanitary conditions with inadequate trash collection and removal in housing dorms, last year this Commission reported to the Board of Supervisors its "alarm[] and frustrat[ion] with the regularity with which it finds unsafe, inhumane, and unsanitary conditions in the jails. The recurrence of issues after this Commission brings them to the attention of responsible parties at the Sheriff's Department is evidence of problems not being adequately addressed...The Sheriff's Department's failure to maintain a sanitary facility and to conduct regular inspections of its facilities for sanitary conditions reflects an administrative orientation with a limited commitment to upholding basic values." Los Angeles County Sybil Brand Commission for Institutional Inspections Report & Recommendations on the Los Angeles County Jails Humanitarian Crisis July 2023 at 4, 22.

Clearly, the system of relying on trustees and outside contractors to clean Men's Central Jail abjectly fails to ensure sanitary conditions in those areas of the jail occupied by incarcerated men. LASD does keep the areas of the jail occupied by Sheriff Deputies and civilian staff clean. The rest of the jail requires a concerted and consistent effort to bring up to even minimal standards of cleanliness. Since at least 2014, various groups including the Department of Justice, the Central District of California, the ACLU, and the Sybil Brand Commission have pointed out the severe, prolonged lack of sanitation in Men's Central Jail. We note that federal law establishes such conditions "constitute an infliction of pain within the meaning of the Eighth Amendment." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)

Our most recent inspection of Men's Central Jail, which covered 6050, 7000FL (including high power row); 3100/3300, 3500, and 3000 FL mess hall along with the Hunter Library and 3000 FL Education Based Incarceration classrooms, revealed disgusting, unsanitary conditions in the areas occupied and used by the men incarcerated in that facility. The condition of these areas contrasts with the relatively clean areas occupied by the Sheriffs and suggest that the Sheriff's Department can and does keep the jail clean in those areas it wants to and deliberately neglects the other parts of the jail.

We shall now focus on the specific areas that the Commissioners visited.

6050

People in 6050 are GP but use CPAPs. They had recently moved to this area from the

## 110. Narrative Continued

7000 floor. The cells are organized so that there are 8 people to a cell. However, moving incarcerated people to this location solely on the basis of their medical condition imposed some new restriction including lack of access to the library. Furthermore, despite the medical justification for the move, the cells were not properly fitted out for people with disabilities. For example, one man in the module did have a wheelchair and said he had difficulty transferring when he takes a shower. The shower had a lip and did not appear to be ADA-compliant. There was no hot water in cell 6052. There is a large brown stain on the wall outside the 6050 module. It appears to be a result of a large water leak through the ceiling. The brown stain has been on the wall during previous MCJ inspections. A couple of people reported they were concerned about retaliation for talking to us. Further evidence of retaliation were provided in complaints about the arbitrary allocation of wheelchairs. One gentleman in 6050 has a walker because the Sheriffs refuse to give him a wheelchair for court. As a result, he reported he has missed three court dates. 7000 Leaking ceiling in the hallway Highpower/hard cells: The Commissioners visited the 7000 Block cells to check on a reported hunger strike. This row is for individuals who have medical issues, and the Sheriffs designate as a K10 classification under the LASD Special Handling Codes (Court Services Division §2-07/015.10), which means that they are a "High Jail Security Risk...who...require administrative segregation from the general population at all times." The 7000 unit is not a disciplinary area, but it appears to be treated as such. A deputy unlocked the large metal door to let us access this row when he was doing his 30-minute security walk. Besides some light TV noise, neither Commissioner Veral nor Commissioner Miller could not hear anything on the row until the large door was open. Upon entering the row, the Commissioners observed water dripping from the ceiling, a hole in high in the wall in the middle of the unit where the concrete had crumbled away, and food all over the floor. The people incarcerated in this unit complained that the Sheriffs allowed trash to accumulate for days at a time. One Deputy showed the Commissioners a cupboard where food seemed to have been shoved under the door and left to rot. People here reported they do not get access to programming of any kind, and they don't get out of their cells at all. The cells do not have emergency call buttons so given their medical issues, they wanted to be able to alert for help if something happened. Deputies are on this row two times per hour, however, as we have consistently observed at County jail facilities, the security checks we observed were very brief and perfunctory. When we walked in, there was trash everywhere. People complained that minimal air circulates in their cells, so they wanted the tray slots open. When these slots were closed, the men had gone on hunger strike: the men stopped the strike because a Lieutenant let the men keep them open, so they weren't "enforcing" the policy. During our visit, six deputies appeared including a sergeant to inform the incarcerated men that a captain had decided to overturn the open-slot policy. The sudden appearance of fife deputies and a sergeant seemed odd: the deputies were not taking anyone out of the cells and some of the deputies were hanging outside the unit. It appeared to the Commissioners that our presence had drawn the attention of the deputies to the unit. The deputies told the people incarcerated that they needed to close the tray slots, per the unit order and "the Captain's orders." One gentleman refused to close the slot because he could not get air in his cell. Deputy Cruz became very aggressive with this man right in front of us. One man complained that, if the people in the unit tried to alert the Sheriffs to an emergency, there was no way the

### 111. Narrative Continued

Sheriffs could could hear. Deputy Cruz then threatened to turn off all the television channels so that there would be no noise. This threat of retaliation was very disturbing to witness, especially because the Commissioners, as observers, were standing right next to the Sheriffs and the Sergeant did not object to this retaliatory threat. When we reported the incident to the Watch Commander, he did condemn the behavior: however, part because the deputy should "know your audience," suggesting that part of the problem was retaliating in front of the Commissioners. The Commissioners are very concerned for how people are treated when we are not present.

#### 3100/3300

In June 2023 SBC commissioners witnessed fires in cells and brought the issue to the attention of LASD in hopes they would take steps to ensure the safety of people incarcerated and working inside of Men's Central Jail. LASD has not done anything to address the issue except to take away batteries from everyone incarcerated in the jail except a few people in the 1700 and 1750 units. People in the 3100 and 3300 rows get very limited out of cell time and the batteries for their "radios" or MP3 players, and which also provides a channel that enables them to listen to the television. Their radios are one of the few things they can purchase to help with their mental health by providing music and entertainment while they are confined in their cell. Without batteries they are useless. The Commission previously reported the fires previously occurring in a different area of the jail, not the K10 area we visited. The Commission also reported that the fires were often used to heat food; the men we spoke to suggested they also needed the extra heat to keep warm. There are a variety of actions that could have been taken to ensure that fires were dealt with: frequent inspections should disclose the source of fires; providing food heaters and extra blankets are other options. The Watch Commander did not explain adequately why prohibiting the purchase of batteries was the only possible response to the issue of fires: instead, the LASD's response that appears to have been taken in requital of the Commissioner's report about the fires (which was also reported in the LA Times).

Despite the battery confiscation, during this visit, the Commissioners noted a strong smell of smoke during this inspection when walking the modules and when walking through the main corridor outside the watch commander's office. It is very disturbing that SBC raised an issue, and the only response was to take things from people incarcerated, rather than increasing supervision or installing fire alarms.

#### 3000 Mess Hall

Title 15, § 1245. Kitchen Facilities, Sanitation, and Food Storage requires that "food preparation, service, and storage shall comply with standards set forth in Health and Safety Code, Division 104, Part 7, Chapters 1-13, Sections 113700 et seq. California Retail Food Code." However, the Mess Hall was in a disgraceful state. The Mess Hall was empty: no-one was there to clean it. Food scraps covered tables and chairs around the Hall. A pile of cooked rice with some kind of sauce was on a cart in the middle of the room with a swarm of flies all around it. The Commissioners found rat traps placed along three of the walls. A concrete column in the middle of the Has was crumbling, and there was water leaking through the roof.

Hunter's Library and the two Education Based Incarceration classrooms that we visited had leaks in ceiling and the classroom ceiling were covered with mold.

#### 3907

This is a set of rooms behind a door on the 3000 floor. We went inside and there was standing water in a toilet that was dark brown and smelled like mold. There was also a full trash bin and other trash strewn about. Commissioner Veral almost threw up from the smell.

#### 3500

A row - Shower was dirty and there was trash in the row. There were open milk containers and plastic all over the floor.

This is an

### 112. Narrative Continued

administrative-segregation area where some men are housed while classification is still being determined. However, some of the men were housed because of their K10 classification and the fact that there was nowhere else to put them. That meant that men with commissary privileges and property that they had bought had their property taken from them: the only property given to the men housed in 3500 were the "fish" kits, which are small hygiene given to incarcerated people. One man claimed that he had $350 worth of property taken from him upon his move to 3500.

The people in this unit do not get access to phones, commissary or television. Some people are here for over 30 days. It was understood why the phones and movement are restricted, but it was not clear to commissioners why people cannot get televisions in this module. This is not supposed to be disciplinary but it felt like it.

One man had just arrived in this row from the hospital, and he did not have toothpaste. This was reported to the W/C. He also reported he had been housed previously at NCCF and was transported to USC hospital for a chest x-ray. He spent four days in the urgent care and hospital before being sent to MCJ for processing. Commissioners are following up individually with LASD regarding this process.

In the 3000 block, the men lacked clean mattresses. Title 15, § 1271 requires that each man in the jail receive "one serviceable mattress which meets the requirements of Section 1272 of these regulations...Washable items such as sheets, mattress covers, and towels shall be exchanged for clean replacement at least once each week." Section 1272 requires that "Any mattress issued to an inmate in any facility shall be enclosed in an easily cleaned, non-absorbent ticking." The men in 3500 claimed that their mattresses were changed only every two weeks, and in th3 3000 block, none of the mattresses appeared to have the non-absorbent plastic covers observed elsewhere in the jails. Instead, the mattresses appeared to be foam with a stretch cotton mattress cover on top. The men complained about the unclean and dilapidated state of the mattresses.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 75 of 167    Page
ID #:263
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 75 of 151    Page
ID #:633

113. Narrative Continued

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 76 of 167   Page
ID #:264
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 76 of 151   Page
ID #:634

View results

| Respondent | | |
|---|---|---|
| 37 | Anonymous | |

**11:44**
Time to complete

## Inspection Information

**1. Location \***

Men's Central Jail

**2. Date of Previous Inspection \***

5/10/2024

**3. Date of this Inspection \***

8/18/2024

**4. Time \***

12pm-5pm

**5. Location**

Courts                    Jails                    Sheriff Station

Location

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 77 of 167    Page
ID #:265
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 77 of 151    Page
ID #:635

6. Commissioner(s) - (Select all that Apply) *

Ingrid Archie

Haley Broder

Norma Cumpian

Wynter Daggs

Mark - Anthony Clayton Johnson

Bob Frutos

Dr. Cheryl N. Grills

Eric J. Miller

Raymond Regalado

Alexander Sherman

Joahanna Terrones

Mary Veral

Other

## Facility Information

7. Facility Name *

Courthouse names and locations: https://www.lacourt.org/courthouse

Patrol Names and locations Stations: https://lasd.org/stations/

LA County Jail Facilities names and locations: https://lasd.org/custody/

Men's Central Jail

8. Facility Address *

Courthouse names and locations: https://www.lacourt.org/courthouse

Patrol Names and locations Stations: https://lasd.org/stations/

LA County Jail Facilities names and locations: https://lasd.org/custody/

441 Bauchet Street,
Los Angeles CA90012General

9. Name and Title of LASD Supervisor Contacted *

Acting Captain Marchello

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 78 of 167    Page
ID #:266
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 78 of 151    Page
ID #:636

10. Census Capacity *

4,642

11. Current Census *

4,031

12. Location(s) Inspected: *

8000, 9,000, 5,000, 1700-

13. Issues reported to *(Select all that Apply)*: *

☐ BOS

☒ Officer in Charge

☐ LASD

☐ ISD .

☐ OIG

☐ COC

☒ Correctional Health Services

14. Name of the person(s) issues were reported to: *

Acting Captain Marchello; Dr. Sean Henderson

15. Contact information of the person(s) contacted: *

rlmarche@lasd.org; SHenderson@dhs.lacounty.gov

## Conditions of Confinement

16. **Condition of Confinement: Cells/Toilets/Sinks**

○ Satisfactory

○ Unsatisfactory

☒ Corrective Action Needed

○ Not Applicable

17. **Condition of Confinement COMMENTS RE: Cells/Toilets/Sinks**

18. **Condition of Confinement: Showers** (water temperature, rust, mold etc.)

  · Satisfactory

  · Unsatisfactory

    Corrective Action Needed

  , Not Applicable

19. **Conditions of Confinement COMMENT RE: Showers** (water temperature, rust, mold etc.)

20. **Condition of Confinement: Crowding**

    Satisfactory

  ∴ Unsatisfactory

    Corrective Action Needed

    Not Applicable

21. **Conditions of Confinement COMMENT RE: Crowding**

22. **Condition of Confinement: Cleanliness/Graffiti**

    Satisfactory

  , Unsatisfactory

    Corrective Action Needed

    Not Applicable

23. **Conditions of Confinement COMMENT RE: Cleanliness/Graffiti**

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 80 of 167     Page
ID #:268
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 80 of 151     Page
ID #:638

24. **Condition of Confinement: Safety, Conflict, Tension**

○ Satisfactory

○ Unsatisfactory

○ Corrective Action Needed

○ Not Applicable

## Nutrition

25. **Nutrition:** Quality/Concerns

○ Satisfactory

◎ Unsatisfactory

○ Corrective Action Needed

○ Not Applicable

26. **Nutrition** COMMENT RE: Quality/Concerns

27. **Nutrition:** Access to special diets

○ Satisfactory

◎ Unsatisfactory

○ Corrective Action Needed

○ Not Applicable

28. **Nutrition** COMMENT RE: Access to special diets

## Trustees

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 81 of 167    Page
ID #:269
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 81 of 151    Page
ID #:639

**29. Trustees: Quarters**

◯ Satisfactory

◯ Unsatisfactory

◯ Corrective Action Needed

◯ Not Applicable

## Medical Services

**30. Medical Services**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ◯ | ◉ | ◯ | ◯ |
| Wait Times | ◯ | ◉ | ◯ | ◯ |
| Responsiveness | ◯ | ◉ | ◯ | ◯ |
| TB and Other Medical Screening | ◯ | ◯ | ◯ | ◯ |
| Dental | ◯ | ◯ | ◯ | ◯ |
| Vision | ◯ | ◯ | ◯ | ◯ |
| Infectious Disease Protocol | ◯ | ◯ | ◯ | ◯ |

**31. COMMENTS RE: Medical**

## Mental Health

**32. Mental Health Services**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access | ◯ | ◯ | ◯ | ◯ |
| Wait Times | ◯ | ◯ | ◯ | ◯ |
| Treatment Options | ◯ | ◯ | ◯ | ◯ |
| Assessment Procedures | ◯ | ◯ | ◯ | ◯ |

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 82 of 167   Page
ID #:270
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 82 of 151   Page
ID #:640

**33. COMMENTS RE:** Mental Health

## Telephones

**34. Telephones**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Access |  |  |  |  |
| Functionality |  |  |  |  |

**35. COMMENTS RE:** Telephones

## Education Based Incarceration Programming (EBI)

**36. Education Based Incarceration Programming (EBI)**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Availability |  |  |  |  |
| Type |  |  |  |  |
| Access |  |  |  |  |

**37. COMMENTS RE:** EBI Programming

**38. EBI:** Volunteer Services

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Type |  |  |  |  |
| Access |  |  |  |  |
| Concerns |  |  |  |  |

39. COMMENTS RE: Est. Volunteer Services

## Clean Clothing and Bedding

40. **Clean Clothing and Bedding** (including laundry practices)

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

41. **COMMENTS RE: Clean Clothing and Bedding** (including laundry practices)

## Facilities/Maintenance

42. **Facilities/Maintenance:** Back Log Unfilled Order(s)

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

43. **Facilities/Maintenance COMMENTS RE:** Back Log Unfilled Order(s)

44. **Facilities/Maintenance:** Kitchen/Laundry

Satisfactory

Unsatisfactory

Corrective Action Needed

Not Applicable

**Deputy Staffing**

**45. Deputy Staffing:** Quality of Interactions w/Detainees

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Use of Force (Last 30 days) |  |  |  |  |
| Assault on Staff (Last 30 days) |  |  |  |  |
| Staff Training (MH, trauma informed etc.) |  |  |  |  |

**46. Deputy Staffing COMMENTS RE:** Quality of Interactions w/Detainees

**47. Detainee Complaints/Concerns COMMENTS:**

**48. Deputy Complaint/Concerns COMMENTS:**

**49. Prior Corrective Action Resolution:**

**50. Detainee Documentations (e.g., intake/release, procedures):**

|  | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Applicable |
|---|---|---|---|---|
| Classification |  |  |  |  |
| Logs |  |  |  |  |
| Detainee management |  |  |  |  |
| Exit Interview - policies/proced ure grievances |  |  |  |  |
| Generated funds |  |  |  |  |

**51. Detainee Documentation COMMENTS:**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 85 of 167    Page
ID #:273
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 85 of 151    Page
ID #:643

52. Discipline Proceedings

. Satisfactory

. Unsatisfactory

. Corrective Action Needed

. Not Applicable

## **Inspection: Special Focus**

53. Inspection: Special Focus

| | Satisfactory | Unsatisfactory | Corrective Action Needed | Not Available |
|---|---|---|---|---|
| COC | ○ | ○ | ○ | ○ |
| Community | ○ | ○ | ○ | ○ |
| CHS | ○ | ○ | ○ | ○ |
| DMH | ○ | ○ | ○ | ○ |
| DPH | ○ | ○ | ○ | ○ |
| Facilies | ○ | ○ | ○ | ○ |
| Food Services | ○ | ○ | ○ | ○ |
| OIG | | | ○ | ○ |
| Other | ○ | ○ | ○ | ○ |

54. Inspection: Special Focus Request *(Select all that Apply)*:

○ COC

○ Community

○ CHS

○ DMH

○ DPH

○ Facilities

○ Food Services

○ OIG

○ N/A

○ Other

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 86 of 167    Page
ID #:274
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 86 of 151    Page
ID #:644

55. Inspection: Special Focus Request Comments:

56. **Prison Rape Elimination Act (PREA) Issues:**

    Satisfactory

    Unsatisfactory

    Corrective Action Needed

    Not Applicable

## INSPECTION DETAILS - ANCHORED TO SUMMARIZE #3 THROUGH #106

57. Inspection Detail for #:

58. Inspection Detail for #:

59. Inspection Detail for #:

60. Inspection Detail for **OIG** Request Related to:

61. Inspection Detail for **COC** Request Related to:

62. Inspection Detail for **Community Request** Related to:

63. **Inspection Detail: EBI**

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 87 of 167   Page
ID #:275
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 87 of 151   Page
ID #:645

64. Inspection Detail: Medical

65. **Inspection Detail:** Medical

66. **Inspection Detail: Building and Maintenance** *(Select all that apply)*

    **Lawns**

    **Recreation Area**

    **Blacktop**

    **Asphalt**

    **General Condition**

    **Paint**

    **Roof**

    **Drains/Gutters**

    **Not Applicable**

    **Other**

67. Inspection Detail: Building and Maintenance

    **INSPECTION DETAIL: INTERIOR OF BUILDINGS(S)**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 88 of 167    Page
ID #:276
Case 2:24-cv-05748-SPG-AJR    Document 45-1    Filed 10/23/24    Page 88 of 151    Page
ID #:646

68. Inspection Detail Interior of Building(s) and Maintenance (select all that apply)

- Walls

- Paint

- Floors

- Drains

- Plumbing fixtures working

- Air Vents

- Windows

- Not Applicable

- Other

69. Inspection Detail **Interior of Building:**

70. Are Cleaning fluids and chemicals labeled and safely stored?

- Yes

- No

- Not Applicable

- Other

71. Weapons locker present?

- Yes

- No

- Not Applicable

- Other

72. Recreation/Sports Equipment:

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 89 of 167    Page
ID #:277
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 89 of 151    Page
ID #:647

73. Are the hallways clear, are doors propped open or closed?

○ Yes

○ No

○ Not Applicable

○ Other

74. Holding areas (cells/rooms), is there access to drinking water and toilet?

○ Yes

○ No

○ Not Applicable

○ Other

75. Condition of individual cells/rooms, or dormitories:

76. Beds – Type of bed and is it off the floor?

77. Adequate lighting:

78. Temperature:

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 90 of 167    Page
ID #:278
79. Narrative Report    Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 90 of 151    Page
ID #:648

The Watch Commander informed the Commissioners that the staff was short 24 deputies on day shift. A poster in office stating "two days since last category 2" incident, which the Watch Commander informed the Commissioners was an incident involving injury and force of some sort. He also noted that the main downstairs elevator bank has one elevator out of order, and that a California Board of State and Community Corrections (BSCC) inspection is expected soon: a focus of that inspection was the use of bedding, towels, and clothing to obscure people incarcerated in the jail from the view of other people, including LASD staff (known colloquially as "tenting"). Operations to eradicate tenting were underway daily and planned for 3PM in 5000s

8000
The 8000 unit is designated by LASD as a medical housing unit. Individuals are housed in large cells that hold up to about 10 people. During the Commissioner's visit, an alarm made a loud, ululating sound that was constant and omnipresent throughout the first front area (near 8214/8100). If there were an emergency requiring the attention of the Deputies, the incarcerated men would have difficulty making themselves heard above the alarm.

Room 8109 was a recreation room. However, of the 5 telephones, only 2 were in working order. There was mold on the ceiling.

The 8120 pod housed eight people. The cell had mold and stains on the wall. The people housed there requested a hot pot.

The 8122 pod housed civil detainees. The people living there complained of leaks that covered about a quarter of the cell when it rained. They also showed the Commissioner where they had cleaned black mold from the ceiling using soap and toilet paper. The telephone did not work properly, and the television cables were frayed. The cleaning trustees (incarcerated people given cleaning duties) were not allowed in the cell because the cell housed civil detainees.

In pods 8214 and 8119, the sink did not work and the toilet was out of order. The water temperature was scalding hot and had burned four people, including one that had suffered a second-degree burn. The staff did not clean the showers properly. One individual in a wheelchair fell multiple times due to inaccessible seating which made it impossible to sit on the benches in the dorm. A paralyzed man slipped on a bench. They asked for bathtub but not allowed to use it instead of shower.

One of the incarcerated people alleged he had his foot crushed by a deputy the previous week.

People in the 8214 reported that transportation to prison without wheelchairs is nonexistent. One person reported he has been waiting eight months since his sentencing to be moved to prison and has been unable to be taken due to transport difficulties as he is in a wheelchair. Another person stated he has an August 29th release set from Delano Prison but was told transportation to get there was not possible with his wheelchair.

We spoke with the Watch Commander, who stated he would like to change this ASAP and confirmed there was wheelchair-accessible transportation.

There was a massive, nonstop leak from the ceiling that the 8230 area corridor that covered about thirteen yards by three yards. The hall has three large trashcans, five crates, a mop and bucket to soak up all the water. There is a nonstop leak, deputies report it has been there for at least one week. A trustee reported he has been disciplined by deputies for not successfully getting rid of the leaky water on the floor. Multiple people had slipped. The inspectors also slipped walking over near there.

Lights were off in several living areas, each housing 11-16 people. We watched deputies not enter the areas for the 30-minute security checks but swipe the scanner on the outside of the door. We watched deputies conduct checks without stopping and looking inside the rooms. We noticed that when we looked inside when the lights were off, you could not see anything very quickly.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 91 of 167    Page
ID #:279
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 91 of 151    Page
ID #:649

80. Narrative Continued

In the 8118 pod, one toilet had been malfunctioning for over five weeks (verified) and likely much longer, according to people living in the room. This leaves one toilet for 11-12 people. There had been work orders made but the issue remained unresolved.

In 4120, in front of the Education Based Incarceration room in which the men have educational classes, the Commissioners walked through the unit, they observed water (possible leak).

In room 4188 the commissioners observed three computer boxes in a room on the wall which are used to look up court date and hospital information, but these do not work.

9000
The 9500 dorm housed 80 people out of a possible 147. This is significantly more than the number recommended by California BSCC Title 24, which mandates a maximum of 64 people per dorm.

The 9400 dorm housed 93 people out of a possible 102. The men in 9400 were triple bunked. Triple bunking, in which there are three levels of beds, makes the dorm significantly crowded. The dorm recently engaged in a hunger strike for hot food (confirmed by the watch commander) and although the hunger-strike had ended, there was still no hot food for special diets currently provided.

The men incarcerated in the dorm reported that someone was tampering with the food before it was served to them, and that the special diets coming cold. They also complained that there was no church or school offering. They reported that visits did not last the full 30 minutes or that their families had to wait a significant length of time on each visit. They complained that the mail was slow and that "urban" books market to a Black audience were returned, even though books with a similar content marketed to a general audience were not. They also complained that family photos were sent back and stated that a trustee alleged that they had found mail in the hall trash.

Three of the toilets do not flush and the urinal does not function. Furthermore, the nightly 30-minute checks are startling, because the Deputies use shine blue light flashlights the men's face at night, waking them from their sleep.

The 9300 dorm housed 97 out of a possible 103 people who are triple bunked. They had just ended a three-day hunger strike which they had commenced due to a severe lack of chairs for everyone to sit and eat. The watch commander confirmed that another four are coming in a month.

Again, the water pressure is too hard and too hot. The mail is coming 1-2 months late, outgoing is just weekly. One phone does not work. Yard time is limited to once a week or less. There is a dangling cable in front of the second TV with a blunt wire. Tenting operations were underway during the commissioners' visit.

The jail was on modified lockdown during this inspection, so medical, visiting, and other appointments were severely delayed. This delay was confirmed to us by the medical staff, who told us how this makes it difficult for them to complete appointments, including changing wound care. This lockdown was apparently because not enough staff showed up to work that day. We noticed, despite the "short staff," at one point, we went into a deputy station, and there were over 10 deputies sitting around on chairs chatting.

The complaint box outside of the 9500 dorm was full of grievance forms that had yet to be collected. The commissioners conducted this inspection on the afternoon of 8/18, and there were forms dated 8/16. Per policy, forms are supposed to be collected on every shift.

5900
The 5900 dorm was triple bunked with 87 out of 87 beds filled. Shortly after the commissioners arrived, LASD deputies announced that ten people could visit the chapel, which resulted in a rush of people trying to get dressed and to the front of the line. A number of people were unable to attend chapel.

81. Narrative Continued

The commissioners discovered three mattresses on the floor in the corner of the unit. The people incarcerated in the dorm reported that there are not enough beds for everyone inside in the dorm. With lower bunk cronas and the dorm at capacity, people are sleeping on the floor. Multiple transgender women reported needing hormones, along with bras, and underwear. A group of women had requested to be moved to Century Regional Detention Facility, which is the women's jail. Another trans woman voiced concerns about male searches to her body. The showers had recently been painted to cover the mold on the ceiling. There was a black, tar-like liquid in the drains in the showers. The concrete on the shower wall entrance was crumbling. The urinal did not work if it flushed, the effluence would emerge through the mid-floor drain. One of the toilets had what looked like feces in it and did not flush. The water buttons on the sink did not work. The water in the main drinking fountain was hot. People in the dorm requested blankets; others reported that they had found plastic in their food. Others reported rat feces and claimed the food smelled like rat urine. They also observed styrofoam cups with teethmarks. The people in the dorm also voiced concerns about the jail's anti-tenting operation. The people in the dorm complained that they received just one pair of clothes per week and needed to wash and hang them to dry. However, the jail's anti-tenting operation prevents hanging clothes from lines between the beds in the dorms, and there is no other place to hang clothes. In addition, the supplies used for hygiene (soap, toothpaste and toothbrush, etc.) known as a FISH Kit, are still not adequately distributed. The Commissioners had raised this issue in the May 2024 report for both the 5800 and 5900 dorms. The residents of 5900 reported that guards conduct lottery games to give out a limited supply of FISH kits. The people housed in the 5900 dorm also concerns about people who have seizures being treated with Narcan. The watch commander reported that the medial staff's protocol was to treat any seizure with Narcan first, in part because it does no harm. The policy is then to follow up with further treatment. The watch commander agreed that a town hall may be needed to educate the dorm about this policy around Narcan and its safety. However, part of the residents' concern appeared to be that the Narcan was used instead of other treatments. Incarcerated people were concerned about recent deaths and violence in and around this dorm. They also complained about the recent increase in canteen prices. Four people complained that they had lost large sums of money through a fraud scheme. The scheme involved the use of a "tank sheet," which lists the names of the people incarcerated in a dorm and which a dorm leader uses to help coordinate the commissary. The defrauded men complained that other incarcerated people would fill out commissary order forms in their names and then cut their names out of the tank sheet and place them on the other incarcerated people's identification bracelets. When the commissary delivery arrived, the defrauded person would either be in another dorm or the fraudsters would create a noisy distraction. The defrauded people had lost sums amounting to $600; $350; $291 and $84. 1700 At the beginning of the commissioners' visit, the LASD deputies, did not allow the commissioners space to conduct interviews with the people incarcerated in the unit. Instead, a number of deputies stood very close to commissioners (despite talking to people locked in their cells, some of which were hard cells covered with plexiglass) while we tried to speak with people. They refused to step back when asked.

82. Narrative Continued

Deputies must allow inspectors to inspect w/o escort so that people feel safe and comfortable enough to share freely with inspectors. This did not initially happen on this visit. Commissioners had to bring it to the attention of the watch commander who quickly remedied the problem.

Since our last visit, the unit is much brighter (lights are on). The large-screen television has been taken down in the deputy watch room.

In Unit 8, commissioners observed trash in shower, and that the shower had very hot water. One person was concerned about being booked under the wrong name. People reported they had not been offered outdoor recreation every week as required by Title 15. Commissioners would request that LASD provide us with the UDAL checks for the past two months for this area to verify if people are being offered outdoor recreation as required and at what time of day it is occurring.

Row E mattresses are not plastic-covered.

Row F's shower was boiling hot, so that people on F Row had to take showers in E row. There was lots of trash, and the row was incredibly moldy, with each vent covered with about one foot square of black mold, and black mold stretching down the walls. In addition, there are a number of holes in the concrete where it has crumbled away. The incarcerated people expressed concerns about rats, cockroaches, and flies. Many of the men had pasted plastic over their vents to prevent rats entering, and some had placed bottles across the front of the cells to alert them should a rat try to enter. The rats audibly move when the men bang on the toilet and back behind cells; roaches come out of the drain. One man reported a roach in his food

They are provided with only one pair of clothes.

A number of cells were non-functional due to lack of plumbing in the cell.

F13: The TV only works if you have radio. Some men have requested radio weeks ago but have not received it so cannot hear television.

One person on F row (the name was provided to the Watch Commander) showed commissioners that he had sent out a mail to loved ones only to have it returned as "undeliverable" with a yellow sticker that appeared to come from the post office. However, those envelopes were not stamped with a postmark, so this individual was concerned that the letters were not going out at all, but rather someone in the jail was blocking his mail and putting the yellow "return to sender" sticker on his mail.

The men report that they are not getting to the Day Room.

One of the commissioners stepped on feces or mold (it was difficult to tell) in a cell.

F row does not have request forms or grievance forms

G Row. The lights in cells are on 24/7, request that they turn them off. The floors are extremely dirty throughout this area (1700/1750)

83. Narrative Continued

84. Narrative Continued

85. Overall, how would you rate this facility? *

        Satisfactory

        Unsatisfactory

# EXHIBIT 2

**Is this grievance an emergency?**
**¿Es ésta queja una emergencia?**

~~YES~~ [X]  NO

If this is a medical or mental health emergency or you are aware of a specific and immediate threat to your life/safety, notify custody personnel immediately.

Si ésta es una emergencia médica o de salud mental, o si tiene conocimiento de una amenaza específica e inmediata contra su vida/seguridad, notifique a un alguacil de inmediato.

# COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT

# INMATE GRIEVANCE FORM

**See the back copy for instructions.**

All grievances must be filed within 15 calendar days.
Grievances will be responded to within 15 calendar days.
Appeals must be filed within 15 calendar days.

3025 **Only one grievance per form.** 37/D22
**Solamente una queja por forma.**

REFERENCE NUMBER:

| NAME (NOMBRE) | BOOKING NUMBER (SU NÚMERO DE PRESO) | FACILITY (FACILIDAD) | HOUSING LOC. (LUGAR DE VIVIENDA) | DATE (FECHA) |
|---|---|---|---|---|
| ROBERT CAMOU | 5691867 | MCJ | 3700 D-22 | 7/5/23 |

**I HAVE A GRIEVANCE ABOUT THE FOLLOWING:**

| GENERAL SERVICES | | MEDICAL/MENTAL | STAFF |
|---|---|---|---|
| ☐ Living conditions | ☐ Classification | ☒ Medical Services (Place in envelope) | ☐ Custody Personnel |
| ☐ Food | ☐ Telephone | ☐ Mental Health (Place in envelope) | ☐ Medical Staff |
| ☐ Showers | ☐ Visiting | ☐ Dental (Place in envelope) | ☐ Mental Health Staff |
| ☐ Property | | ☐ Americans with Disabilities Act (ADA) | ☐ Other (explain below) |
| ☐ Mail | | ☐ Other (explain below) | *Optional (check only if applicable):* |
| ☐ Commissary/Account Balance | | | ☐ Use of force |
| ☐ Clothing/Linen/Bedding | | | ☐ Retaliation |
| ☐ Educational/Vocational Programs | | | ☐ Harassment |
| ☐ Other (explain below) | | | ☐ Racial or identity profiling<br>Specify the type(s) in your explanation. (please refer to the reverse side of the pink copy for more information) |

INMATE NAME: ROBERT CAMOU

**PLEASE EXPLAIN THE SPECIFIC ISSUE OR DATE OF INCIDENT, AND THE ACTION REQUESTED:**

| DATE, TIME, DAY OF OCCURRENCE | FACILITY OF OCCURRENCE | LOCATION OF OCCURRENCE |
|---|---|---|
| 7/2/23 1pm | MCJ 3700 D-22 | 3700 D-22 |

I have a massive teeth ache. My filling fell out and the nerve is exposed so I am in constant pain, especially when I eat or drink anything. I'm about to go man down it hurts so bad. I need to get the tooth pulled I think. [redacted]

*If needed, additional space is provided on the back of this page.*

☒ In the event I am released prior to the disposition of this grievance, I waive my right to receive a mailed notification of the resolution.
☐ In the event I am released prior to the disposition of this grievance, I would like to receive a mailed notification of the resolution.
Mailing address ______ City ______ State ______ ZIP ______ Phone (___)______

**Attention:** Conflict Resolution may be available and is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and determining a finding to resolve the grievance.

**Inmate's Signature**
x [signature]

**FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE**

| Employee Receiving Grievance | Employee # | Date and Time of Collection and Review |
|---|---|---|
| | | TIME STAMP HERE |

EMERGENCY GRIEVANCES ONLY

*Watch commander notified of emergency grievance — Name — Employee # — Date/Time

This grievance ☐ was ☐ was not handled as an emergency. If not, please explain below.
**Note:** Any aspect of an emergency grievance determined to be non-emergent will be processed within the standard time frame.

If a disposition was rendered, please complete:

| FINDINGS | RELIEF | BRIEF SUMMARY OF ACTIONS TAKEN |
|---|---|---|
| ☐ SUSTAINED | ☐ GRANTED | 7/8/23 - Started on Dental SP (medication) |
| ☐ SUSTAINED IN PART | ☐ GRANTED IN PART | 11/3/23 - Seen by the Dentist - POC exp |
| ☐ NOT SUSTAINED | ☐ DENIED | DMFS, LCMC referral for work. |
| ☐ INCONCLUSIVE | ☐ RELIEF UNAVAILABLE | Medications offered. Perey, C. #519263 11/24/23 |

Full disposition shall be entered in the Custody Automated Report Tracking System (CARTS).

Inmate was notified of disposition/status/modification by: ______ (Supervisor), on ______ (Date/Time).

| Supervising Nurse Receiving Grievance | Employee # | Date and Time of Review |
|---|---|---|
| | | TIME STAMP HERE |

FRONT PART 1 (WHITE COPY)

| LAST NAME | FIRST NAME | MIDDLE NAME | BOOKING # | RELEASE DATE | REFERENCE NUMBER |
|-----------|------------|-------------|-----------|--------------|------------------|
| Camou | Robert | Anthony | 5691867 | TBD | |

**CONTINUED EXPLANATION OF THE ISSUE, INCIDENT, AND ACTION REQUESTED BY THE INMATE:**

---- FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE ----

Patient go proactive.                                                        Date:

**BRIEF SUMMARY OF INITIAL ACTIONS TAKEN:**

If an emergency disposition is not rendered at this time, please indicate an interim status below:

**INTERIM STATUS**

| | |
|---|---|
| FORCE INVESTIGATION | REFERRED – COURT SERVICES |
| REF# | REFERRED – MEDICAL SERVICES |
| I.A.B INVESTIGATION | REFERRED – DMH |
| I.C.I.B INVESTIGATION | REFERRED – OTHER |
| LATE INVESTIGATION - ONGOING | REFERRED – OTHER AGENCY / ENTITY / STATION |
| REFERRED – CHAPLAIN | UNIT LEVEL INVESTIGATION |

*Full disposition or interim status shall be entered in the Custody Automated Report Tracking System (CARTS).

| APPROVED BY WATCH COMMANDER | DATE | UNIT INMATE GRIEVANCE COORDINATOR REVIEW | DATE |
|---|---|---|---|
| Grievances marked as an "emergency" shall be approved by the watch commander and reviewed by the unit inmate grievance coordinator. | | Unit Commander Notification Made? ☐ YES OR ☐ NO (Notification Only As Needed Per CDM 8-03/010.00) | |

**Is this grievance an emergency?**
**¿Es ésta queja una emergencia?**

☒ NO

If this is a medical or mental health emergency or you are aware of a specific and immediate threat to your life/safety, notify custody personnel immediately.

Si ésta es una emergencia médica o de salud mental, o si tiene conocimiento de una amenaza específica e inmediata contra su vida/seguridad, notifique a un alguacil de inmediato.

## COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT
## INMATE GRIEVANCE FORM

See the back copy for instructions.

All grievances must be filed within 15 calendar days.
Grievances will be responded to within 15 calendar days.
Appeals must be filed within 15 calendar days.

**3025**

**Only one grievance per form.**
Solamente una queja por forma.

| NAME / NOMBRE | BOOKING NUMBER / SU NÚMERO DE PRESO | FACILITY / FACILIDAD | HOUSING LOC. / LUGAR DE VIVIENDA | DATE / FECHA |
|---|---|---|---|---|
| Robert Carrou | 5691867 | MCJ | 3700 D22 | 8/25/23 |

### I HAVE A GRIEVANCE ABOUT THE FOLLOWING:

| GENERAL SERVICES | MEDICAL/MENTAL | STAFF |
|---|---|---|
| ☐ Living conditions | ☒ Medical Services (Place in envelope) | ☐ Custody Personnel |
| ☐ Food | ☐ Mental Health (Place in envelope) | ☐ Medical Staff |
| ☐ Showers | ☒ Dental (Place in envelope) | ☐ Mental Health Staff |
| ☐ Property | ☐ Americans with Disabilities Act (ADA) | ☐ Other (explain below) |
| ☐ Mail | ☐ Other (explain below) | *Optional (check only if applicable):* |
| ☐ Commissary/Account Balance | | ☐ Use of force |
| ☐ Clothing/Linen/Bedding | | ☐ Retaliation |
| ☐ Educational/Vocational Programs | | ☐ Harassment |
| ☐ Other (explain below) | | ☐ Racial or identity profiling |
| ☐ Classification | | Specify the type(s) in your explanation. |
| ☐ Telephone | | (please refer to the reverse side of the |
| ☐ Visiting | | pink copy for more information) |

### PLEASE EXPLAIN THE SPECIFIC ISSUE OR DATE OF INCIDENT, AND THE ACTION REQUESTED:

DATE, TIME, DAY OF OCCURENCE: 8/25/23, 5pm, Friday     LOCATION OF OCCURRENCE: L.A. Men's Central Jail   3700 D-22

I am in constant pain, my filling fell out then half of the molar chipped off exposing the nerve. I need immediate medical/dental care, but the jail has been deliberately indifferent (U.S. Const. amend. XIV), failing to get me the care I need.

☐ In the event I am released prior to the disposition of this grievance, I waive my right to receive a mailed notification of the resolution.
☒ In the event I am released prior to the disposition of this grievance, I would like to receive a mailed notification of the resolution.
Mailing address 815 S. Central Ave City Glendale State CA ZIP 91204 Phone (818 399-6197

**Attention:** Conflict Resolution may be available and is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and determining a finding to resolve the grievance.

Inmate's Signature X _RH Carrou_

-------- FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE --------

| Employee Receiving Grievance | Employee # | Date and Time of Collection and Review |
|---|---|---|
| DCI RAM | VIVIVL | [PLACE STAMP HERE] |

*Watch commander notified of emergency grievance. LT. R. Fransholm #406937 8/26/23 C.P.L.

This grievance ☐ was ☒ was not handled as an emergency. If not, please explain below.
**Note:** Any aspect of an emergency grievance determined to be non-emergent will be processed within the standard time frame.

If a disposition was rendered, please complete:

BRIEF SUMMARY OF ACTIONS TAKEN: Forward To Medical

| FINDINGS | RELIEF |
|---|---|
| ☐ SUSTAINED | ☐ GRANTED |
| ☐ SUSTAINED IN PART | ☐ GRANTED IN PART |
| ☐ NOT SUSTAINED | ☐ DENIED |
| ☐ INCONCLUSIVE | ☐ RELIEF UNAVAILABLE |

Full disposition shall be entered in the Custody Automated Report Tracking System (CARTS).

Inmate was notified of disposition/status/modification by: _____ (Supervisor), on _____ (Date/Time).

| Supervising Nurse Receiving Grievance | Employee # | Date and Time of Review |
|---|---|---|
| Urn | YNQN 08202b | |

### FRONT PART 1 (WHITE COPY)

Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 11 of 25    Page ID #:11

| LAST NAME | FIRST NAME | MIDDLE NAME | BOOKING # | RELEASE DATE | REFERENCE NUMBER |
|---|---|---|---|---|---|

### CONTINUED EXPLANATION OF THE ISSUE, INCIDENT, AND ACTION REQUESTED BY THE INMATE:

Patient signature                          FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE          Date    12/28/23

### BRIEF SUMMARY OF INITIAL ACTIONS TAKEN:

CHART REVIEW DONE, PT. WAS SEEN BY DENTIST ON 11/03/23 . ON OGU LINE 12/12/23
12/22/23 .                                                                R. MARFA. RN

If an emergency disposition is not rendered at this time, please indicate an interim status below:

| INTERIM STATUS | |
|---|---|
| FORCE INVESTIGATION | REFERRED – COURT SERVICES |
| REF# | REFERRED – MEDICAL SERVICES |
| I.A.B INVESTIGATION | REFERRED – DMH |
| I.C.I.B INVESTIGATION | REFERRED – OTHER |
| LATE INVESTIGATION - ONGOING | REFERRED – OTHER AGENCY / ENTITY / STATION |
| REFERRED – CHAPLAIN | UNIT LEVEL INVESTIGATION |

*Full disposition or interim status shall be entered in the Custody Automated Report Tracking System (CARTS).

| APPROVED BY WATCH COMMANDER | DATE | UNIT INMATE GRIEVANCE COORDINATOR REVIEW | DATE |
|---|---|---|---|
| Grievances marked as an "emergency" shall be approved by the watch commander and reviewed by the unit inmate grievance coordinator. | | Unit Commander Notification Made? ☐ YES OR ☐ NO  (Notification Only As Needed Per COM 8-03/010.00) | |

### BACK PART 1 (WHITE COPY)

| **Is this grievance an emergency?** **¿Es ésta una emergencia?** | **COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT** |
|---|---|

## INMATE GRIEVANCE FORM

**See the back copy for instructions.**

YES*    NO☒

If this is a medical or mental health emergency or you are aware of a specific and immediate threat to your life/safety, notify custody personnel immediately.

Si ésta es una emergencia médica o de salud mental, o si tiene conocimiento de una amenaza específica e inmediata contra su vida/seguridad, notifique a un alguacil de inmediato.

All grievances must be filed within 15 calendar days.
Grievances will be responded to within 15 days.
Appeals must be filed within 15 calendar days.

**Only one grievance per form.**
Solamente una queja por forma.

| NAME NOMBRE | BOOKING NUMBER SU NÚMERO DE PRESO | FACILITY FACILIDAD | HOUSING LOC. LUGAR DE VIVIENDA | DATE FECHA |
|---|---|---|---|---|
| ROBERT CAMOU | 5691867 | LA Men's Central Jail | 3700 D-22 | 2/16/24 |

### I HAVE A GRIEVANCE ABOUT THE FOLLOWING:

| GENERAL SERVICES | MEDICAL/MENTAL | STAFF |
|---|---|---|
| ☐ Living conditions  ☐ Classification | ☐ Medical Services (Place in envelope) | ☒ Custody Personnel |
| ☐ Food  ☐ Telephone | ☐ Mental Health (Place in envelope) | ☒ Medical Staff |
| ☐ Showers  ☐ Visiting | ☐ Dental (Place in envelope) | ☒ Mental Health Staff |
| ☐ Property | ☐ Americans with Disabilities Act (ADA) | ☒ Other (explain below) |
| ☐ Mail | ☐ Other (explain below) | *Optional (check only if applicable):* |
| ☐ Commissary/Account Balance | | ☐ Use of force |
| ☐ Clothing/Linen/Bedding | | ☐ Retaliation |
| ☐ Educational/Vocational Programs | | ☐ Harassment |
| ☐ Other (explain below) | | ☐ Racial or identity profiling |
| | | Specify the type(s) in text space. (please refer to the reverse side of the pink copy for more information) |

**REFERENCE NUMBER:**

**INMATE NAME: ROBERT CAMOU**

### PLEASE EXPLAIN THE SPECIFIC ISSUE OR DATE OF INCIDENT, AND THE ACTION REQUESTED:

| DATE, TIME, DAY OF OCCURRENCE | FACILITY OF OCCURRENCE | LOCATION OF OCCURRENCE |
|---|---|---|
| 12/21/23 About 12 pm, Thursday | LA Men's Central Jail | 3700 D-22 |

The jail failed to help me when I was in pain with a tooth ache. I filed grievances, medical forms and called the OIG, but was left without aid. My medical emergency grievance wasn't treated as an emergency because the jails (LASD's /med's) standards _____ (needed, additional space is provided on the back of this page.)

☐ In the event I am released prior to the disposition of this grievance, I waive my right to receive a mailed notification of the resolution.
☒ In the event I am released prior to the disposition of this grievance, I would like to receive a mailed notification of the resolution.
Mailing address 815 S. Central Ave #20 City Glendale State CA ZIP 91204 Phone (818) 399-6197

**Attention:** Conflict Resolution may be available and is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and determining a finding to resolve the grievance.

Inmate's Signature
x   *Robt Camou*

------ **FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE** ------

Full disposition shall be entered in the Custody Automated Report Tracking System (CARTS).

**FRONT PART 3 (PINK COPY)**

## Emergency Grievances

- If this is a medical or mental health emergency or you are aware of a specific and immediate threat to your life or safety, notify custody personnel immediately. You may request that a grievance be handled as an emergency by marking an "X" in the "YES" box located in the top left corner of the Inmate Grievance Form. An emergency grievance is defined as an urgent matter wherein a disposition according to the regular time limits would subject you to immediate risk of death, personal injury, or irreparable harm. A written response will be provided within five (5) calendar days documenting what action was undertaken.

## General Grievances

- As an inmate within the custody of the Los Angeles County Sheriff's Department, you have the right to submit a grievance relating to any condition of confinement using the Inmate Grievance Form. In addition, you also have the right to appeal any disposition regarding your grievance.
- You may obtain an Inmate Grievance Form from your housing location or notify a staff member to obtain one for you.
- All inmate grievances must be as complete as possible.
- All grievances must be submitted to the Sheriff's Department within 15 calendar days of the event upon which the grievance is based, or they will be denied. Exceptions may be made for grievances involving allegations of force, or the Prison Rape Elimination Act (PREA).
- Once the results of the grievance have been determined, a written response will be provided to you, generally within 15 calendar days after the submission of the grievance.
- You will be asked to sign the written response upon receipt.
- All appeals shall be submitted on an Inmate Grievance Appeal Form which will be provided to you when you are notified of the disposition of your grievance.
- Failure to file a grievance or appeal may waive rights to seek relief from a court of law.

## Americans with Disabilities Act (ADA) Request/Grievance Procedure

- The grievance must contain your name, booking number, housing location.
- Include a brief description of what you are grieving.
- Indicate the actions you are requesting for the Department to take to correct any alleged violation(s).
- Grievances should be addressed to the Custody Division ADA Coordinator:

**Los Angeles County Sheriff's Department - Custody Division ADA Coordinator**
**Custody Compliance and Sustainability Bureau**
**450 Bauchet St., Room E-883, Los Angeles, CA 90012**
**Phone: (213) 893-5500    TTY: (323) 267-6669    Email: adacompcus@lasd.org**

- You may request an informal meeting regarding accommodations through the Custody ADA Coordinator to discuss the grievance.
- Using this informal request/grievance procedure is not a requirement under federal regulations, nor does it prevent you from filing a grievance with the appropriate federal enforcement agency.
- Alternatively, your ADA request may be submitted on the Los Angeles County Sheriff's Department Inmate Request Form.

## Prison Rape Elimination Act (PREA)

The Los Angeles County Sheriff's Department has zero tolerance for sexual abuse and abides by the standards set forth in the Prison Rape Elimination Act of 2003 (PREA). PREA is a Federal law established to address the elimination and prevention of sexual assault and rape in correctional institutions. If you have been the victim or witness of any sexual assault or sexual abuse, report it. You may notify any custody personnel, fill out a confidential Inmate Grievance Form, or call any of the following phone numbers:

**Los Angeles County Office of the Inspector General (OIG)**
**(800) 801 – 0030**
**National Sexual Assault Hotline**
**(800) 656 -4673**

## Medical or Mental Health Concerns

- If you feel you need to see a Mental Health worker, please contact any staff member right away.
- You may submit a confidential grievance for medical or mental health related concerns by placing the completed Los Angeles County Sheriff's Department Inmate Grievance Form into a white envelope available in your housing area.

## Racial or Identity Profiling Grievances

You may file a grievance regarding an incident of perceived racial or identity profiling, involving one or more of the following factors:

- Race or ethnicity
- Gender
- Age
- Sexual orientation
- Nationality
- Gender expression
- Religion
- Mental or physical disability

**BACK PART 3 (PINK COPY)**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 100 of 167
Page ID #:288
Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 14 of 25   Page ID
#:14

CAMOU  ROBERT  ANTHONY  #5691867   TBD

for what constitutes an emergency are too high so they
fail to act when it is needed. The same is true of
how I tried on multiple occasions to go 'man down',
but was ignored by deputies and medical staff. My
calls to the OIG resulted in nothing as well to my
knowledge because I never got an official response. They
finally took me to the dentist who gave me pain pills and
mouth wash. Then on 12/21/23 I got my grievance back
and when I asked where my level 1 appeal form was
the nurse said I didn't get one because they have a
new system now (which I see is much more efficient now).
So I would have to file a new grievance. But the 15 day
timeliness deadline already ran out. So this is just to
put you on notice that I want monetary damages
as a tort claim (Gov. 845.6) and/or §1983 with monell
liability. I don't have to exhaust my grievances because
you thwarted my efforts. I want $50,000. CV in ct.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 101 of 167
Case 2:24-cv-05748-SPG-AJR   Document 1 #289 Filed 07/05/24   Page 15 of 25   Page ID
#:15

Ex.D



# CLAIMS FOR DAMAGES
# TO PERSON OR PROPERTY

TIME STAMP
OFFICE USE ONLY

COUNTY OF LOS ANGELES



**INSTRUCTIONS:**

1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please use one claim form for each claimant.
4. Return this original signed claim and any attachments supporting your claim. This form *must* be signed.

DELIVER OR U.S. MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383,
KENNETH HAHN HALL OF ADMINISTRATION, LOS ANGELES, CA 90012
(213) 974-1440

BOARD OF SUPERVISORS
COUNTY OF LOS ANGELES
FILED

2024 APR 22  A 8: 18

---

1. [ ] Mr [✓] Ms [ ] Mrs. **LAST NAME** Camou   **FIRST NAME** Robert   **M.I.** A.

2. ADDRESS OF CLAIMANT
441 Bauchet st.
CITY Los Angeles   STATE CA   ZIP CODE 90086-0164
HOME PHONE N/A   ALTERNATE PHONE N/A

3. CLAIMANT'S BIRTHDATE: 10/01/1991   4. CLAIMANT'S SOCIAL SECURITY NUMBER

5. ADDRESS TO WHICH CORRESPONDENCE SHOULD BE SENT
815 South Central Ave., Ste. #120
STREET   CITY Glendale   STATE CA   ZIP CODE 91204

6. DATE AND TIME OF INCIDENT
7/2/23 1pm — 8/25/23 5pm etc.

7. WHERE DID DAMAGE OR INJURY OCCUR?
L.A. County Men's Central Jail
STREET 441 Bauchet St. Los Angeles   CITY   STATE CA   ZIP CODE 90086-0164

8. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED AND LIST DAMAGES
(attach copies of receipts or repair estimates):
(See attached " Declaration of Robert Anthony Camou")

10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?
① Cal. Gov. Code 8845.6.
② 42 U.S.C. §1983:
Estelle v. Gamble, 429 U.S. 97 (1976)
Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978);
Bell v. Wolfish, 441 U.S. 520, 535-37 (1979)

11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):
NAME Unknown   DEPARTMENT
NAME   DEPARTMENT

12. WITNESS(ES) TO DAMAGES OR INJURY: LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION:
NAME Harry Mack Wallace   PHONE n/a
ADDRESS 441 Bauchet St., Los Angeles, CA 90086
NAME   PHONE

---

9. WERE POLICE OR PARAMEDICS CALLED?   YES [ ]   NO [✓]

(IF YES) AGENCY'S NAME _____   REPORT # _____

CHECK IF LIMITED CIVIL CASE [ ]

TOTAL DAMAGES TO DATE   TOTAL ESTIMATED PROSPECTIVE DAMAGES

$ 50,000.00   $ 50,000.00

13. IF PHYSICIAN(S) WERE VISITED DUE TO INJURY, PROVIDE NAME, ADDRESS, PHONE NUMBER, AND DATE OF FIRST VISIT FOR EACH:
DATE OF FIRST VISIT 11/03/23   PHYSICIAN'S NAME Unknown   PHONE Unknown
STREET 441 Bauchet St., Los Angeles   CITY   STATE ZIP CODE 90086
DATE OF FIRST VISIT   PHYSICIAN'S NAME   PHONE
STREET   CITY   STATE ZIP CODE

---

## THIS CLAIM MUST BE *SIGNED*

### NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)

CLAIMS FOR DEATH INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE.
(GOVERNMENT CODE SECTION 911.2)

ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)

14. PRINT OR TYPE NAME:   Robert Anthony Camou   DATE   SIGNATURE OF CLAIMANT OR PERSON FILING ON BEHALF GIVING RELATIONSHIP TO CLAIMANT

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 102 of 167
Page ID #:290
Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 16 of 25    Page ID
#:16

 **sedgwick**

**Sedgwick**
**PL-COLA Program**
**Post Office Box 8397**
**Long Beach, California 90808**

May 8, 2024

Robert A. Camou
815 S. Central Avenue
Suite 20
Glendale, CA 91204

| | |
|---|---|
| Claimant(s) | : Robert A. Camou |
| Claim Filed | : 04/16/2024 |
| Sedgwick File No. | : 6769 County File No.: 24-4423293 BOS No: 24-1801 |

Dear Mr. Camou:

We are the administrators for the Hospital Professional Liability Claims Program for the County of Los Angeles. The claim referred to above, which you presented to the Los Angeles County Board of Supervisors, has been referred to us.

The claim referred to above is being returned because it was not presented within six months after the event or occurrence as required by law. See sections 901 and 911.2 of the Government Code. Because the claim was not presented within the time allowed by law, no action was taken on the claim.

### WARNING
Government Code section 911.3 provides that when a claim is denied because it was not presented within the time allowed by law, notice to the claimant shall so state and further give notice in substantially the following form:

"Your only recourse at this time is to apply without delay to the Los Angeles County Board of Supervisors for leave to present a late claim. See Sections 911.4 to 912.2, inclusive, and Section 946.6 of the Government Code. Under some circumstances, leave to present a late claim will be granted. See section 911.5 of the Government Code.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

If you dispute the County's conclusion that your claim was untimely, the following warning may be applicable.

### WARNING
"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited into the mail to file a court action on this claim. See Government Code Section 945.6.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

(Exh. F)

## Statement Of The Case

2. 7/5/23 - Emergency grievance (form SH-J-420) filed with
3. the Los Angeles County Jail complaining of constant pain
4. from a taser nerve beginning on 7/3/23. (See exh.A) Movant
5. was by said LA Sheriff's tase away, — from the jail
6. about. This grievance which was updated not persued
7. within 15 days per jail policy to respond
8.
9. 8/25/23 - Emergency grievance (form SH-J-420) filed with
10. the Los Angeles County Jail complaining of constant pain from
11. the same taser nerve as before. (See exh.A) Movant
12. was by and I didn't receive a response from the jail
13. and this grievance was not responded to or processed
14. within 15 days per jail policy to respond
15.
16. 12/21/23 - 7/5/23 Emergency grievance returned by medical
17. staff. No level 2 appeal form was provided to allow
18. administrative remedies to be exhausted
19.
20. 12/28/23 - 8/25/23 emergency grievance returned by medical
21. staff. No level 2 appeal form was provided to allow
22. administrative remedies to be exhausted
23.
24. (Based on these foregoing facts, administrative remedies
25. need not be exhausted for the reason that efforts were
26. thwarted by the jail, rendering the grievance process
27. unavailable. (Easter v. Sexton (2024) 61 Cal.App.5th 998, 1007, citing
28. Ross v. Blake (2016) 578 U.S. 632, 638.))

1  2/6/24 - Non-emergency grievance (form SH-J-420) filed with

2  the Los Angeles County Jail serving as notice of intent to sue.

3  (Cal. Code Civ. Proc. § 364) (See exh. C.)

4

5  3/11/24 - Los Angeles Sheriff's Department personnel spoke with

6  me about my 2/6/24 grievance and took a detailed statement

7  from me regarding it which was recorded on handheld video

8  camera. I was not given a response because the Sergeant

9  said he was to investigate my grievance. I never heard

10  back from him.

11

12  4/5/24 - 2/6/24 grievance returned by medical staff. No

13  level 1 appeal form was provided to allow administrative

14  remedies to me exhausted.

15

16  4/22/24 - Claims for Damages To Person Or Property form

17  filed with the Los Angeles County Board Of Supervisors. (See

18  exh. D.)

19

20  5/6/24 - The administrators for the Hospital Professional Liability

21  Claims Program for the County of Los Angeles returned the

22  claim filed 4/22/24. (See exh. E.)

23

24  (§1983 lawsuits do not require exhaustion pursuant to the

25  Government Claims Act. (Garcia v. California Unified Sch.

26  Dist. (1985) 173 Cal.App.3d 701, 702.))

27

28

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 105 of 167
Page ID #:293
Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 19 of 25    Page ID
#:19

(Exhibit)

16                        Verification

17    I, Robert Anthony Camou, am the author of this

18    statement of the case and know the contents. I have

19    personal knowledge of the facts set forth herein

20    except as to the matters which are stated on information

21    and belief which I believe are true. I declare that

22    the foregoing is true and correct under penalty of

23    perjury pursuant to the law of the state of California.

24    This verification is executed on the 1st day of July, 2024

25    in Los Angeles, CA.

                              Respectfully Submitted,

28
                              ROBERT ANTHONY CAMOU
                              Plaintiff

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 106 of 167
Page ID #:204
Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 20 of 25    Page ID
#:20

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

Robert Anthony Camou (Bkg. No. 5691867)
441 Bauchet st.
Los Angeles, CA 90086-0164

MC-030

FOR COURT USE ONLY

TELEPHONE NO.: (213)218-6050    FAX NO. *(Optional):* n/a
E-MAIL ADDRESS *(Optional):* n/a
ATTORNEY FOR *(Name):* Robert Anthony Camou, In Propria Persona

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill St., Room 118
MAILING ADDRESS: "
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Robert Anthony Camou
DEFENDANT/RESPONDENT:

**DECLARATION**

CASE NUMBER:

I, the undersigned, declare as follows:
I have personal knowledge of the facts set forth in this declaration.
I am an inmate in L.A. County Men's Central Jail, housed in the 3700 module, cell D-23 next to Robert Camou who is in cell D-22.
During the months of July and August, 2023 Robert complained of pain in his tooth; I could hear in his voice that his tooth ache was really bothering him. He showed me emergency grievances he was about to submit and asked me to proofread them for him. No sergeant ever came to speak with him about them. I also personally witnessed Robert attempt to go 'man down' in his cell at least three times. Each time he would tell the deputies doing their walks down our tier that he was in such pain that he needed to go man down to get immediate medical attention. None helped him. I only remember one out of all of them even stopping to talk to him about it - that guy just shot him down, telling us that a toothache is not a valid reason to go man down according to LASD jail policy and the way things go in the county jail. Robert told me that the hole in his tooth hurt when food got in it, so after repeatly hearing him in pain I came up with the idea to give him some of the dental wax I get for my braces, to plug up the hole in his tooth when he ate. He didn't complain of pain so frequently after that, but I could tell it didn't fully solve his problem.
The medical and dental care is extremely bad in Men's Central Jail.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 15, 2024

Harry Mack Wallace
(TYPE OR PRINT NAME)

H.M. Wallace
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other *(Specify):* Witness For Petitioner

Form Approved for Optional Use
Judicial Council of California
MC-030 [Rev. January 1, 2006]

**DECLARATION**

Page 1 of 1

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 107 of 167
Case 2:24-cv-05748-SPG-AJR    Document 1    Filed 07/05/24    Page 21 of 25   Page ID
Page ID #:205
#:21

Camou                    Robert                    7/6/23

5691867                  3700 D-22                 10/1/91


Months Ago


I need immediate medical / dental care. I
am in constant pain because my filling fell out
exposing the nerve. I can't eat or drink
anything without extreme pain throughout my
whole jaw on the left side into my tongue and
neck. I think I need my upper left back
molar (1st back from wisdom tooth) removed - or
what's left of it.

I complained of this when it first started
months ago, but nothing was done to help me. 1/2 of
the tooth fell out / chipped away aleviating some of the
pain, but this is rediculous I need medical care.

Case 2:24-cv-05748-SPG-AJR Document 1 Filed 07/05/24 Page 22 of 25 Page ID #:22

Exh H, p2/2

# LOS ANGELES COUNTY CORRECTIONAL HEALTH SERVICES
# HEALTH SERVICES REQUEST (HSR) FORM (REV. 8.2020)

HSR RECEIVED DATE/TIME — MUST STAMP

*IF YOU ARE HAVING AN EMERGENCY DO NOT USE THIS FORM BUT IMMEDIATELY CONTACT THE NEAREST STAFF FOR MEDICAL ASSISTANCE*

| PATIENT INFORMATION | | | | | |
|---|---|---|---|---|---|
| Last Name: | | First Name: | | Today's Date: | |
| Booking Number: | | Housing Location: | | Date of Birth: | |

**PLEASE TELL US ABOUT THE HEALTH SERVICE/S YOU ARE REQUESTING**

Medical Care
Check Box

☐

Dental Care
Check Box

☐

(Cleanings are scheduled after one year of incarceration)

Mental Health
Check Box

☐

Date problem started: ____________

I have the following request:

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

________________________________________________

---------------------------------DO NOT WRITE BELOW THIS LINE – CHS STAFF USE ONLY---------------------------------

(Medical ☐ Routine ☐ Urgent) (Dental ☐ Routine ☐ Urgent) (Mental Health ☐ Routine ☐ Urgent)

| Triaged by: | Emp #: | Title: | |
|---|---|---|---|
| Reviewed/Assessed by: | Emp #: | Title: | Date: |

HSR TRIAGED DATE/TIME — MUST STAMP

19

Exh. I

Declaration of [illegible]

I, the undersigned, declare as follows:

I am an inmate [illegible]

LA County [illegible]

[illegible]

The [illegible]

[illegible]

From: [illegible]

Los Angeles [illegible]

I hereby [illegible]

[illegible]

Respectfully submitted

[illegible]



Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 111 of 167
Page ID #:299
Case 2:24-cv-05748-SPG-AJR     Document 1     Filed 07/05/24     Page 25 of 25     Page ID #:25

© USPS 2019

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

SORT 2
7-01-24

# EXHIBIT 3

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 113 of 167
Page ID #:301
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 97 of 151    Page
ID #:655
Case 2:24-cv-05716-SPG-AJR    Document 23-5   Filed 08/27/24    Page 19 of 51    Page ID
#:113



# Men's Central Jail

**Men's Central Jail** is a <u>Los Angeles County Sheriff's Department</u> county jail for men in <u>Los Angeles</u>, <u>Los Angeles County, California</u>, United States. Built in 1963, it is one of the oldest <u>county jails</u> in California. The Men's Central Jail is located at 441 Bauchet St., Los Angeles 90012. The Men's Central Jail houses men who are awaiting trial or who have been convicted of crimes.

The Men's Central Jail is considered one of the largest jails in the world.[2][3][4][5][1][6] In May 2013, along with the adjacent <u>Twin Towers Correctional Facility</u>, Men's Central Jail was ranked as one of the ten worst prisons in the United States, based on reporting in *Mother Jones* magazine.[7]

On July 7, 2020, the Los Angeles County Board of Supervisors voted 4–0 to pursue a plan to close the Men's Central Jail within 12 months.[8] In voting to eventually close the 57-year-old facility, county supervisors said they wanted to focus on community-based programs to treat mental health challenges of those entering and exiting the jail system administered by the Los Angeles County Sheriff's Department. The vote came amid deliberate inmate reductions during <u>outbreaks</u> of <u>COVID-19</u> and the <u>Black Lives Matter</u> movement <u>protests</u> over police violence and the <u>murder of George Floyd</u>.[9]

## Construction and population

The construction of the Men's Central Jail was finished in 1963. The original building was designed to house 3,323 inmates.[10] In 1976, an addition was added to the structure at the cost of $35 million,[11] and by December 1990, inmate capacity was 5,276.[12]

Men's Central Jail has severe <u>overcrowding</u>, leading to problems such as inmates lacking shower facilities, very short recreation times out of their cells, wearing dirty clothes for up to a week, and inmates sleeping on floors for extended periods of time.[13][14][15] In March 1997, the inmate



**Men's Central Jail (MCJ)**

| | |
|---|---|
| **Location** | Los Angeles, California |
| **Coordinates** | 34.0590°N 118.2321°W |
| **Status** | Operational |
| **Security class** | Minimum–Maximum |
| **Capacity** | 5,276 |
| **Population** | 4,300[1] |
| **Opened** | 1963 |
| **Managed by** | <u>Los Angeles County Sheriff's Department</u> |
| **Website** | website (https://locator.la county.gov/lac/Location/ 3039766/los-angeles-co unty-sheriff—mens-centr al-jail) |

19

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 114 of 167
Page ID #:302
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 98 of 151    Page
ID #:656
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 20 of 51    Page ID
#:114

population was about 13,000,[16] and saw similarly high numbers by June 2015, where the inmate population was about 17,000[1] and increased to 19,000 by August, where the legal limits on the jail population were only for 15,000 inmates.[14]

## Notable inmates

- Chris Brown, recording artist[17]
- Suge Knight[18]
- Todd Bridges, actor, *Diff'rent Strokes*[19]
- Drakeo the Ruler, rapper[20]
- Sean Penn, actor[21]
- Richard Goldberg, sex offender[22]
- Kelsey Grammer, actor[21][23]
- Richard Pryor, comedian[21]
- Tommy Lee, Mötley Crüe's drummer[21]
- Scott Weiland[21]
- Erik Menéndez[23]
- Richard Ramirez[21]
- O. J. Simpson[24][21]
- Shorty Rossi, reality TV personality[25]
- YG (rapper)[26]
- Ron Jeremy, pornographic actor[27]
- Harvey Weinstein, former film producer[28]
- Edward Furlong, actor[29]
- Danny Masterson, former actor[30]

# Services

Men's Central Jail provides some services to its inmates. Inmates can attend self-help classes on domestic violence, alcohol abuse, and substance abuse. Religious services are provided to inmates in the wake of several ACLU lawsuits.[31][32] As of 2004, selected inmates can earn a GED while incarcerated.[33]

# Violence and lawsuits

The ACLU has sued Men's Central Jail for major civil rights violations.[34][35][36][37][38] The United States Department of Justice has also sued the Men's Central Jail.[39][40][41][42]

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 115 of 167
Page ID #:303
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 99 of 151    Page
ID #:657
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 21 of 51    Page ID
#:115

In 2013, federal prosecutors charged 18 Sheriff's Deputies with excessive use of force.[43][44][45][46] In June 2015, Los Angeles Sheriff's Deputies were found guilty of beating a handcuffed man at the Men's Central Jail.[47][48][49][50]

# See also

- Rikers Island (New York City)
- Cook County Jail (Chicago)
- Harris County, Texas jails (Houston)

# References

1. Sewell, Abby (9 June 2015). "County supervisors vote to reconsider size of new Men's Central Jail" (https://www.latimes.com/local/lanow/la-me-ln-county-jail-plan-20150609-story.html). *Los Angeles Times*. Retrieved 24 August 2015.

2. Medina, Jennifer (28 September 2011). "Report Details Wide Abuse in Los Angeles Jail System" (https://www.nytimes.com/2011/09/28/us/aclu-suit-details-wide-abuse-in-los-angeles-jail-system.html). *The New York Times*. Retrieved 4 August 2015.

3. Don Thompson, Associated Press (2 February 2015). "Infographic: County jail populations across California dip after Prop 47 - 89.3 KPCC" (http://www.scpr.org/news/2015/02/02/49608/county-jail-populations-across-california-dip-afte/). *Southern California Public Radio*. Retrieved 4 August 2015.

4. Ucar, Ani (18 November 2014). "In the Gay Wing of L.A. Men's Central Jail, It's Not Shanks and Muggings But Hand-Sewn Gowns and Tears" (https://www.laweekly.com/in-the-gay-wing-of-l-a-mens-central-jail-its-not-shanks-and-muggings-but-hand-sewn-gowns-and-tears/). *LA Weekly*. Retrieved 4 August 2015.

5. "Cell breakouts, attacks 'easy' in outdated Men's Central Jail" (http://abc7.com/archive/9453411/). *ABC7 Los Angeles*. Retrieved 4 August 2015.

6. "At least one inmate stabbed in riot at Los Angeles jail" (https://www.reuters.com/article/us-usa-jail-riot-losangeles-idUSKBN0OJ2UR20150603). *Reuters*. 3 June 2015. Retrieved 4 August 2015.

7. James Ridgeway and Jean Casella (8 May 2013). "America's 10 Worst Prisons: LA County" (https://www.motherjones.com/politics/2013/05/10-worst-prisons-america-la-county-jail-twin-towers). *Mother Jones*. Retrieved 4 August 2015.

8. "LA County Votes To Initiate Plan To Close Men's Central Jail Within The Year" (https://losangeles.cbslocal.com/2020/07/07/mens-central-jail-downtown-la-county-closed/). *Losangeles.cbslocal.com*. 2020-07-07. Retrieved 2020-07-10.

9. "L.A. County seeks plan to close aging Men's Central Jail in a year" (https://www.latimes.com/california/story/2020-07-07/mens-central-jail-closure-plan). *Los Angeles Times*. 2020-07-08. Retrieved 2020-07-10.

10. "LA's Men's Central Jail plagued by overcrowding, unsanitary conditions, violence" (https://www.scpr.org/news/2010/05/05/14795/las-mens-central-jail-plagued-overcrowding-unsanit/). *Southern California Public Radio*. KPCC. 5 May 2010. Retrieved 4 August 2015.

11. Villacorte, Christina (28 August 2017). "Upkeep is proving costly as Men's Central Jail shows its age" (https://www.dailynews.com/2011/12/12/upkeep-is-proving-costly-as-mens-central-jail-shows-its-age/). *Los Angeles Daily News*. Retrieved 24 August 2015.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 116 of 167
Page ID #:304

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 100 of 151
Page ID #:658

Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 22 of 51    Page ID
#:116

12. "L.A. COUNTY'S CENTRAL JAIL : Overcrowding and Age Burden Facility" (https://www.latimes.co m/archives/la-xpm-1990-12-16-mn-9280-story.html). *Los Angeles Times*. Retrieved 24 August 2015.

13. "ACLU Criticizes Jail Overcrowding" (https://www.latimes.com/archives/la-xpm-1997-03-14-me-38 194-story.html). *Los Angeles Times*. Retrieved 24 August 2015.

14. Villacorte, Christina (28 August 2017). "Men's Central Jail overcrowding crisis could cost $1.7 billion to fix" (https://www.dailynews.com/2014/06/21/mens-central-jail-overcrowding-crisis-could-c ost-17-billion-to-fix/). *Los Angeles Daily News*. Retrieved 24 August 2015.

15. "ACLU calls Men's Central Jail a dungeon, seeks closure" (https://www.dailynews.com/2009/04/1 5/aclu-calls-mens-central-jail-a-dungeon-seeks-closure/). *Los Angeles Daily News*. 15 April 2009. Retrieved 24 August 2015.

16. "ACLU Demands Meeting as Jail Crowding Soars" (https://www.latimes.com/archives/la-xpm-1997 -03-01-me-33735-story.html). *Los Angeles Times*. Retrieved 24 August 2015.

17. Breuer, Howard (17 March 2014). "Chris Brown Ordered to Remain in Jail" (https://people.com/cri me/chris-brown-ordered-to-remain-in-jail/). *People*. Retrieved 5 August 2015.

18. Susman, Gary (26 February 2003). "Suge Knight is released from jail" (https://ew.com/article/200 3/02/26/suge-knight-released-jail/). *Entertainment Weekly*. Retrieved 5 August 2015.

19. Timnick, Lois (10 November 1989). "Mistrial Declared in Bridges' Assault Case" (https://www.latim es.com/archives/la-xpm-1989-11-10-me-1148-story.html). *Los Angeles Times*. Retrieved 5 August 2015.

20. "Drakeo the Ruler: Thank You for Using GTL" (https://pitchfork.com/reviews/albums/drakeo-the-rul er-thank-you-for-using-gtl/). *Pitchfork*.

21. LeDuff, Charlie (16 November 2002). "A Celebrity Home That's Not on the Star Maps" (https://ww w.nytimes.com/2002/11/16/us/a-celebrity-home-that-s-not-on-the-star-maps.html). *New York Times*. Retrieved 12 April 2020.

22. Dobruck, Jeremiah (2024-05-30). "Notorious sexual predator released from prison, immediately rearrested by Long Beach police" (https://lbpost.com/news/crime/richard-steve-goldberg-most-wa nted-arrested-released-long-beach/). *Long Beach Post News*. Retrieved 2024-07-11.

23. Miller, Samantha (22 December 1997). "The Party's Over" (https://people.com/archive/the-partys-over-vol-48-no-25/). *People*. Retrieved 5 August 2015.

24. LeDuff, Charlie (20 November 2002). "Room 7201: celebrity confinement California style" (https:// www.theguardian.com/world/2002/nov/21/usa). *The Guardian*. Retrieved 5 August 2015.

25. Rossi, Shorty (2012-01-10). *Four Feet Tall and Rising* (https://books.google.com/books?id=MOk5 DQd59w4C&q=shorty+rossi+%22men%27s+central+jail%22&pg=PA64). ISBN 9780307985897. Retrieved 5 August 2015.

26. YG arrested on robbery charges after Los Angeles home raid (https://www.cnn.com/2020/01/24/e ntertainment/yg-arrested/index.html) Marianne Garvey and Stella Chan, CNN, January 24, 2020

27. "LASD Inmate Information Center - Booking Details" (https://app5.lasd.org/iic/details.cfm). *App5.lasd.org*.

28. Vasquez, Whitney (2021-07-20). "Harvey Weinstein Jumps Off Private Jet Without Handcuffs, Disgraced Mogul Arrives To Los Angeles In Style Following Extradition" (https://radaronline.com/p/ harvey-weinstein-extradition-los-angeles-photos-private-jet-no-handcuffs/). *RadarOnline*. Retrieved 2024-07-11.

29. "Edward Furlong sentenced to 6 months in jail over probation violation" (https://www.today.com/ne ws/edward-furlong-sentenced-6-months-jail-over-probation-violation-1C8710418). *Today.com*.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 117 of 167
Page ID #:305
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 101 of 151
Case 2:24-cv-05716-SPG-AJR    Document 29    Filed 08/27/24    Page 23 of 51    Page ID
#:117

30. Schladebeck, Jessica (June 3, 2023). "Danny Masterson awaits sentencing in 'segregation' for safety" (https://web.archive.org/web/20230605011254/https://www.nydailynews.com/snyde/ny-dan ny-masterson-awaits-rape-sentencing-jail-segregation-safety-20230603-imvhm2plprf43mkvndtyus zbky-story.html). *New York Daily News*. Archived from the original (https://www.nydailynews.com/s nyde/ny-danny-masterson-awaits-rape-sentencing-jail-segregation-safety-20230603-imvhm2plprf 43mkvndtyuszbky-story.html) on June 5, 2023. Retrieved June 7, 2023.

31. Himes, Thomas (28 March 2014). "ACLU says Muslim inmates in L.A. jails not treated equally" (htt ps://www.dailynews.com/2014/03/28/aclu-says-muslim-inmates-in-la-jails-not-treated-equally/). *Los Angeles Daily News*. Retrieved 4 August 2015.

32. Chang, Cindy (26 July 2014). "Under new rules, Muslim inmates in L.A. County jails observe Ramadan" (https://www.latimes.com/local/la-me-adv-jail-ramadan-20140727-story.html). *Los Angeles Times*. Retrieved 4 August 2015.

33. Ricci, James (7 April 2004). "Gay Jail Inmates Get Chance to Learn" (https://www.latimes.com/arc hives/la-xpm-2004-apr-07-me-jail7-story.html). *Los Angeles Times*. Retrieved 24 August 2015.

34. "ACLU report: L.A.'s Men's Central Jail 'nightmarish' " (https://www.dailynews.com/2009/04/14/acl u-report-las-mens-central-jail-nightmarish/). *Los Angeles Daily News*. 29 August 2017. Retrieved 4 August 2015.

35. Leonard, Jack; Faturechi, Robert (19 January 2012). "L.A. County Sheriff's Department sued by ACLU" (https://www.latimes.com/local/la-xpm-2012-jan-19-la-me-jails-aclu-20120119-story.html). *Los Angeles Times*. Retrieved 4 August 2015.

36. Stoltze, Frank (5 May 2010). "ACLU: LA County jail guards perpetuate violence" (https://www.scpr. org/news/2010/05/05/14828/aclu-says-la-county-jail-guard-perpetuate-violence/). *Southern California Public Radio*. Retrieved 4 August 2015.

37. Vogel, Chris (19 May 2011). "Men's County Jail Visitor Viciously Beaten by Guards" (https://www.l aweekly.com/mens-county-jail-visitor-viciously-beaten-by-guards/). *LA Weekly*. Retrieved 4 August 2015.

38. "LA County Jails" (https://www.aclu.org/feature/la-county-jails). *American Civil Liberties Union*. Retrieved 4 August 2015.

39. Southern California Public Radio (4 August 2015). "Source: LA Sheriff agrees to new reforms at jails, settles civil DOJ lawsuit" (http://www.scpr.org/news/2015/08/04/53566/la-sheriff-agrees-to-ne w-reforms-at-jails-settles/). *Southern California Public Radio*. Retrieved 4 August 2015.

40. Southern California Public Radio (6 June 2014). "Los Angeles County's jails operating under unconstitutional conditions, says Justice Department" (http://www.scpr.org/news/2014/06/06/4457 3/justice-department-threatens-lawsuit-over-mental-h/). *Southern California Public Radio*. Retrieved 4 August 2015.

41. Faturechi, Robert (25 September 2011). "FBI probing reports of beatings in L.A. County jails" (http s://www.latimes.com/local/la-xpm-2011-sep-25-la-me-fbi-jails-20110925-story.html). *Los Angeles Times*. Retrieved 4 August 2015.

42. Solomon, Diana Beth (28 April 2015). "U.S. reaches anti-bias accord with Los Angeles County sheriff" (https://www.reuters.com/article/us-usa-police-losangeles-idUSKBN0NK03K20150429). *Reuters*. Retrieved 12 April 2020.

43. Robert Faturechi and Jack Leonard (9 December 2013). "18 Los Angeles sheriff's officials indicted, accused of abuse, obstruction" (https://www.latimes.com/local/lanow/la-me-ln-sheriff-indi cted-jail-misconduct-20131209-story.html). *Los Angeles Times*. Retrieved 4 August 2015.

44. Medina, Jennifer (9 December 2013). "U.S. Charges 18 Sheriff's Officers in Inquiry Into Misconduct at Los Angeles Jails" (https://www.nytimes.com/2013/12/10/us/18-charged-in-inquiry-i nto-los-angeles-sheriffs-office.html). *The New York Times*. Retrieved August 5, 2015.

45. Phillips, Erica E. (2 July 2014). "Six L.A. Sheriff's Officers Found Guilty of Obstructing Justice" (htt ps://www.wsj.com/articles/six-l-a-sheriffs-officers-found-guilty-of-obstructing-justice-1404260671). *Wall Street Journal*. Retrieved 4 August 2015.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 118 of 167
Page ID #:306
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 102 of 151
Page ID #:660
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 24 of 51    Page ID
#:118

46. "18 L.A. County deputies charged in civil rights corruption probe" (http://fox6now.com/2013/12/10/18-l-a-county-deputies-charged-in-civil-rights-corruption-probe/). *FOX6Now*. Retrieved 4 August 2015.

47. "L.A. sheriff's deputies, sergeant found guilty in jail beating" (https://www.cbsnews.com/news/los-angeles-sheriffs-deputies-sergeant-guilty-jail-beating/). *CBS News*. Associated Press. June 24, 2015. Retrieved 12 April 2020.

48. Rubin, Joel (24 June 2015). "Three L.A. County Deputies Convicted in Beating of Jail Visitor" (https://www.latimes.com/local/lanow/la-me-ln-three-la-deputies-convicted-in-jail-beating-case-201506 24-story.html). *Los Angeles Times*. Retrieved 12 April 2020.

49. Rubin, Joel (17 June 2015). "Ex-deputy: L.A. County sheriff's deputies beat jail visitor, then lied" (https://www.latimes.com/local/lanow/la-me-ln-sheriff-deputy-testimony-abuse-trial-20150617-story.html). *Los Angeles Times*. Retrieved 4 August 2015.

50. "Three Deputy Sheriffs Found Guilty of Federal Civil Rights Offense in Beating of Visitor at Downtown Los Angeles Jail" (https://www.justice.gov/usao-cdca/pr/three-deputy-sheriffs-found-guilty-federal-civil-rights-offense-beating-visitor). *United States Department of Justice*. 25 June 2015. Retrieved 4 August 2015.

# External links

- Men's Central Jail (https://locator.lacounty.gov/lac/Location/3039766/los-angeles-county-sheriff---mens-central-jail), Los Angeles County Sheriff's Dept.

Retrieved from "https://en.wikipedia.org/w/index.php?title=Men%27s_Central_Jail&oldid=1240418116"

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 119 of 167
Page ID #:307
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 103 of 151
Page ID #:661

# EXHIBIT 4

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 120 of 167
Page ID #:308
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 104 of 151
Case 2:24-cv-05716-SPG-AJR   Document 23 #:662 Filed 08/27/24   Page 25 of 51   Page ID
#:119

Los Angeles Times

CALIFORNIA

# Oversight inspectors accuse Sheriff's Department of retaliation after reports on jail fires



In the decades since the L.A. County Men's Central Jail opened, inmates have regularly set fires for a variety of reasons. (Irfan Khan / Los Angeles Times)

By Keri Blakinger
Staff Writer

May 2, 2024 3 AM PT

Oversight commissioners have repeatedly accused the Los Angeles County Sheriff's Department of retaliating against inmates at Men's Central Jail after inspectors called

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 121 of 167
Page ID #:309
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 105 of 151
Page ID #:663
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 26 of 51    Page ID
#:120

attention to the ongoing problem of fires burning unchecked inside the decrepit downtown lockup.

For years, inmates have been using batteries, razors, toilet paper and other items to set blazes when they want to cook food or heat water. But last summer, oversight inspectors — alarmed by three particularly large fires they'd witnessed — drew attention to the issue in commission reports and public meetings.

Afterward, a Times investigation found the problem stretched back several decades and was possible in part because the inmate housing areas in the aging facility have no sprinklers to douse blazes or blaring smoke detectors to prompt jailers to respond.

Then, in a move Sybil Brand Commission members Eric Miller and Mary Veral told The Times last month was "retaliatory," jail officials confiscated batteries that high-security inmates in isolation used to listen to their radios.

Inmates responded with a hunger strike that department officials said has since ended. The fires, however, have not.



CALIFORNIA

In Men's Central Jail, fires are common, smoke alarms are not: Smells 'like a campfire'

Sept. 27, 2023

"It still smelled like fires, but they're not doing anything about them — they're just taking away the batteries," Veral told The Times after a visit to the jail this week. "I'm pretty sure you can light fires other ways."

The Sheriff's Department did not deny the accusations of retaliation but told The Times that the battery-powered radios had only been available as part of a pilot program. The department did not explain how fires were set in the years before the pilot program

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 122 of 167
Page ID #:310
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 106 of 151
Page ID #:664
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 27 of 51    Page ID
#:121

made battery-powered radios available to inmates. Officials are now exploring radio alternatives that do not require batteries, the department said.

"The safety of the inmates in our custody is our highest priority," the department said in a statement. "Regular searches are conducted in all inmate housing areas in an attempt to locate any outstanding batteries or other ignition sources."

Though the recent concerns about fires have brought the issue to the fore, blazes have been a problem in Los Angeles County lockups for more than a century. In 1921, the former county jail descended into an 18-hour riot after one man started a fire to heat his coffee and jailers responded by placing him in solitary confinement. That unrest helped prompt the construction of another jail; it was eventually condemned in part because the shortage of emergency exits made it a firetrap.

When Men's Central Jail opened in 1963, building codes still did not require automatic sprinklers or smoke detectors in any of the housing areas. Instead, the facility relied on a manually triggered alarm system, trusting the jail staff to spot fires and alert people. Though there have been some upgrades, jail officials previously told The Times that is largely how the system still works today.

In the decades since Men's Central Jail opened, inmates have regularly set fires for a variety of reasons. Several former inmates have told The Times that people use fires to cook their food, though sometimes they also use them to heat their water, stay warm or smoke cigarettes and drugs.

During an inspection by members of the Sybil Brand Commission in June, Veral said she spotted three large blazes on the second floor of the downtown facility. When she alerted jailers to the problem, Veral said, they shrugged and told her the inmates were cooking their canteen food and there wasn't much the guards could do about it.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 123 of 167
·Page ID #:311
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 107 of 151
Page ID #:665
Case 2:24-cv-05716-SPG-AJR    Document 25    Filed 08/27/24    Page 28 of 51   Page ID
#:122

Some lockups facing similar fire problems elsewhere have tried to tackle the issue by getting money for smoke detectors and more robust fire alarm systems. In Texas, a 2020 investigation by the Marshall Project, a nonprofit news site, found that the prison system had been violating state fire safety regulations for more than a decade and that men incarcerated there were regularly starting blazes to attract the attention of guards who they said ignored their needs.

After that reporting, the prison system more than tripled its spending on fire alarms. Before those installations were completed, further reporting found that several prisoners died in cell fires. This week, a prison spokeswoman confirmed that the state has again bumped up its fire safety spending to more than $13 million in 2024. She also confirmed to The Times that inmates in Texas are still allowed to have radios.

Yet Los Angeles has handled its fire hazards differently, as oversight inspectors detailed in a report last month.

"In June 2023 SBC commissioners witnessed fires in cells and brought the issue to the attention of [the L.A. County Sheriff's Department] in hopes they would take steps to ensure the safety of people incarcerated and working inside of Men's Central Jail," the report said. "LASD has not done anything to address the issue except to take away batteries from everyone incarcerated in the jail except a few people."

For the men living in isolation on the third floor — which is not the same floor where commissioners reported fires in June — the report said the radios "are one of the few things they can purchase to help with their mental health by providing music and entertainment while they are confined in their cell."

The report went on to question why department officials thought "prohibiting the purchase of batteries was the only possible response to the issue of fires," instead suggesting that officials consider more frequent inspections to determine the source of the fires.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 124 of 167
Page ID #:312
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 108 of 151
Page ID #:666
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 29 of 51    Page ID
#:123

At a public meeting last month, Miller described the move as "retaliation by the Sheriff's Department who, instead of ensuring that [inmates] get hot meals, have taken away batteries."

In responses to questions from The Times, the Sheriff's Department said its decision to take away batteries stemmed from the outcome of arson investigations that determined batteries had been the ignition point for recent fires on the third floor and elsewhere in the jail.

Officials also said the pilot program to allow inmates radio access — something that has been common in jails and prisons across the country for decades — started in 2017 and only expanded to the third floor this year.

The program was determined "not to be successful," in part because the "antiquated and unique physical layout" of Men's Central Jail "created challenges," the department said. "Nonetheless, these factors continue to be evaluated in our efforts to identify opportunities to expand services to our inmate population, in the safest manner possible."

## More to Read

'Pendulum has swung': Supervisors signal shift on Men's Central Jail closure plan

Aug. 5, 2024



California's inmate firefighter crews are dwindling just as the state starts to burn

July 8, 2024



Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 125 of 167
Page ID #:313
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 109 of 151
Page ID #:667
Case 2:24-cv-05716-SPG-AJR     Document 23     Filed 08/27/24     Page 30 of 51   Page ID
#:124

Inmate hung a noose. Jailers too busy watching 'explicit video' to intervene, inspectors say

June 5, 2014



 **Keri Blakinger**

Keri Blakinger covers the Los Angeles County Sheriff's Department. Before joining the Los Angeles Times in 2023, she spent nearly seven years in Texas, first covering criminal justice for the Houston Chronicle and then covering prisons for the Marshall Project. Blakinger was a 2024 Pulitzer Prize finalist in feature writing for For her insightful, humane portrait, reported with great difficulty, of men on Death Row in Texas who play clandestine games of "Dungeons & Dragons," countering their extreme isolation with elaborate fantasy. Her work has appeared everywhere from the BBC to the New York Daily News, from Vice to the Washington Post Magazine, where her 2019 reporting on women in jail helped earn a National Magazine Award. She is the author of "Corrections in Ink," a 2022 memoir about her time in prison.

30

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 126 of 167
Page ID #:314
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 110 of 151
Page ID #:668
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 31 of 51   Page ID
#:125
Case 2:75-cv-04111-DDP   Document 423   Filed 06/08/24   Page 2 of 9   Page ID
#:7776

# Inmate hung a noose. Jailers too busy watching 'explicit video' to intervene, inspectors say



Inspectors at Men's Central Jail, shown in 2022, documented mold, mildew and inadequate food and water last month. They also found bugs coming out of the sinks, along with "small black worms." (Irfan Khan / Los Angeles Times)

By Keri Blakinger
Staff Writer

When a pair of oversight inspectors walked up to one of the deputies' stations inside Men's Central Jail last month, they were already exasperated. During their visit to the

31

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 127 of 167
Page ID #:315
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 111 of 151
Page ID #:669
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 32 of 51   Page ID
#:126
Case 2:75-cv-04111-DDP   Document 423   Filed 06/08/24   Page 3 of 9   Page ID
#:7777

high-security unit, the inspectors later wrote in their report, they'd been concerned to see a noose in one of the cells.

They were even more concerned when they realized a jailer had walked by for a safety check and ignored it.

The first time an inspector approached the deputies to tell them about it, he said, the eight jailers sitting in front of a television brushed him off. When he returned half an hour later with another inspector, he realized why: The deputies were busy watching a "sexually explicit" video, according to an oversight report published this month.

"The degree of callousness they were exhibiting was just horrific," said Eric Miller, one of the two Sybil Brand Commission inspectors who wrote the report. "What's the purpose of the security check if you're not actually taking any action?"

It was only after inspectors asked several deputies to intervene that one jailer finally tore down the noose before the inmate harmed himself, the report said.

To Haley Broder, the inspector who accompanied Miller that day, the failure to act seemed to be representative of larger problems she saw inside the decades-old facility.

"There was just continuous neglect and bad conditions," Broder told The Times this week. "People were saying they were hungry. We saw people with giant open wounds. The trash was just everywhere — there's so much trash. It smells. There are fires. And it seems in general there is just a genuine lack of interest in changing that situation."

In an emailed statement, the Los Angeles County Sheriff's Department said it has addressed several of the issues identified in the June report. Officials did not say whether the deputies caught watching the video have been reassigned but told The Times there is now an investigation underway.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 128 of 167
Page ID #:316
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 112 of 151
Page ID #:670
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 33 of 51   Page ID
#:127
Case 2:75-cv-04111-DDP   Document 423   Filed 06/08/24   Page 4 of 9   Page ID
#:7778

CALIFORNIA

**6 inmates, 2 jailers hospitalized after 'toxic substance' exposure at women's jail in Lynwood**

June 5, 2024

"The department investigates all allegations of misconduct and expects its personnel to perform its responsibilities in a professional manner in accordance with department policy," the statement said. "When violations of policy and procedures are discovered, personnel are held accountable."

The latest problems in the jail came to light after Miller and Broder visited for a surprise inspection in mid-May. When they entered the first-floor high-security unit, the inspectors stopped to talk to a man who'd been let out of his cell to shower. As they talked, Miller said, they watched a deputy walk down the row to look inside each cell for a safety check. A few minutes later, Broder said, she peeked into the open cell of the man who'd come out to shower.

That's when she spotted the noose.

"Though unlikely to support the incarcerated person's weight, the noose was obvious to anyone looking into the cell," she and Miller wrote in their report.

While Miller went to find a deputy, Broder — a trained social worker — stayed behind to talk to the apparently suicidal man in the shower, who had by then started banging his head against the wall.

At first, Miller said, he went to the deputies' station, where he found eight jailers seated in front of a television.

"The deputies said they would check on the cell later," the inspection report said, "but remained seated watching the video on the television."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 129 of 167
Page ID #:317
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 113 of 151
Page ID #:671
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 34 of 51    Page ID
#:128
Case 2:75-cv-04111-DDP    Document 423    Filed 06/08/24    Page 5 of 9    Page ID
#:7779

Eventually, Miller said, he tracked down the first deputy he'd spotted doing rounds, and convinced him to remove the noose.

After the commissioners finished inspecting the rest of the unit, they returned to discover the eight deputies were still sitting at their station watching a "sexually explicit video" on their television. When Miller walked in, he said, they didn't move to turn it off.

"To me it looked like the beginning of an OnlyFans video or something," Miller said. "It was women in underwear, and it certainly didn't look like they were going to put more clothes on. It looked like they were going to take them off."



CALIFORNIA

**Juvenile hall fight videos raise question: Can L.A. County probation reports be trusted?**

May 30, 2024

Officials did not respond to a question from The Times about what exactly the deputies were watching.

It was only when Broder walked in a few seconds after Miller that the deputies "hurriedly removed the video from the screen," the report said.

The report did not name the deputies involved.

The jails have long struggled to provide constitutionally adequate care and living conditions. The county is currently subject to four court-enforced settlement agreements stemming from federal lawsuits over poor treatment of inmates and bad living conditions.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 130 of 167
Page ID #:318
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 114 of 151
Page ID #:672
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 35 of 51    Page ID
#:129
Case 2:75-cv-04111-DDP    Document 423    Filed 06/08/24    Page 6 of 9    Page ID
#:7780

The newest of those settlements dates back to 2015 when — after a rise in jail suicides — the U.S. Department of Justice took legal action against the county for failing to provide adequate treatment for severely mentally ill inmates. The oldest of the cases is focused on living conditions and dates back to the 1970s, but it still remains open because the Sheriff's Department has never fully complied with the terms of the settlement.

"Men's Central Jail is a rolling settlement agreement violation," Miller said. "And no one is willing to take responsibility."

Melissa Camacho concurred. She's an American Civil Liberties Union of Southern California senior staff attorney representing inmates in two of the ongoing federal lawsuits.

"Issues with safety checks and not notifying anyone that they saw a noose during a safety check have to be clear violations of the consent decree in the DOJ case," she said. "That case is focused on reducing the numbers of deaths by suicide, so to walk by a noose is beyond the pale."

On that same floor of the jail, inspectors spotted several other problems. Some cells had broken toilets or leaking pipes, and the housing areas were humid from the constant drip of leaking showers, the report said. Inmates complained of rats and cockroaches in their cells and food, and inspectors said they saw mildew on ceilings, showers and in cells.

"There was also a man whose cell was covered in mold and water and he was using his clothes to sop up the water," Broder said. "In that unit they don't have books, they don't have pens. They have absolutely nothing, and it's completely dark."

On the fourth floor of the jail, inspectors wrote that some cells had no cold water, so the inmates had rigged up a system to pass water from cell to cell using strings and plastic bottles. There was a "strong smell of fire burning" and "trash everywhere."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 131 of 167
Page ID #:319
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 115 of 151
Page ID #:673
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 36 of 51    Page ID
#:130
Case 2:75-cv-04111-DDP    Document 423    Filed 06/08/24    Page 7 of 9    Page ID
#:7781

In multiple cells on that floor as well as on the first floor, the mattresses had chunks missing, an issue Camacho found particularly vexing. Over the last 50 years, the jails have repeatedly landed in legal trouble for failing to provide mattresses to all inmates, forcing some to sleep on urine-soaked floors or chained to benches.

"Having mattresses with chunks missing violates an order that has been in place since the 1970s," Camacho said. "It's assumed when the Sheriff's Department is ordered to give everybody a mattress it will be a complete mattress and not a partial mattress."

On the fifth floor, inspectors said, inmates were triple-bunked in a hot cell block where the air conditioners were filled with lint. There were bugs coming out of the sinks, the report said, along with "small black worms."

One person reported that there was "a sick inmate in the bunk above them whose defecation was falling into their bunk." The inmate told inspectors the deputies had ignored their requests to help the sick person.

In several housing areas throughout the jail, inspectors said, inmates complained there wasn't enough food, and the meals they did get were often cold or inedible. In one dorm, a man showed commissioners a carton of fully curdled milk he said he'd received that day. When inspectors talked to medical staff about it, one employee concurred that there "appeared to be insufficient food for the incarcerated people," according to the report.

In its statement, the Sheriff's Department did not address allegations about a lack of food but said that it had already resolved the cold water problem and that officials worked to have such issues "corrected as expeditiously as possible."

The department said that none of the inspectors reported a sick inmate during their visit, and that jail officials would contact the commission for further details. The

36

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 132 of 167
Page ID #:320
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 116 of 151
Page ID #:674
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 37 of 51    Page ID
#:131
Case 2:75-cv-04111-DDP    Document 423    Filed 06/08/24    Page 8 of 9    Page ID
#:7782

department also said that its own inspection this week did not reveal any black worms, and that the jail maintains a contract with an exterminator.

"The Sheriff's Department often says they don't have enough staff," Camacho said. "What the Sybil Brand Commission tour shows is that it isn't that there isn't enough staff — it's that they don't do their job. And in this case, it's that they were watching porn instead of doing their job."

## More to Read

L.A. County deputy arrested for allegedly smuggling heroin into jail, sources say



Oversight inspectors accuse Sheriff's Department of retaliation after reports on jail fires



Why was 2023 such a deadly year in Los Angeles County jails? It depends on whom you ask



    Keri Blakinger

Keri Blakinger covers the Los Angeles County Sheriff's Department. Before joining the Los Angeles Times in 2023, she spent nearly seven years in Texas, first covering criminal justice for the Houston Chronicle and then covering prisons for the Marshall Project. Blakinger was a 2024 Pulitzer Prize finalist in feature writing for For her insightful, humane portrait, reported with great difficulty, of men on Death Row in Texas who play clandestine games of "Dungeons & Dragons," countering their

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 133 of 167
Page ID #:321
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 117 of 151
Page ID #:675
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 38 of 51   Page ID
#:132
Case 2:75-cv-04111-DDP   Document 423   Filed 06/08/24   Page 9 of 9   Page ID
#:7783

extreme isolation with elaborate fantasy. Her work has appeared everywhere from the BBC to the New York Daily News, from Vice to the Washington Post Magazine, where her 2019 reporting on women in jail helped earn a National Magazine Award. She is the author of "Corrections in Ink," a 2022 memoir about her time in prison.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 134 of 167
Page ID #:322
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 118 of 151
Page ID #:676
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 39 of 51   Page ID
#:133

Los Angeles Times

CALIFORNIA

# 'Pendulum has swung': Supervisors signal shift on Men's Central Jail closure plan



Built in the early 1960s, the now-decrepit Men's Central Jail has been a vexing issue for the county.   (Irfan Khan / Los Angeles Times)

By Keri Blakinger and Rebecca Ellis

Aug. 5, 2024 3 AM PT

In the summer of 2019, justice reformers celebrated because the Los Angeles County Board of Supervisors scrapped a controversial $1.7-billion plan to replace the county's oldest lockup — the dungeon-like Men's Central Jail on Bauchet Street — with a jail-like mental health facility.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 135 of 167
Page ID #:323
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 119 of 151
Page ID #:677
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 40 of 51   Page ID
#:134

Buoyed by a rising tide of prison reforms across the country, county leaders decided to focus instead on decreasing the jail population by creating more alternatives to incarceration. The new goal would be to close Men's Central Jail without building a replacement.

Five years later, there are roughly 5,000 fewer inmates — but Men's Central Jail is still open. And at the state level, the tides are changing, as voters are set to consider increasing the penalties for <u>low-level theft and some drug crimes</u>, both moves that could balloon the jail population.

Amid that backdrop, the board appears to be rethinking its no-new-jails strategy.



**CALIFORNIA**

**Your guide to Proposition 36: Stiffer penalties for some drug and theft crimes**

July 10, 2024

"The pendulum has swung," Supervisor Holly Mitchell said at Tuesday's board meeting. "We keep saying: When are you closing Men's Central Jail? I think there needs to be an 'and what are we building or creating for this population that perhaps pretrial, diversion, community settings won't match.'"

It's a question supervisors have been unwilling to entertain for the last five years, arguing they could shrink the jail population to zero without a new facility. But the board publicly changed its tone after Sheriff Robert Luna and his top jail official told them three-quarters of county inmates are facing charges too serious for diversion programs.

"I felt like we finally broke through the discussion of why it's needed and justification as to why it's needed, because numbers don't lie," said Supervisor Kathryn Barger in an interview. "A replacement has to take place."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 136 of 167
Page ID #:324
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 120 of 151
Page ID #:678
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 41 of 51    Page ID
#:135

What the county might replace the jail with — or where it would site a replacement — remains unclear.

To some justice reformers, the recent change of tone comes as a profound disappointment.

Claire Simonich, associate director of the nonprofit Vera California, questioned the department's claim that 75% of people in the jails couldn't be diverted, as well as the notion that a new facility would solve the problems currently plaguing the county's lockups.

"Men's Central Jail is decrepit," she said. "Building another jail won't address many of the problems and concerns that we see at Men's Central Jail — like overdose deaths, inhumane treatment and inadequate mental healthcare."

****

When Men's Central Jail opened five decades ago, county leaders hoped the new capacity would end overcrowding and, in the process, improve worsening conditions in local lockups. Instead, the facility has given rise to federal lawsuits, aggressive deputy gangs, a sweeping scandal that landed a former sheriff in prison and a persistent string of complaints from inmates, oversight officials and community members.

But county leaders faltered in response. Three years after agreeing the county needed to build a new jail, the board in 2018 approved a $2.2-billion plan to do that — by tearing down the existing facility and replacing it with a rehabilitation-focused Consolidated Correctional Treatment Facility.



CALIFORNIA

**L.A. County to relocate some inmates, build jail to treat the mentally ill**
Aug. 11, 2015

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 137 of 167
Page ID #:325
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 121 of 151
Page ID #:679
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 42 of 51    Page ID
#:136

The following year, the board changed course and instead greenlit a $1.7-billion project dubbed the Mental Health Treatment Center. Approved in a 3-2 vote, the planned facility would have been overseen primarily by the Department of Health Services instead of the Sheriff's Department, though a limited number of deputies would have provided security.

"It's still a jail," Supervisor Hilda Solis said at the time, opposing the plan. "It's still walls. It's still preventing people from having freedom, the possibility of even rehabilitation."

A few months later, the board scrapped the idea and started over, eventually embracing a "care first, jails last" philosophy paired with the goal of tearing down the decaying jail and not building a replacement. In 2021, the board approved an ambitious plan to decrease the number of people in custody by several thousand so the county could shut down the facility bit by bit before closing it completely.

But the planned closure date — in early 2023 — came and went, and the jail remains open. Last year, the board floated a motion outlining several recommendations to decrease the population but offering no concrete timeline for closure.



CALIFORNIA

D.A. will not charge deputy seen on camera appearing to slam inmate's head into wall

June 6, 2024

Meanwhile, conditions have not improved. The county is still grappling with several longstanding class-action lawsuits alleging abuse, poor conditions and inadequate mental healthcare behind bars. The jail death rate has risen sharply in recent years.

And this year, inspections by the county's Sybil Brand Commission have revealed mold, rats, fires, broken toilets, sink drains filled with "small black worms" and cells covered

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 138 of 167
Page ID #:326
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 122 of 151
Page ID #:680
Case 2:24-cv-05716-SPG-AJR    Document 25    Filed 08/27/24    Page 43 of 51    Page ID
#:137

in feces. In May, two inspectors found a large group of jailers watching a "sexually explicit" video instead of tending to a seemingly suicidal inmate who'd hung a rudimentary cloth noose in his cell.

\*\*\*\*

The tenor of last week's board meeting signaled yet another change of direction in the county's response.

Though the agenda called for a discussion about the deteriorating conditions at Men's Central Jail, the conversation quickly shifted to plans for the facility's future.

Luna told supervisors he wasn't sure the county could ever decrease its incarcerated population enough to close Men's Central Jail without a replacement, in part because officials estimate so many inmates are facing charges that are too violent or serious for diversion programs. Instead, he suggested building what he called the "Care First Treatment Campus," which he said wouldn't necessarily be run by sheriff's deputies.

Barger, the board's lone Republican, seized on the suggestion as a path forward that could garner support from her more progressive counterparts.

"Men's Central Jail needs to be torn down no matter what," Barger said at the meeting. "The fact that it doesn't have to be a sheriff-run facility ... maybe you just opened up a new door in terms of finally doing something."

Solis, historically one of the loudest opponents of a new jail on the board, was adamant that, if another facility was built, it should not be in her area, which she said was already overwhelmed with carceral facilities, including Men's Central Jail and Twin Towers downtown.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 139 of 167
Page ID #:327
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 123 of 151
Page ID #:681
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 44 of 51   Page ID
#:138

"I don't want to see another jail built, obviously," she said. "But if the board goes that way, it better not be in my district."

Lindsey Horvath, the newest supervisor and one of the most progressive on the board, was skeptical of the concept and told The Times she wasn't "familiar enough" with Luna's vision to support it.

"I don't know of a facility that is run by a sheriff's department that is not considered a jail," she said in an interview.

****

The shift sparked swift pushback from justice reform advocates, community activists and some jail oversight officials.

"I was totally blindsided by that," said Anthony Arenas, an organizer with Justice LA, which has long opposed building any new jails. "It's just going to be Men's Central Jail under a new name — a 'Care First Treatment Campus' — which is even more disturbing given that this idea of 'care first, jails last' came from the community members who have advocated closing Men's Central Jail with no replacement."

During their Thursday morning meeting, members of the Sybil Brand Commission — a county oversight body that inspects local jails — panned the idea of a "care first" facility, saying "care first" is "not a thing" in the historically troubled culture of Los Angeles jails.

"This is not just a facility issue," commissioner Haley Broder told The Times afterward, highlighting examples of neglect and retaliation by jailers. "This is a culture issue."

And Peter Eliasberg, chief counsel at the American Civil Liberties Union of Southern California, rejected the core claim that started the discussion — the idea that three-quarters of the jail population can't be diverted or released pretrial.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 140 of 167
Page ID #:328
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 124 of 151
Page ID #:682
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 45 of 51   Page ID
#:139

"Nobody should be buying into that as a number that is solidly grounded," he said. The county's Office of Diversion and Reentry has successfully kept thousands of people — including some facing serious charges — out of the jails but has never been adequately ...., he said.

And a recent UCLA study found that Los Angeles courts are setting bail amounts far higher than the state average. Simply decreasing bail amounts, Eliasberg said, could help lower the jail population.

The assertion that most of the jail can't be diverted is "preposterous," he continued, adding: "If the board is thinking about making policy based on that statement, my father had a phrase he would say — 'You're leaning on a weak reed' — and I think that's entirely appropriate here."

## More to Read

Some L.A. County supervisors say proposed expansion of the board is rushed

July 2, 2024



Opinion: California's budget deficit will force difficult cuts. This one should be the easiest



Editorial: Juvenile probation failures have left L.A.'s troubled kids nowhere to go

Jun 6, 2024



Keri Blakinger

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 141 of 167
Page ID #:329
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 125 of 151
Page ID #:683
Case 2:24-cv-05716-SPG-AJR   Document 23   Filed 08/27/24   Page 46 of 51   Page ID
#:140

Los Angeles Times

OPINION

# Editorial: A shiny new jail in L.A. is a bad idea, no matter what it's called



Men's Central Jail, shown in 2019. Los Angeles County leaders agreed that the jail should be demolished but have not determined how else to care for or supervise thousands of people after their arrests or convictions. (Al Seib / Los Angeles Times)

By The Times Editorial Board

Aug. 16, 2024 5 AM PT

There is no disagreement over the proper fate of Men's Central Jail in downtown Los Angeles. The decrepit facility must be torn down with all deliberate speed — just as soon

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 142 of 167
Page ID #:330
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 126 of 151
Page ID #:884
Case 2:24-cv-05716-SPG-AJR    Document 25    Filed 08/27/24    Page 47 of 51    Page ID
#:141

as county leaders make alternative arrangements for the thousands of people housed there at any given time.

And there's the rub. What do we do with everybody, especially the enormous percentage of people who landed in jail in part because of psychiatric or drug problems?

For years, the Board of Supervisors clung to the most rote and self-destructive answer: Build another jail, with a new name to imply a new mindset. It was going to be called the Consolidated Correctional Treatment Facility, then the Mental Health Treatment . The name being bandied about now is the Care First Treatment Campus.



OPINION
**Editorial: L.A.'s cruel and deadly jail is still full on shutdown date**
March 30, 2023

Yet all those fancy labels are just euphemisms for "jail." They all describe a single large, secure building, located on the footprint of Men's Central Jail, surrounded by other jails, and staffed by sheriff's deputies.

The board hears regular reports to monitor progress on closing the jail but does little to meet the various deadlines it sets, and then misses. During last month's report, Sheriff Robert Luna said that although deputies would be needed at a treatment campus, perhaps their role could be limited. The board was noncommittal, although some supervisors' comments could be interpreted as showing a renewed openness to a bad idea — a replacement jail.



OPINION
**Editorial: Jailed Angelenos die, deputies shrug. Will this daily routine never end?**

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 143 of 167
Page ID #:331
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 127 of 151
Page ID #:685
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 48 of 51    Page ID
#:142

We've been here before. One of those adjacent jails is Twin Towers, which sounds like it ought to be an upscale condo development but is in fact a jail that has been cited and sued almost as often as Men's Central next door. It became the county's 1990s version of a treatment-oriented facility.

As the supervisors finally recognized in 2019, an even newer jail is not the answer, because the problem is not merely a failing old building. The problem is that sheriff's deputies are trained in policing, which is the wrong skill set and wrong approach for rehabilitating people struggling with mental illness and addiction, whether or not those people have been accused of crimes. Mental health professionals have testified repeatedly that law enforcement techniques such as violent cell extractions commonly worsen the patients' condition and undermine treatment.

Recent Los Angeles County history is littered with the evidence that law enforcement is the wrong approach for psychiatric patients. For the first decade and a half of this century, jailers routinely beat and abused inmates whose conditions they could not understand. The Sheriff's Department failed so thoroughly at providing mental and medical care that it had to hand over the responsibility to county health officials — yet deputies still run the facilities and supervise the inmates, and overall care remains abysmal.



OPINION

**Editorial: Start the demolition countdown at Men's Central Jail**

April 5, 2022

Just in the last year, jailers were caught watching porn on the job instead of monitoring inmates or assisting them with supervising and assisting. Twenty-one people have died in L.A. County jails this year, 62 since the beginning of last year. Legal settlements that were supposed to improve conditions include one that is nearly half a century old and another that was signed this year, and many others in between.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 144 of 167
Page ID #:332

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 128 of 151
Page ID #:686

Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 49 of 51    Page ID
#:143

To be sure, security for many mental patients is needed, particularly in the early stages of treatment. It's in no one's interest to allow the sick to wander off on their own. But locks do not by themselves turn treatment into jail as long as medical standards and practices prevail. Best practices for psychiatric treatment include "step-down beds," with higher acuity patients subject to the most security, proceeding over time to increasing levels of liberty as treatment and the patients' improvement allow.

To enable step-down care, patients should be treated close to their home communities, where most will eventually return. That means treatment should be provided at small facilities distributed around the county, not a single massive building in a jail complex.

**Editorial: Men's Central Jail should be demolished. But what should replace it?**

These principles — a network of small locked and unlocked step-down facilities, operated by medical professionals rather than law enforcement, with contract security as needed — have been part of the county's care-first plan for years now.

That plan is stuck in limbo in part because the population of Men's Central Jail remains too high — by about 4,000 people — to close the facility. But the population reduction that supervisors said was necessary to close Men's Central was always meant to come from the entire jail system. The county has already advanced toward that milestone with the help of successful county diversion programs that direct people away from or out of all county jails.


**Editorial: Unconscionable abuse and shameful inaction at L.A. County jails**
May 7, 2023

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 145 of 167
Page ID #:333
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 129 of 151
Page ID #:687
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 50 of 51    Page ID
#:144

The Office of Diversion and Reentry, for example, provides community housing and treatment for people deemed incompetent to stand trial who might otherwise sit in Twin Towers in the near-futile hope that their conditions will improve there. That's costly and foolish.

To expand their success, programs such as ODR need more beds in more communities. That's politically challenging for the Board of Supervisors because of the typical resistance from residents to these types of facilities. But the supervisors have moved forward with housing and treatment for homeless people whose profiles are often the same as many ill people currently in jail, except that they have managed to avoid arrest.

They need to keep at it if they are to fulfill their promise to close the dungeon that is Men's Central Jail and finally break the county's cycle of jailing and failing instead of treating and healing.

## More to Read

'Pendulum has swung': Supervisors signal shift on Men's Central Jail closure plan



Opinion: California's budget deficit will force difficult cuts. This one should be the easiest



Editorial: Juvenile probation failures have left L.A.'s troubled kids nowhere to go



The Times Editorial Board

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 146 of 167
Page ID #:334
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 130 of 151
Page ID #:688
Case 2:24-cv-05716-SPG-AJR    Document 23    Filed 08/27/24    Page 51 of 51    Page ID
#:145

The Los Angeles Times' editorial board determines the positions of The Times as an institution. It operates separately from the newsroom. You can read more about the board's mission and its members at <u>About The Times Editorial Board</u>.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 147 of 167
Page ID #:335

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 131 of 151
Page ID #:689

Case 2:24-cv-05716-SPG-AJR    Document 42-1    Filed 10/09/24    Page 2 of 6   Page ID
#:471

Los Angeles Times

CALIFORNIA

# Who's in charge of finally closing Men's Central Jail? It's TBD



L.A. County is starting a national search for an executive director to lead a team focused on shutting down Men's Central Jail. (Irfan Khan / Los Angeles Times)

By Rebecca Ellis, David Zahniser and Keri Blakinger

Dec. 5, 2023 5 AM PT

*Good morning, and welcome to L.A. on the Record — our City Hall newsletter. It's Rebecca Ellis, David Zahniser and Keri Blakinger bringing you the latest on all things local government.*

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 148 of 167
Page ID #:336

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 132 of 151
Page ID #:690

Case 2:24-cv-05716-SPG-AJR    Document 42-1    Filed 10/09/24    Page 3 of 6    Page ID
#:472

Nearly a decade after deciding that Men's Central Jail was too decrepit, L.A. County's top politicians are on the hunt for someone to finally shut it down.

The years-long paralysis around closing the dangerous facility was on full display this week as the Board of Supervisors discussed embarking on a national search for an executive director to lead a team with one objective: closing the downtown L.A. jail, where roughly 4,000 inmates are confined.

The update, made during Tuesday's board meeting, was seen by some advocates as part job announcement, part confession. After all this time, it's clear that the person in charge is still TBD.

ADVERTISING



HOT Pucci - Sponsored

HOT Pucci - Sponsored

PUCCI PARADE
COLLECTION

PUCCI PARADE
COLLECTION

"What we're feeling, overall, is frustration," said **Janet Asante** with JusticeLA, a coalition of advocacy groups that has pushed for the jail's closure. "The board was essentially thinking that if they just send a mandate down the pipeline, it would get done. But they weren't watching that happen."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 149 of 167
Page ID #:337
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 133 of 151
Page ID #:691
Case 2:24-cv-05716-SPG-AJR    Document 42-1    Filed 10/09/24    Page 4 of 6   Page ID
#:473

The closure, supervisors concede, has not gone as expected. **Chidinma Ume** with the county's Chief Executive Office said this week that there have been about 60 reports on how to close the jail — and still no concrete timeline for doing so.

"It's a little bit crazy-making," said Supervisor **Lindsey Horvath**, later adding that the county is "truly stuck."

"This is — I hate to say it — it's incremental," said Supervisor **Hilda Solis**, whose district includes the jail.

For years, the dungeon-like facility has been the setting for a series of scandals and federal lawsuits alleging widespread abuse and neglect. Inspections have turned up rats, mold and feces-covered cells, while the death rate inside has sharply risen. A recently resurfaced county report shows the six-decade-old building is a seismic disaster that one expert said could "certainly" kill people in a moderate to major quake.

County officials have waffled for years on closing the jail, unsure of what should replace it. In 2015, the supervisors approved a plan to knock it down and build a modernized lockup with a focus on mental health treatment.

Then, with a tide of prison reforms sweeping the country, supervisors decided in 2019 to shut the jail without building a replacement. Instead, they would divert as many inmates as possible to alternatives such as supportive housing and treatment.

Three years ago, the county created a team to bushwhack through a thicket of bureaucracy to get the jail closed and the inmates diverted. But the team, housed within the county's Justice, Care and Opportunities Department, struggled to get buy-in from other county agencies. The effort faltered.

This spring, supervisors tapped the Chief Executive Office to lead the jail closure program instead. The office has become a landing spot for complex initiatives important

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 150 of 167
Page ID #:338
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 134 of 151
Page ID #:692
Case 2:24-cv-05716-SPG-AJR    Document 42-1    Filed 10/09/24    Page 5 of 6    Page ID
#:474

to the board, including programs to <u>curtail homelessness</u> and <u>fight racism.</u>

Chief Executive Officer **Fesia Davenport** told the board Tuesday that before her office took over, "there was no one working exclusively on jail closure."

Advocates say they have been ringing alarm bells for years.

"I was shocked that the board was shocked," said **Megan Castillo**, policy and advocacy manager at La Defensa, an organization that advocates for alternatives to incarceration. "Like how do you not know?"

While its population has dwindled, Men's Central Jail still has too many inmates to render it obsolete.

To close the jail, the county says, it will <u>need to reduce</u> the total number of inmates in the county jail system by 45%, leaving about 7,160. Sheriff **Robert Luna** and his top jail official <u>told the board</u> this summer that the majority face charges too serious for diversion programs — <u>a claim that some attorneys and inmate advocates</u> immediately called into question.

Even so, that's left the timeline for closing the jail a question mark. The initial deadline was early 2023. Supervisor **Holly Mitchell** says she is constantly asked for an update.

"I'm not going to pick a date out of thin air, arbitrarily," Mitchell said. "We have to do it well and right."

With the county just starting its hunt for someone to lead the effort, Supervisor **Janice Hahn** said she worries that things are already "stalling" and "would like a timeline at some point."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 151 of 167
Page ID #:339

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 135 of 151
Page ID #:692

Case 2:24-cv-05716-SPG-AJR    Document 42-1    Filed 10/09/24    Page 6 of 6    Page ID
#:475

The clock is ticking, advocates say. California voters this November will consider increasing the penalties for <u>low-level theft and some drug crimes</u>, which could balloon the prison population.

County voters will also decide on a <u>ballot measure</u> that could add four more supervisors to the board, threatening to upset the consensus on the issue and return jail closure to square one again.

# State of play

— **CHOOSING A TOP COP**: After a months-long search, Mayor **Karen Bass** <u>selected</u> former Los Angeles County Sheriff **Jim McDonnell** as the city's next police chief. His nomination heads to the council for a confirmation vote.

— **REDISTRICTING RERUN?** California Atty. Gen **Rob Bonta** has begun <u>pressing</u> L.A. leaders to sign an agreement that would require them to create new boundaries for the city's 15 council districts by the 2026 primaries. Sources told The Times that Bonta is concerned about Latino voting strength in the San Fernando Valley and the Eastside. Councilmembers have not yet divulged whether they intend to push back.

— **STRIKE AVERTED**: Los Angeles County and Service Employees International Union Local 721, which represents more than 55,000 county workers, <u>announced</u> this week that it has called off a strike that threatened to bring county services to a halt. The union had accused the county of posting inaccurate versions of labor agreements online and improperly using contractors to do union jobs.

— **A PLUM PICK**: Councilmember **Marqueece Harris-Dawson** announced Friday that he has selected Councilmember **John Lee** as the new chair of the powerful Planning and Land Use Management Committee, or PLUM, which reviews major real estate projects. Harris-Dawson, who is stepping off the committee, tapped Councilmember **Kevin de León** to replace him.

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 152 of 167
Page ID #:340
Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 136 of 151
Page ID #:694
Case 2:24-cv-05716-SPG-AJR   Document 43   Filed 10/13/24   Page 2 of 17   Page ID
#:477

Los Angeles Times

CALIFORNIA

# How L.A.'s jail system became America's largest



(Los Angeles Times photo illustration)

By Keri Blakinger
Staff Writer

Oct. 9, 2024 3 AM PT

FOR SUBSCRIBERS

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 153 of 167
Page ID #:341
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 137 of 151
Page ID #:695
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 3 of 17    Page ID
#:478

When you think of a prison town, you probably think of a place like Huntsville, Texas. Or maybe Forrest City, Ark. Or Susanville, Calif. Even if you don't know them by name, you know the type: places where the population is half-incarcerated and virtually everyone works for or knows someone who works for a prison. In short, you probably do not think of a place like Los Angeles.

But maybe you should.

Technically, it's not a prison town. Though there are a few federal and state prisons for those convicted of serious crimes scattered across the county, the Southland's claim to carceral fame lies more in its jails. On an average day, the county's lockups hold close to 13,000 people. With roughly twice as many imprisoned people as are in New York's far more notorious Rikers Island complex, Los Angeles is home to the largest jail system in the most heavily incarcerated country in the world.

At nearly every moment in its history, Los Angeles has been either expanding an old jail, building a new one or debating whether to. The perpetual refrain of build, overcrowd, repeat hums in the background of the city's history like an aging neon sign.

Right now, that hum is growing a little louder as county leaders once again take up the question of whether to replace Men's Central. The crumbling downtown lockup mostly houses men awaiting trial or convicted of minor offenses; virtually everyone with any say agrees it is overdue for demolition.

"It's so similar to the freeway issue," said William Deverell, director of the Huntington-USC Institute on California and the West and a professor of history at USC. "If we have a freeway that's too crowded, we say, 'Well, let's build another one.' How do we alleviate the problems in one prison? Well, we build another one."

Case 2:24-cv-05748-SPG-AJR   Document 24-1   Filed 11/17/24   Page 154 of 167
Page ID #:342

Case 2:24-cv-05716-SPG-AJR   Document 48-1   Filed 10/23/24   Page 138 of 151
Page ID #:696

Case 2:24-cv-05716-SPG-AJR   Document 43   Filed 10/13/24   Page 4 of 17   Page ID
#:479

The region's first jail was built on the edge of what is now downtown Los Angeles in 1786, when California was claimed by the Spanish Empire. At the time, it was used as a guard house for Spanish soldiers and known as the Cuartel Viejo.

But not long after it began to house inmates, the place became overcrowded — or rather it had a "bounteous patronage," as The Times described it. Once it became too dilapidated to use, local leaders turned a cleric's house into a make-do jail.

So in 1841 — still nearly a decade before California became a state — Los Angeles built what was technically at least its third jail, though probably the first one constructed for that purpose. But the simple structure at the corner of New High and Temple streets wasn't intended for everyone. The white inmates stayed indoors. Their Native and Mexican counterparts were chained to logs outside.

The next jail was a one-story adobe structure on the corner of Spring and Franklin streets. It opened in 1853, during a period when Los Angeles — according to The Times — was said to be the "toughest town of the entire nation." The growing city saw so many murders that the newspapers covered them like weather reports. One cheekily described the evening as a "brisk night for killing" after four men were shot to death in a town of just 3,500.

With the tougher town came a fuller jail, and in 1881 the city opened a lockup on West 2nd Street, with room for about 40 prisoners. The county followed suit and five years later opened the "modern" New High Street Jail, a three-story brick and stone Gothic structure. By the spring of 1887, the place was already overcrowded.

The city jail didn't fare any better, and by the 1890s even the police chief had begun complaining about the cramped quarters in the West 2nd Street building, which now held several hundred men, women and children in a space designed for a few dozen. "The atmosphere in there becomes so foul that it is cruelty to keep any human being

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 155 of 167
Page ID #:343
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 139 of 151
Page ID #:697
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 5 of 17 / Page ID
#:480

in it," The Times wrote in 1894. "The authorities cannot escape the fact that the jail is much too small for the size of the city."

So two years later, the city yet again opened a new jail, this time in a massive Richardson Romanesque building on 1st Street with room for twice as many prisoners as the old one. Within a year, it too was overcrowded. The police chief reported in 1903 that some prisoners had begun sleeping in hammocks and temporary cots, while others were forced to sleep standing up.

That same year, county supervisors green-lighted a 228-bed jail at the corner of Temple and Buena Vista. It was full by Christmas.

There wasn't enough money to keep building jails by that point, so local leaders enlisted inmates on the city's chain gang to build a stockade near Elysian Park to supplement the existing lockups.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 156 of 167
Page ID #:344
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 140 of 151
Page ID #:698
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 6 of 17    Page ID
#:481



A Los Angeles County Jail under construction in the 1920s. (Los Angeles Times)

"By 1910, Los Angeles already operated one of the largest jail systems in the country," UCLA professor Kelly Lytle Hernández wrote in "City of Inmates," her definitive history of Los Angeles jails.

Within a few short years, the local lockups were again beyond capacity. When Times reporters paid a visit to the city clink in 1916, they were horrified, describing the place as a "lice-ridden" and "hopelessly unsanitary" building with "unthinkably deplorable conditions" to which the "wealthy and prosperous city" could no longer be ignorant.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 157 of 167
Page ID #:345
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 141 of 151
Page ID #:699
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 7 of 17    Page ID
#:482

"How can we expect to make honest, healthy, reformed men by such unthinkable methods?" the paper asked. "If they come to jail sick they leave it worse. If they come in healthy and whole they leave it sick and dejected. There can be no excuse for such a state of affairs in modern times."

The solution, according to the paper, was to build a new jail. The plan was for a "first-class, modern, airy, hygienic, merciful City Jail." It would have sunlight and windows and would allow its prisoners access to towels, toothbrushes and the like. But those seemingly achievable goals turned out to be mostly aspirational for several years.

In the meantime, the city put up barracks for a prison farm in Griffith Park, which offered a little more freedom and sunlight for a couple of hundred arrestees. But inmates housed in the main jail continued to rot away in increasingly inhumane conditions.

And the county inmates weren't any better off.

In March 1921, men locked up at the Buena Vista County Jail rioted. By that point the place was so overcrowded — nearly 450 people lived in quarters intended for 200 — that The Times took the side of the rioting inmates.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 158 of 167
Page ID #:346
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 142 of 151
Page ID #:700
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 8 of 17    Page ID
#:483



Prisoners at the city jail sat down to a sumptuous Christmas dinner in 1935.  (Los Angeles Times)

The spark for the unrest that spring was a literal flame: One man had been tossed in
solitary confinement because he kept burning newspapers to heat his coffee. While in
the jail "dungeon," he allegedly conspired with some of the other men incarcerated
there.

Fed up with sleeping in vermin-infested hallways, men pounded on cell doors, broke
everything breakable and then threw pieces of the debris at anyone who passed by the
cell bars. The result was, as usual, redoubled calls for a new jail.

"Again and again The Times has cried aloud against these wretched, crime-hatching,
disease-breeding jail abominations," the paper wrote. "For years it has urged the
immediate construction of new jails and sanitary quarters for prisoners."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 159 of 167
Page ID #:347
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 143 of 151
Page ID #:701
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 9 of 17    Page ID
#:484

A few months later, local officials heeded that urge and ordered designs for a County Hall of Justice, a 12-story Renaissance building to house all city, county and federal prisoners in its top five stories. By the time the first stone was laid in 1925, the cost had ballooned to $6 million.

Even that massive investment did not dampen the refrain of *build, overcrowd, repeat.* For the next few decades, it played out again and again in the all-caps headlines of The Times.

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 160 of 167
Case 2:24-cv-05716-SPG-AJR     Document 43-8     Filed 10/23/24     Page 144 of 151
Page ID #:702



A fireman walks past a crowded jail cell during a riot at Los Angeles County Jail in 1953. (Los Angeles Times)

Case 2:24-cv-05748-SPG-AJR     Document 24-1     Filed 11/17/24     Page 161 of 167
Page ID #:349
Case 2:24-cv-05716-SPG-AJR     Document 48-1     Filed 10/23/24     Page 145 of 151
Page ID #:703
Case 2:24-cv-05716-SPG-AJR     Document 43     Filed 10/13/24     Page 11 of 17     Page ID
#:486

By 1958, the persistent crowding and poor conditions prompted one county supervisor to suggest building a 5-acre aerial jail-bridge, prompting the headline: "New Jail to Span Sunset Blvd."

Fortunately, that proposed monstrosity did not materialize.

But why is that solution — the hum of carceral construction — such a constant in the City of Angels? There may not be a singular answer. In a recent interview, Hernández mused: "Is it that Los Angeles has a fantasy of itself being some kind of sunny utopia and therefore it needs to eliminate populations that infringe on that fantasy?"

The area has long been home to some of the nation's largest Native, Black, Mexican and houseless populations, she said — all groups disproportionately targeted by incarceration. "So it follows that L.A. is one of the epicenters of incarceration," she said. "It doesn't mean we're apart from everyone else. We're in line with trends across the country."

Often, however, the Southland has been at the vanguard of carceral trends. By early 1963, the county was nearing completion on two new jails that the paper alleged would finally "End Overcrowding at Hall of Justice."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 162 of 167
Page ID #:350
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 146 of 151
Page ID #:704

Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 12 of 17    Page ID #:487



Inmates bed down and watch television in a chapel at Men's Central Jail in 1987.  (Robert Gabriel/Los Angeles Times)

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 163 of 167
Page ID #:351
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 147 of 151
Page ID #:705
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 13 of 17   Page ID
#:488

Together the buildings were expected to cost well over $20 million. The smaller of the new lockups — named after philanthropist Sybil Brand — featured pink walls and was designed to hold 915 women at a site in East L.A.

The larger one was Men's Central Jail. Sitting on a 17-acre site downtown, it would hold 3,323 men. The Times described it then as "looking like a modernistic manufacturing plant."

Starting in the mid-1970s, the jails' deteriorating conditions ended up in the crosshairs of a series of federal lawsuits. When one of those cases — a class action filed on behalf of Men's Central Jail inmate Dennis Rutherford — went to trial in 1978, the inmates won.

Judge William P. Gray declared the jail conditions unconstitutional and ordered a series of changes: The county jails needed to start giving everyone a bunk instead of making people sleep on the floor. They needed to let prisoners outside for an hour a day instead of 2½ hours a week. They needed to stop waking inmates before 6 a.m. for 16-hour trips to local courts and give them clean clothes at least twice a week.

In the decades since, the county has failed to do many of those things. Within a few years of Gray's ruling, the jails were so packed that hundreds of still bunk-less inmates were given blankets and left to sleep on the roof.

Eventually the county built another massive downtown bastille known as the Twin Towers, a complex on the site of the city's 1924 plague outbreak. The $373-million facility sat empty for several years because there was no money available to cover operating expenses. By the time the county's inmate population peaked in 1993, there were more than 23,000 people living in its jails.

Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 148 of 151
Page ID #:706
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 14 of 17    Page ID
#:489



A general population cell block in Men's Central Jail in October 2019.  (Al Seib/Los Angeles Times)

But even as the number of people in custody began a halting downward slide, the debates about when and how to expand L.A.'s jail facilities continued.

With needs of its own, the city in 2006 began erecting a $74-million lockup. And the county's facilities were still so far beyond capacity — and some, notably Men's Central Jail, in such disrepair — that conditions behind bars remained persistently abysmal, earning repeated rebukes from increasingly fed-up federal judges.

"In Men's Central Jail, cells designed for three inmates are filled with six," The Times wrote in 2010. "Last week, U.S. District Judge Dean D. Pregerson described the practice as 'simply not consistent with basic values,' noting that inmates did not even have the space to stand up and take a step or two."

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 165 of 167
Page ID #:353
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 149 of 151
Page ID #:707
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 15 of 17    Page ID
#:490

By that point Gray was no longer on the bench, so it was Pregerson who'd taken over the Rutherford case and decided that the situation behind bars "should not be permitted to exist in the future.'"

More than a decade later, it remains. Pregerson is still overseeing that case, as well as a second one focused on violence meted out by deputies and a third centered on problems with care for mentally ill prisoners.

"Everyone is on edge because it is crowded," one inmate wrote in an affidavit filed in the Rutherford case two years ago. "The place smells of urine and excrement because some toilets don't work, and people who are chained to chairs sometimes pee on the floor because the deputies won't unchain them."

In recent months, jail inspectors have raised concerns about rats, roaches and feces-smeared cells. Some men have begun complaining they don't get enough food. This spring inspectors found that some inmates in cells with no cold water had rigged up a system to pass plastic bottles of it from cell to cell using strings. Just as in 1921, some men light fires to heat drinks or turn metal bunks into makeshift griddles to get a warm meal.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 166 of 167
Page ID #:354
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 150 of 151
Page ID #:708
Case 2:24-cv-05716-SPG-AJR    Document 45    Filed 10/13/24    Page 16 of 17    Page ID
#:491



The main exercise yard on the roof of Men's Central Jail in April 2015.  (Mark Boster/Los Angeles Times)

Although inmates are no longer chained to logs outside or sleeping on roofs, the glitchy HVAC systems mean the indoor temperatures sometimes drop into the 50s. Over the last two years, at least two inmates died after showing signs of hypothermia.

The jails still struggle to provide adequate sleeping quarters, and in recent years they've been caught leaving people to sleep on urine-soaked floors, using trash bags for blankets.

In 2019, the L.A. County Board of Supervisors scrapped its $1.7-billion plan to replace the decaying Central Jail with a jail-like mental health facility and, for five years, tried to pursue a no-new-jails strategy, focusing instead on lowering the jail population.

Case 2:24-cv-05748-SPG-AJR    Document 24-1    Filed 11/17/24    Page 167 of 167
Page ID #:355
Case 2:24-cv-05716-SPG-AJR    Document 48-1    Filed 10/23/24    Page 151 of 151
Page ID #:709
Case 2:24-cv-05716-SPG-AJR    Document 43    Filed 10/13/24    Page 17 of 17    Page ID
#:492

For the first time in years, the number of people in local lockups dipped below 13,000. But this year, with crime rates and political pressure rising, Los Angeles leaders changed course, raising questions about how many people they can really divert from the jails and whether looming legal changes once again could cause the county's carceral population to balloon.

And so — after a pause — it resumes: Build, overcrowd, repeat.

## More to Read

Endorsement: Reelect Los Angeles County Dist. Atty. George Gascón



Men's Central Jail faces 'severe structural damage' in earthquake, report says



Editorial: A shiny new jail in L.A. is a bad idea, no matter what it's called



    Keri Blakinger

Keri Blakinger covers the Los Angeles County Sheriff's Department. Before joining the Los Angeles Times in 2023, she spent nearly seven years in Texas, first covering criminal justice for the Houston Chronicle and then covering prisons for the Marshall Project. Blakinger was a 2024 Pulitzer Prize finalist in feature writing for For her insightful, humane portrait, reported with great difficulty, of men on Death Row in Texas who play clandestine games of "Dungeons & Dragons," countering their extreme isolation with elaborate fantasy. Her work has appeared everywhere from the